Colleen R. Smith (ISB No. 10023)
Stris & Maher LLP
American Civil Liberties Union of
   Idaho Foundation Cooperating Attorney
1717 K Street NW, Suite 900
Washington, DC 20006
T: 202-800-5749
csmith@stris.com

Katherine V. Mackey*
Wilmer Cutler Pickering
  Hale and Dorr LLP
60 State Street
Boston, MA 02109
T: 617-526-6993
F: 617-526-5000
katherine.mackey@wilmerhale.com

Peter G. Neiman*
Alan E. Schoenfeld*
Michelle Nicole Diamond*
Rachel E. Craft*
Wilmer Cutler Pickering
  Hale and Dorr LLP
7 World Trade Center
New York, NY 10007
T: 212-230-8800
F: 212-230-8888
peter.neiman@wilmerhale.com
alan.schoenfeld@wilmerhale.com
michelle.diamond@wilmerhale.com
rachel.craft@wilmerhale.com

*Attorneys for Plaintiffs*

*Additional counsel for Plaintiffs
identified on following page*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO
## SOUTHERN DIVISION

| | |
|---|---|
| **PLANNED PARENTHOOD GREAT NORTHWEST, HAWAII, ALASKA, INDIANA, KENTUCKY**, on behalf of itself, its staff, physicians and patients, **CAITLIN GUSTAFSON, M.D.**, on behalf of herself and her patients, and **DARIN L. WEYHRICH, M.D.**, on behalf of himself and his patients, <br><br>         Plaintiffs, <br><br>   v. <br><br> **RAÚL LABRADOR**, in his official capacity as Attorney General of the State of Idaho; **MEMBERS OF THE IDAHO STATE BOARD OF MEDICINE** and **IDAHO STATE BOARD OF NURSING**, in their official capacities, **COUNTY PROSECUTING ATTORNEYS**, in their official capacities, <br><br>         Defendants. | Case No.  1:23-cv-142 <br><br> **COMPLAINT** |

Jennifer R. Sandman*
Catherine Peyton Humphreville*
Planned Parenthood Federation of America
123 William Street
New York, NY 10038
212-965-7000
jennifer.sandman@ppfa.org
catherine.humphreville@ppfa.org

Michael J. Bartlett (ISB No. 5496)
Bartlett & French LLP
1002 W Franklin St.
Boise, Idaho 83702
T: 208-629-2311
F: 208-629-2460 (fax)
Michael@BartlettFrench.com

*Attorneys for Plaintiff Planned Parenthood
Great Northwest, Hawaii, Alaska, Indiana,
Kentucky*

Dina Flores-Brewer (ISB No. 6141)
American Civil Liberties Union of
    Idaho Foundation
P.O. Box 1897
Boise, ID 83701
T: 208-344-9750
DFloresBrewer@acluidaho.org

Andrew Beck*
Meagan Burrows*
Ryan Mendías*
Scarlet Kim*
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004
T: 212-549-2633
F: 212-549-2649
abeck@aclu.org
mburrows@aclu.org
rmendias@aclu.org
scarletk@aclu.org

*Attorneys for Physician Plaintiffs*

* *Pro hac vice applications forthcoming*

## COMPLAINT

Plaintiffs Planned Parenthood Great Northwest, Hawaii, Alaska, Indiana, Kentucky ("Planned Parenthood"), Caitlin Gustafson, M.D., and Darin L. Weyhrich, M.D., by and through their attorneys, bring this civil action for declaratory and injunctive relief and allege as follows:

## PRELIMINARY STATEMENT

1.      Shortly after the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 142 S.Ct. 2228 (2022), Idaho's criminal ban on all abortions, Idaho Code § 18-622 (the "Total Abortion Ban"), went into effect, depriving Idahoans of the right to choose to terminate a pregnancy.  Since that time, Plaintiffs have not performed any abortions in Idaho.

2.      Having complied with Idaho's stringent abortion ban for months, Plaintiffs are now the targets of a new attack at the hands of Idaho Attorney General Raúl Labrador ("Labrador").  On March 27, 2023, Labrador publicly issued a letter asserting that Idaho law "prohibits an Idaho medical provider from . . . referring a woman across state lines to access abortion services" and claimed that Idaho law "requires the suspension of a health care professional's license" for doing so.  Ex 1, Labrador Letter.  Labrador's interpretation is unprecedented and amounts to a clear threat that Idaho will seek to punish individuals for speech and conduct related to abortions that take place in states where abortion is legal.

3.      Labrador's interpretation attempts to bring plainly First Amendment-protected activity within the ambit of the Total Abortion Ban. Moreover, his interpretation depends on the assertion that Idaho law punishes abortions performed outside of Idaho —a clear Due Process and Dormant Commerce Clause violation.

4.      Plaintiffs provide comprehensive reproductive healthcare consistent with Idaho state law, including consulting with patients and advising them regarding available medical treatments, consistent with their ethical and legal obligations.  As part of their practice, providers

counsel patients on their pregnancy options, including providing patients with information on how to obtain lawful out-of-state abortion care when desired by the patient, including at times referring patients to specific out-of-state providers.  Absent Attorney General Labrador's overbroad and unsupported interpretation of Idaho's Total Abortion Ban, Plaintiffs would provide pregnant patients with critical information to obtain necessary abortion care where it is safe and legal—that is, outside of Idaho.  As a result of Attorney General Labrador's letter, Dr. Gustafson, Dr. Weyhrich, and Planned Parenthood's Idaho health center providers and other staff have ceased having comprehensive conversations with their patients about out-of-state abortion options and no longer provide patients with information about out-of-state resources or recommend to them out-of-state providers who can offer them abortion care.

5.     Plaintiffs wish to resume the comprehensive care that they are ethically obligated to provide to their patients, which includes being able to discuss all available, legal options, and refer patients to medically appropriate resources.  To that end, Plaintiffs seek declaratory and injunctive relief protecting them from this unconstitutional and unprecedented application of Idaho law.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343. This is an action to enforce civil and constitutional rights pursuant to 42 U.S.C. § 1983 and the United States Constitution.

7.     This Court has authority to award the requested declaratory and injunctive relief under 28 U.S.C. §§ 2201, 2202, 1343, Federal Rules of Civil Procedure 57 and 65, and the general legal and equitable powers of the court.

8.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because Defendants reside within this judicial district and because a substantial part of the acts or omissions giving rise to this action arose from events occurring within this judicial district.

9.      Pursuant to D. Idaho Civ. R. 3.1, venue is proper in the Southern Division because some Defendants legally reside in Ada County, Idaho, and because that is where the claim for relief arose.

## PARTIES

### I.    Plaintiffs

10.     Plaintiff Planned Parenthood is a not-for-profit corporation organized under the laws of the State of Washington and doing business in Idaho.  It is the largest provider of reproductive health services in Idaho, operating two health centers in the State, one in Ada County (Meridian) and one in Twin Falls County (Twin Falls).  Planned Parenthood provides a broad range of reproductive and sexual health services, including, but not limited to, well person examinations, birth control, testing and treatment for sexually transmitted infections, cancer screening, and pregnancy testing.  Planned Parenthood brings this lawsuit on behalf of itself, its providers and other staff, and its current and future patients.

11.     Plaintiff Dr. Caitlin Gustafson is a licensed physician based in Valley County, Idaho, and practices family medicine with fellowship training in obstetrics.  Dr. Gustafson brings this lawsuit on behalf of herself and her current and future patients.

12.     Plaintiff Dr. Darin L. Weyhrich is a licensed physician based in Ada County, Idaho, who practices obstetrics and gynecology.  Dr. Weyhrich brings this lawsuit on behalf of himself and his current and future patients.

13.     Plaintiffs have standing to sue to prevent enforcement of Idaho Code § 18-622(2) as to speech about, and the provision of or "assist[ance]" in providing, lawful out-of-state abortions based on the Attorney General's threatened enforcement.[1]

## II.     Defendants

14.     Defendant Raúl Labrador is the Attorney General of Idaho, named in his official capacity.

15.     State attorneys general are proper defendants where they "intend[] either to enforce a statute or to 'encourage local law enforcement agencies to do so.'" *Culinary Workers Union*, 200 F.3d at 618–619 (quoting *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992)). Through his March 27 letter, Attorney General Labrador has demonstrated a clear intent to enforce the statute against Idaho health care providers who give comprehensive information to patients seeking an out of state abortion, or who otherwise "assist" patients in obtaining such an abortion, or to encourage and/or direct state licensing boards and prosecuting attorneys to do so, or both.

16.     The Attorney General has also demonstrated that he interprets Idaho Code § 18-622(2) to apply to at least some abortions obtained outside of Idaho. When criminal enforcement

---

[1] *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) ("[A] plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.") (quoting *Babbitt v. Farm Workers*, 442 U. S. 289, 298 (1979)); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) ("[W]here threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—--for example, the constitutionality of a law threatened to be enforced."); *Culinary Workers Union, Loc. 226 v. Del Papa*, 200 F.3d 614, 618–619 (9th Cir. 1999) ("[Courts] do not require, especially in the context of First Amendment cases, that the plaintiff risk prosecution by failing to comply with state law.").

is possible, the Idaho Attorney General is a proper defendant.  *See Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919–920 (9th Cir. 2004).

17.   Defendants County Prosecuting Attorneys (the "County Prosecuting Attorneys") are the Prosecuting Attorneys in the following Idaho counties: Ada, Adams, Bannock, Bear Lake, Benewah, Bingham, Blaine, Boise, Bonner, Bonneville, Boundary, Butte, Camas, Canyon, Caribou, Cassia, Clark, Clearwater, Custer, Elmore, Franklin, Fremont, Gem, Gooding, Idaho, Jefferson, Jerome, Kootenai, Latah, Lemhi, Lewis, Lincoln, Madison, Minidoka, Nez Perce, Oneida, Owyhee, Payette, Power, Shoshone, Teton, Twin Falls, Valley, and Washington, named in their official capacities.  The County Prosecuting Attorneys are proper Defendants, as they bear primary responsibility for enforcing Idaho Code § 18-622(2) in their respective Idaho counties.  *See* Idaho Code § 31-2227.  They are designated by their official title pursuant Federal Rule of Civil Procedure 17(d).

18.   The individual members of the Idaho State Board of Medicine and Idaho State Board of Nursing are sued in their official capacities. These are members of professional licensing boards charged with the duty of suspending and revoking the licenses of doctors, and nurses in Idaho.  *See* Idaho Code §§ 54-1814(6), 54-1404(2).  They are designated by their official title pursuant to Federal Rule of Civil Procedure 17(d).

## FACTUAL ALLEGATIONS

### III.   State of Idaho Abortion Law

19.   Idaho law makes it a felony for "[e]very person" to "perform[] or attempt[] to perform an abortion."  Idaho Code § 18-622(2).  Anyone who violates the Ban's prohibition is subject to between two and five years' imprisonment.  *Id.*

20.   An "abortion" is defined as "the use of any means to intentionally terminate the clinically diagnosable pregnancy of a woman with knowledge that the termination by those

means will, with reasonable likelihood, cause the death of the unborn child . . . . "  Idaho Code § 18-604(1).

21.     Further, the statute states that "[t]he professional license of any health care professional who performs or attempts to perform an abortion or who assists in performing or attempting to perform an abortion in violation of this subsection shall be suspended by the appropriate licensing board for a minimum of six (6) months upon a first offense and shall be permanently revoked upon a subsequent offense."  Idaho Code § 18-622(2).

22.     In other words, the licensing provision applies only where the licensed professional assists with an abortion that itself violates the Total Abortion Ban.  *Id.* (referencing abortions performed "in violation of this subsection").

23.     On March 27, 2023, in response to an inquiry from Representative Brent Crane, Idaho Attorney General Raúl Labrador issued publicly a letter interpreting Idaho's prohibitions on abortion.

24.     In relevant part, Representative Crane asked "whether Idaho's abortion prohibitions preclude . . . referring women across state lines to obtain abortion services."  Ex. 1.

25.     Labrador responded that, with respect to referring a patient "across state lines to access abortion services," "Idaho law requires the suspension of a health care professional's license when he or she '*assists* in performing or attempting to perform an abortion.'" Ex. 1 (citing Idaho Code § 18-622(2)) (emphasis added by Labrador).  According to Labrador,

> The plain meaning of assist is to give support or aid.  An Idaho health care professional who refers a woman across state lines to an abortion provider . . . has given support or aid to the woman in performing or attempting to perform an abortion and has thus violated the statute.
>
> Ex. 1

26.     Labrador's letter thus announces two premises with respect to the Total Abortion Ban.  First, he concludes that Idaho law prohibits healthcare providers from providing assistance to Idahoans in need of out-of-state abortion services by giving them information about and/or making referrals to aid them in obtaining abortion services in states where such services are legal.  And second, the necessary conclusion of his interpretation is that Idaho's Total Abortion Ban applies not only to abortions performed within the state, but to at least some abortions performed out-of-state, because he interprets an abortion performed out-of-state as an abortion that triggers the license suspension, which applies *only* to an abortion performed "*in violation of this subsection*." Idaho Code § 18-622(2) (emphasis added).  The only way that could be true is if an out-of-state abortion violates Idaho's Total Abortion Ban.  As detailed below, both premises are unconstitutional.

**IV.     The Effect of the Attorney General's Overreaching and Unconstitutional Interpretation of Section 18-622(2) on Idahoan's Health Care**

27.     It is common for medical providers to counsel their patients about and recommend them for individualized and specialized medical treatments out of state.  There are cancer clinics, for example, that draw their patients from across the country because of clinical trials or treatments only available in those locations.  Consultation with a medical provider in Idaho regarding the availability of these options is often the first step in providing Idahoans access to these critical treatments.  Similarly, with respect to pregnancy, patients have the right to seek counsel and medical advice, or any other form of "assist[ance]," from their medical provider about all options, including those options—such as abortion—that are banned in Idaho but permitted elsewhere.

28.     Pregnancy and childbirth impact an individual's physical and mental health, finances, and personal relationships.  Whether to take on the health risks of pregnancy and the

responsibilities of parenting is an extremely personal and consequential decision that must be left to the individual to determine without governmental interference.  To make those decisions, Idahoans have the right to ask their medical provider for information regarding all treatments— including those options that are lawful and available outside of Idaho.  Providers likewise have a right to provide information and recommendations about health care options.

29.     Guided by their individual health needs, values, and circumstances, Idahoans may seek guidance from their health care providers about abortion for a variety of deeply personal reasons, including medical, familial, and financial concerns.  Those reasons can include preserving their health, protecting their ability to care and provide for their children, financial concerns about the ability to work or go to school while pregnant or parenting, or complicated family circumstances.  Without the ability to discuss with their health care provider information related to their health, including the risks of continuing a pregnancy, Idahoans will lose the right to make critical decisions about their health, bodies, lives, and futures.

30.     Health care providers are trusted with some of the most intimate information a person has.  What a patient eats and drinks, what medications they take, with whom they engage in sexual activity—all of this is provided to physicians to diagnose and treat conditions or ailments.  Health care providers also aim to, and are trusted to, offer their honest opinions to patients.

31.     A number of existing laws acknowledge and recognize the unique relationship between physician and patient.  For example, to facilitate the open and honest exchange of information between a patient and her doctor, communications between doctors and patients are protected from compelled disclosure by state law.  *See* Idaho R. Evid. 503.  Erecting governmental barriers to the free exchange of information between the patient and their health

care providers undermines the bedrock tenets of their relationship, and isolates patients from essential information about safe and legal healthcare provided in other states.

32.     If providers cannot provide information to  patients about safe abortion care out of state, including the provision of referrals to an out of state provider for such care, and if patients cannot otherwise make the trip out of state because of uncertainty of access to care, the Total Abortion Ban will force some patients to terminate their unwanted pregnancies outside a clinical setting, which could put them at medical or legal risk.

33.     The negative impacts of prohibiting abortions are often most severe for those who are already marginalized.  For example, victims of domestic violence are at an increased risk of harm during pregnancy.  For Idahoans experiencing intimate partner violence, forced pregnancy exacerbates the risk of new or increased violence, and further—often permanently—tethers the victim and the victim's family to their abuser.  Furthermore, while poor Idahoans already struggled to scrape together the resources necessary to pay for an abortion, they now face additional costs of traveling out of state.

34.     Even those patients whose dire situations may technically qualify for the life exception within Idaho may still be refused care within the state of Idaho because providers fear being held criminally liable under the Total Abortion Ban.  Removing the ability for providers to provide information, including referrals, to patients about safe abortion care out of state, will be devastating for those at risk for or experiencing complications that may seriously and permanently impair their health.  This is particularly true because the Total Abortion Ban contains only an affirmative defense—not an exception—for abortions "necessary to prevent the death of the pregnant woman."  Idaho Code § 18-622(3)(a)(ii).  In other words, an abortion provider could still be criminally charged for saving a patient's life.

35.     The inability to provide information to patients about safe abortion care out of state, including the provision of referrals for such care, will inhibit patients from accessing necessary care in any of a number of extraordinarily difficult circumstances, including where a patient has an underlying health condition that is exacerbated by pregnancy, or where she has received a diagnosis of a health condition in the fetus, including potentially lethal conditions. This compounds an already difficult scenario by making the patient feel abandoned and alone as they navigate the next steps for their family, negatively impacting the patient's health and wellbeing.

36.     In addition to the effect on patients, Labrador's interpretation of the Total Abortion Ban is likely to drive more health care providers, particularly those who provide obstetric and gynecological care, away from Idaho due to their credible fear of civil and criminal prosecution.[2]

37.     The fear of licensure penalties is particularly acute for health care providers who, like Dr. Gustafson and some Planned Parenthood providers, are licensed in Idaho and another state.

38.     Some of these providers, including Plaintiff Dr. Gustafson, had planned to begin providing abortions in states where doing so is lawful, including to patients from Idaho, but those plans have been put in jeopardy because of Labrador's interpretation of the Total Abortion Ban.

---

[2] *See* John Werdel, *Change is Needed in Idaho's Abortion Laws Before it is Too Late*, Idaho Capital Sun (Mar. 7, 2023), https://idahocapitalsun.com/2023/03/07/change-is-needed-in-idahos-abortion-laws-before-it-is-too-late/; https://www.idahostatesman.com/opinion/readers-opinion/article272519522.html;  Kelcie Moseley-Morris, *Citing Staffing Issues and Political Climate, North Idaho Hospital Will No Longer Deliver Babies*, Idaho Capital Sun (Mar. 17, 2023), Kylie Cooper, *I'm a Maternal-Health Doctor, and I'm Leaving Idaho Because of Restrictive Abortion Ban*, The Idaho Statesman (Feb. 16, 2023) https://idahocapitalsun.com/2023/03/17/citing-staffing-issues-and-political-climate-north-idaho-hospital-will-no-longer-deliver-babies/.

In other words, Labrador's interpretation is affecting the health care Idahoans are able to receive outside of Idaho, even in states where abortion is legal.

39.    Others of these cross-licensed health care providers primarily practice in other states but have, in the past, served Idaho communities. These providers may give up their Idaho licenses altogether due to their concerns about Labrador's overreaching interpretation of the Total Abortion Ban, reducing Idahoans access to needed health care within the State's borders.

40.    Similarly, before Labrador's letter, Planned Parenthood providers would counsel their patients about their pregnancy options and resources for medical care, including outside the state of Idaho, and from time to time, assist patients in scheduling care outside of Idaho. Providers would provide an information packet of resources including general information about different pregnancy options, including abortion; a list of "Abortion Providers Nearest to You" that lists health centers operated by both Planned Parenthood Great Northwest, Hawaii, Alaska, Indiana, Kentucky and other providers in Washington, Montana, Nevada, Wyoming, Oregon, and Utah; an information sheet with information about funds that can help with travel and/or appointment costs; and a flier on "Abortion law in Idaho" that states that abortion is banned in Idaho. Following Labrador's letter, Planned Parenthood providers no longer do so.

41.    But for the Attorney General's interpretation, Dr. Gustafson and Dr. Weyhrich likewise would, where appropriate and consistent with their legal and ethical obligations, inform and counsel patients regarding abortion, including potentially referring patients to out-of-state providers.

42.    The Attorney General's interpretation also demonstrates that he is taking the position that at least some abortions in other states are banned by Idaho criminal law—a truly novel, shocking and blatantly unconstitutional interpretation of Idaho's Total Ban that risks

further isolating Idaho patients by cutting them off from critical health care in other states that is

legal in those states.

43.     Plaintiffs have no adequate remedy at law.

**CLAIMS FOR RELIEF**

**COUNT I**
**(UNCONSTITUTIONAL RESTRICTIONS ON SPEECH IN VIOLATION OF THE**
**FIRST AMENDMENT TO THE U.S. CONSTITUTION)**

44.     Plaintiffs bring this claim against all Defendants.  Plaintiffs incorporate by

reference all of the allegations set forth in the preceding paragraphs 1 through 43.

45.     The First Amendment to the United States Constitution provides that "Congress

shall make no law . . . abridging the freedom of speech."  The First Amendment applies to state

and local governments under the Fourteenth Amendment to the United States Constitution,

including applying to professional licensing regimes.

46.     Content-based restrictions on speech are presumptively unconstitutional and may

be justified only if the government proves that they are narrowly tailored to further a compelling

governmental interest.  *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).  Viewpoint-

based restrictions are "an egregious form of content discrimination" and are presumptively

unconstitutional in any setting.  *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S.

819, 828-829 (1995).

47.     The Total Abortion Ban, Idaho Code § 18-622(2), as interpreted by the Idaho

Attorney General, unconstitutionally restricts Plaintiffs' rights of free speech.

48.     The Total Abortion Ban, under the Attorney General's interpretation, is a content-

and viewpoint-based restriction that prohibits physicians and other medical providers from

providing any "support or aid" to a woman seeking abortion, including "refer[ing] a woman

across state lines to an abortion provider." Ex. 1, Labrador Letter.

14

49.     The Total Abortion Ban, as interpreted by Labrador, does not further a compelling governmental interest.

50.     Idaho has no legitimate interest, much less a compelling interest, in preventing its physicians and other medical providers from counseling their patients about medical treatments that are legal and available in other states or referring them to providers who provide those treatments out of state.  *See Bigelow v. Virginia*, 421 U.S. 809, 827-828 (1975) ("This asserted interest [in preventing citizens from learning information about activities outside of the state's borders], even if understandable, was entitled to little, if any, weight.").

51.     Labrador's interpretation of the Total Abortion Ban is not narrowly tailored, as there are many less-restrictive means that Idaho could have employed even if it had a compelling government purpose, which it does not.

52.     The Total Abortion Ban, and Labrador's interpretation of it, is unconstitutional as applied to the provision of information, referrals, or other "assist[ance]" to patients seeking abortions in states in which abortion is legal.

53.     The Total Abortion Ban and Labrador's interpretation of it unconstitutionally chill Plaintiffs' speech, and without declaratory and injunctive relief, will continue to do so.

54.     Accordingly, Plaintiffs are entitled to a declaratory judgment, judgment awarding them preliminary and permanent injunctive relief, attorneys' fees, costs, and any other relief the Court deems just and appropriate.

## COUNT II
## (UNCONSTITUTIONAL EXTRATERRITORIAL APPLICATION
## IN VIOLATION OF THE COMMERCE CLAUSE)

55.     Plaintiffs Planned Parenthood and Dr. Gustafson bring this claim against all Defendants.  Plaintiffs incorporate by reference all of the allegations set forth in the preceding paragraphs 1 through 43.

56.     The Commerce Clause of the United States Constitution prohibits a state from applying its laws extraterritorially to regulate out-of-state activity which is lawful where it occurs, and prohibits state laws which discriminate against interstate commerce or impose undue burdens on interstate commerce.  U.S. Const. Art. I, § 8, cl 3; *see also South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080 (2018); *Healy v. Beer Inst., Inc.*, 491 U.S. 324 (1989).

57.     The Attorney General's interpretation of the Total Abortion Ban seeks to criminalize otherwise lawful abortion care provided outside the state, and therefore constitutes a regulation of "commerce that takes place wholly outside of the State's borders," in violation of the dormant Commerce Clause.  *Healy*, 491 U.S. at 336.

58.     The medical services at issue in this case—the provision of abortion care to Idahoans outside of Idaho—unquestionably constitutes commerce under the dormant commerce clause.  *See, e.g.*, *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 329 (1991) ("provision of health care services" is "commerce").

59.     By restricting Idahoans' access to out-of-state abortion care, Idaho seeks to "directly control[] commerce occurring wholly outside [its] boundaries," thereby "exceed[ing] the inherent limits of the enacting State's authority."  *Healy*, 491 U.S. at 336.  Further, it is well-settled that the fact that a state's residents engage in commercial activity taking place elsewhere does not give the state license to regulate that out-of-state activity.  *See, e.g.*, *Sam Francis Found. v. Christies*, 784 F.3d 1320, 1323 (9th Cir. 2015) (en banc).

60.     Idaho's attempt to regulate the provision of out-of-state commercial activity, in the form of abortion care taking place beyond its borders in jurisdictions where the provision of abortion services is legal, is unconstitutional in violation of the Dormant Commerce Clause, and it must be enjoined and declared unlawful.

61.     Accordingly, Plaintiffs are entitled to a declaratory judgment, judgment awarding preliminary and permanent injunctive relief, declaratory relief, attorneys' fees, costs, and any other relief the Court deems just and appropriate.

## COUNT III
### (UNCONSTITUTIONAL EXTRATERRITORIAL APPLICATION IN VIOLATION OF THE DUE PROCESS CLAUSE)

62.     Plaintiffs Planned Parenthood and Dr. Gustafson bring this claim against all Defendants.  Plaintiffs incorporate by reference all of the allegations set forth in the preceding paragraphs 1 through 42.

63.     The Fourteenth Amendment of the United States Constitution prohibits a state from applying its laws extraterritorially to criminalize out-of-state activity which is lawful where it occurs.  U.S. Const. amend. XIV; *see also Nielsen v. State of Oregon*, 212 U.S. 315, 321 (1909) ("[F]or an act done within the territorial limits of [one state], under authority and license from that state, one cannot be prosecuted and punished by . . . [a different] state.").

64.     Any attempt by Idaho officials to punish providers for providing Idaho residents with abortion services in other states, which are legal in the jurisdictions where they are performed, violates Plaintiffs' due process rights.  As the Supreme Court has made clear, "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort."  *BMW of N.A. v. Gore*, 517 U.S. at 559 n.19 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)).

65.     The same is true for Labrador's threat of licensing sanctions against Idaho healthcare professionals who "assist" Idaho residents in obtaining such an out-of-state abortion by, for example, providing information or referrals.

66.     The Attorney General's interpretation of the Total Abortion Ban violates fundamental principles of due process and must be declared unlawful.

17

67.     Accordingly, Plaintiffs are entitled to a declaratory judgment, judgment awarding preliminary and permanent injunctive relief, attorneys' fees, costs, and any other relief the Court deems just and appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1) Declaratory judgment relief:

   a. That enforcement of Idaho Code § 18-622 against Plaintiffs or any of their agents, staff, or volunteers for abortions that take place outside of Idaho is unconstitutional;

   b. That enforcement of Idaho Code § 18-622 against Plaintiffs or any of their agents, staff, or volunteers for speech related to abortion services outside of Idaho is unconstitutional, including, but not limited to:

      i. Counseling about abortion services outside of Idaho;

      ii. Informing about abortion services outside of Idaho;

      iii. Recommending abortion services outside of Idaho;

      iv. Informing about particular abortion providers outside of Idaho;

      v. Informing about sources of funding for abortion services outside of Idaho and/or sources of funding for travel and other expenses related to those abortion services;

      vi. Referring a patient to an abortion provider outside of Idaho;

   c. That Idaho's abortion statutes do not apply to abortions obtained or performed outside of Idaho.

   d. That Attorney General Labrador's interpretation of Idaho Code § 18-622 is unconstitutional because it violates the U.S. Constitution's Commerce Clause, Due Process Clause, and the First Amendment.

2) Enter an Order temporarily, preliminarily, and permanently enjoining Attorney General Labrador from enforcing his unconstitutional interpretation of Idaho Code § 18-622.

3) Enter an Order temporarily, preliminarily, and permanently enjoying the County Prosecuting Attorneys from enforcing Attorney General Labrador's unconstitutional interpretation of Idaho Code § 18-622.

4)      Enter an Order temporarily, preliminarily, and permanently enjoining the Licensing Boards from enforcing Attorney General Labrador's unconstitutional interpretation of Idaho Code § 18-622.

5)      Reasonable attorneys' fees and costs.

6)      Any other relief that the Court deems just and proper.

Jennifer R. Sandman*
Catherine Peyton Humphreville*
Planned Parenthood Federation of America
123 William Street
New York, NY 10038
T: 212-965-7000
jennifer.sandman@ppfa.org
catherine.humphreville@ppfa.org

Michael J. Bartlett (ISB No. 5496)
Bartlett & French LLP
1002 W Franklin St.
Boise, Idaho 83702
T: 208-629-2311
F: 208-629-2460 (fax)
Michael@BartlettFrench.com

*Attorneys for Plaintiff Planned Parenthood
Great Northwest, Hawaii, Alaska, Indiana,
Kentucky*

Andrew Beck*
Meagan Burrows*
Ryan Mendías*
Scarlet Kim*
American Civil Liberties
    Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
T: 212-549-2633
F: 212-549-2649
abeck@aclu.org
mburrows@aclu.org
rmendias@aclu.org
scarletk@aclu.org

Dina Flores-Brewer (ISB No. 6141)
American Civil Liberties Union of
    Idaho Foundation
P.O. Box 1897
Boise, ID 83701
T: 208-344-9750
DFloresBrewer@acluidaho.org

*Attorneys for Physician Plaintiffs*

Respectfully submitted,
/s/ Colleen R. Smith
Colleen R. Smith (ISB No. 10023)
Stris & Maher LLP
American Civil Liberties Union of
    Idaho Foundation Cooperating Attorney
1717 K Street NW, Suite 900
Washington, DC 2006
T: 202-800-5749
csmith@stris.com

Katherine V. Mackey*
Wilmer Cutler Pickering
    Hale and Dorr LLP
60 State Street
Boston, MA 02109
T: 617-526-6993
F: 617-526-5000
katherine.mackey@wilmerhale.com

Peter G. Neiman*
Alan E. Schoenfeld*
Michelle Nicole Diamond*
Rachel E. Craft*
Wilmer Cutler Pickering
    Hale and Dorr LLP
7 World Trade Center
New York, NY 10007
T: 212-230-8800
F: 212-230-8888
peter.neiman@wilmerhale.com
alan.schoenfeld@wilmerhale.com
michelle.diamond@wilmerhale.com
rachel.craft@wilmerhale.com

*Attorneys for Plaintiffs*
* *Pro hac vice applications forthcoming*