Colleen R. Smith (ISB No. 10023)
Stris & Maher LLP
American Civil Liberties Union of
    Idaho Foundation Cooperating Attorney
1717 K Street NW, Suite 900
Washington, DC 20006
T: 202-800-5749
csmith@stris.com

Katherine V. Mackey*
Wilmer Cutler Pickering
   Hale and Dorr LLP
60 State Street
Boston, MA 02109
T: 617-526-6993
F: 617-526-5000
katherine.mackey@wilmerhale.com

Peter G. Neiman*
Alan E. Schoenfeld*
Michelle Nicole Diamond*
Rachel E. Craft*
Wilmer Cutler Pickering
    Hale and Dorr LLP
7 World Trade Center
New York, NY 10007
T: 212-230-8800
F: 212-230-8888
peter.neiman@wilmerhale.com
alan.schoenfeld@wilmerhale.com
michelle.diamond@wilmerhale.com
rachel.craft@wilmerhale.com

*Attorneys for Plaintiffs*

*Additional counsel for Plaintiffs
identified on following page*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO
## SOUTHERN DIVISION

| | |
|---|---|
| **PLANNED PARENTHOOD GREAT NORTHWEST, HAWAII, ALASKA, INDIANA, KENTUCKY**, on behalf of itself, its staff, physicians and patients, **CAITLIN GUSTAFSON, M.D.**, on behalf of herself and her patients, and **DARIN L. WEYHRICH, M.D.**, on behalf of himself and his patients,<br><br>              Plaintiffs,<br><br>       v.<br><br>**RAÚL LABRADOR**, in his official capacity as Attorney General of the State of Idaho; **MEMBERS OF THE IDAHO STATE BOARD OF MEDICINE** and **IDAHO STATE BOARD OF NURSING**, in their official capacities, **COUNTY PROSECUTING ATTORNEYS**, in their official capacities,<br><br>              Defendants. | Case No.  1:23-cv-142<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

Jennifer R. Sandman*
Catherine Peyton Humphreville*
Planned Parenthood Federation of America
123 William Street
New York, NY 10038
212-965-7000
jennifer.sandman@ppfa.org
catherine.humphreville@ppfa.org

Michael J. Bartlett (ISB No. 5496)
Bartlett & French LLP
1002 W Franklin St.
Boise, Idaho 83702
T: 208-629-2311
F: 208-629-2460 (fax)
Michael@BartlettFrench.com

*Attorneys for Plaintiff Planned Parenthood
Great Northwest, Hawaii, Alaska, Indiana,
Kentucky*

Dina Flores-Brewer (ISB No. 6141)
American Civil Liberties Union of
    Idaho Foundation
P.O. Box 1897
Boise, ID 83701
T: 208-344-9750
DFloresBrewer@acluidaho.org

Andrew Beck*
Meagan Burrows*
Ryan Mendías*
Scarlet Kim*
American Civil Liberties Union
    Foundation
125 Broad Street, 18th Floor
New York, NY 10004
T: 212-549-2633
F: 212-549-2649
abeck@aclu.org
mburrows@aclu.org
rmendias@aclu.org
scarletk@aclu.org

*Attorneys for Physician Plaintiffs*

*\* Pro hac vice applications forthcoming*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................... 1

FACTUAL BACKGROUND ............................................................................... 2

A.   Idaho's Criminalization of Abortion ......................................................... 2

B.   The Attorney General's Threatened Enforcement Is Irreparably Harming
     Plaintiffs and Their Patients ...................................................................... 3

LEGAL STANDARD .......................................................................................... 6

ARGUMENT ....................................................................................................... 7

I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS ......... 7

     A.   AG Labrador's Interpretation Is an Impermissible Content- and
          Viewpoint-Based Regulation of Speech That Violates the First
          Amendment .......................................................................................... 8

     B.   AG Labrador's Interpretation of The Total Abortion Ban Violates The
          Due Process Clause By Penalizing Extraterritorial Conduct That Is Legal
          In The State Where It Occurs ............................................................. 11

     C.   AG Labrador's Interpretation Of The Total Abortion Ban Violates The
          Dormant Commerce Clause By Penalizing Extraterritorial Conduct That Is
          Legal In The State Where It Occurs .................................................. 14

II.  PLAINTIFFS WILL BE IRREPARABLY HARMED BY THE DENIAL OF THEIR
     CONSTITUTIONAL RIGHTS AND THEIR INABILITY TO CARE FOR THEIR
     PATIENTS ............................................................................................... 16

III. THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR AN INJUNCTION ......... 17

CONCLUSION .................................................................................................. 18

# TABLE OF AUTHORITIES

## CASES

Page(s)

*American Beverage Ass'n v. City & County of San Francisco*, 916 F.3d 749
(9th Cir. 2019)..................................................................................................17

*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 564 U.S. 721
(2011)...............................................................................................................10

*Bigelow v. Virginia*, 421 U.S. 809 (1975)................................................9, 10, 11, 12, 14

*BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996)...............................11, 12, 13

*Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447 (1923) ................................7

*Conant v. Walters*, 309 F.3d 629 (9th Cir. 2002) ............................................................9

*Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614 (9th Cir. 1999)............7

*Diamontiney v. Borg*, 918 F.2d 793 (9th Cir. 1990) .....................................................16

*Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022)..............1, 12

*Dominguez v. Schwarzenegger*, 596 F.3d 1087 (9th Cir. 2010) ...................................17

*Elrod v. Burns*, 427 U.S. 347 (1976) ............................................................................16

*Farris v. Seabrook*, 677 F.3d 858 (9th Cir. 2012) ........................................................16

*Gordon v. Holder*, 721 F.3d 638 (D.C. Cir. 2013) .......................................................17

*H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525 (1949)...........................................14

*Healy v. Beer Institute, Inc.*, 491 U.S. 324 (1989)...........................................14, 15, 16

*Hughes v. Oklahoma*, 441 U.S. 322 (1979) ..................................................................14

*Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660 (7th Cir. 2010)..................................15

*National Ass'n of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018) ...........9

*Nielsen v. State of Oregon*, 212 U.S. 315 (1909)......................................................11, 14

*Perlot v. Green*, 609 F. Supp. 3d 1106 (D. Idaho 2022)..................................................6

*Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908 (9th Cir. 2004) ................7

*Puente Arizona v. Arpaio*, 821 F.3d 1098 (9th Cir. 2016)...............................................6

*Recycle for Change v. City of Oakland*, 856 F.3d 666 (9th Cir. 2017)........................6

*Reed v. Town of Gilbert, Arizona*, 576 U.S. 155 (2015)................................................8

*Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819 (1995) ....................8

*Sam Francis Foundation v. Christies*, 784 F.3d 1320 (9th Cir. 2015) ...........................15

*Sanders County Republican Central Committee v. Bullock*, 698 F.3d 741 (9th Cir. 2012) ...........7

*Short v. Brown*, 893 F.3d 671 (9th Cir. 2018) ...............................................................6

*South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080 (2018) .........................................14, 15

*State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003).....11, 12, 13, 14

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832
     (9th Cir. 2001)........................................................................................................6

*Summit Health, Ltd. v. Pinhas,* 500 U.S. 322 (1991)...................................................15

*Tingley v. Ferguson*, 47 F.4th 1055 (9th Cir. 2022) ....................................................10

*United States v. Alvarez*, 567 U.S. 709 (2012) ............................................................10

*Victory Processing, LLC v. Fox*, 937 F.3d 1218 (9th Cir. 2019)...................................10

*Western Watersheds Project v. Zinke*, 336 F. Supp. 3d 1204 (D. Idaho 2018) ...........................7

*White v. Ford Motor Co.*, 312 F.3d 998 (9th Cir. 2002)...............................................12

## STATUTES, RULES, AND REGULATIONS

Idaho Code
     § 18-622 ..............................................................................................2, 3, 11
     § 31-2227 ...................................................................................................7
     § 54-1814 ...................................................................................................7
     § 54-1404 ...................................................................................................7
     § 54-1718 ...................................................................................................7

## INTRODUCTION

Shortly after the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), Idaho's ban on abortion went into effect, stripping Idahoans of the longstanding right to choose to terminate a pregnancy.  On March 27, 2023, Attorney General Labrador ("Labrador") issued a letter interpreting Idaho law to prohibit health care providers from giving patients truthful and accurate information about out-of-state abortion services, including referrals for such services, or anything else deemed to "assist" the patient in obtaining an abortion out of state (the "Labrador Interpretation").  The Labrador Interpretation is an unprecedented overreach that infringes on the rights of Planned Parenthood Great Northwest, Hawaii, Alaska, Indiana, Kentucky ("Planned Parenthood"), Caitlin Gustafson, M.D., and Darin L. Weyhrich, M.D. (collectively, "Plaintiffs") under the First Amendment and the Due Process and Dormant Commerce Clauses, and, if vindicated, could permit the State to prohibit abortions occurring in other states where such conduct is wholly legal.  As a result, Plaintiffs—who provide comprehensive reproductive health care consistent with Idaho law—have stopped providing critical information to their patients regarding lawful, out-of-state abortion care when desired by the patient, and are left in grave uncertainty as to what actions may expose them to penalties under the extreme and unconstitutional Labrador Interpretation.

Labrador's overreach puts state government in the exam room with the health care provider and patient, making their communications about abortions that are legal in other states fodder for a potential licensing—or even criminal—case against the provider.  Moreover, the Labrador Interpretation is inconsistent with *Dobbs*, which permitted each individual state to regulate abortion and did not "prevent the numerous states that readily allow abortion from continuing to readily allow abortion."  *Dobbs*, 142 S. Ct. at 2305 (Kavanaugh, J., concurring) (listing *amici* states supporting abortion provider-plaintiff)).

1

Absent immediate relief from this Court, the Labrador Interpretation will continue to violate Plaintiffs' constitutional rights each and every day it remains in effect, and will continue to prevent Plaintiffs from counseling their patients about all appropriate medical treatments, including about abortion in states where it is legal. Plaintiffs seek a temporary restraining order and injunctive relief to block this unconstitutional and unprecedented application of Idaho law.

## FACTUAL BACKGROUND

### A. Idaho's Criminalization of Abortion

For nearly fifty years, physicians provided safe and legal abortions to Idahoans. Following the U.S. Supreme Court's ruling in *Dobbs*, Idaho laws restricting abortion, including Idaho Code § 18-622 (the "Total Abortion Ban"), were allowed to go into effect, forcing Idahoans seeking abortions to flee the state to obtain one—or to carry their pregnancies to term if they could not do so.

Idaho Code § 18-622 makes it a felony to perform or attempt to perform an abortion, carrying a penalty of two to five years in prison. The statute also imposes professional licensing penalties for any "health care professional who performs or attempts to perform an abortion or who assists in performing or attempting to perform an abortion in violation of this subsection." *Id.* The statute mandates that the provider's license be suspended for six months upon the first offense, and permanently revoked upon the second. *Id.*

On March 27, 2023, Labrador responded to Representative Brent Crane's inquiry about the scope of Idaho's abortion prohibitions. In his letter, Labrador asserted that the Total Abortion Ban's professional licensing provision bars medical providers from "referring a woman across state lines to access abortion services." Compl. Ex. 1 (March 27, 2023 Letter from Labrador to Representative Brent Crane) at 2. Labrador also broadly interpreted the term "assist" in Idaho Code § 18-622 to mean "give support or aid." *Id.*

2

The Labrador Interpretation thus announces two premises with respect to § 18-622(2). First, he claims that Idaho law prohibits health care providers from providing assistance to Idahoans in need of out-of-state abortion services by giving them information about and/or making referrals for abortion services in states where such services are legal.  And second, the necessary conclusion of his Interpretation is that Idaho's Total Abortion Ban applies not only to abortions performed within the state, but also to abortions performed elsewhere, because he interprets an abortion performed out-of-state as an abortion that triggers the license suspension, which only applies to an abortion performed "*in violation of this subsection*."  Idaho Code § 18-622(2) (emphasis added).  The only way that could be true is if an out-of-state abortion violates Idaho's Total Abortion Ban.

### B.  Labrador's Threatened Enforcement Is Irreparably Harming Plaintiffs And Their Patients

Plaintiffs provide comprehensive reproductive health care in Idaho, which included abortions before the Total Abortion Ban went into effect.[1]  Weyhrich Decl. ¶¶ 3, 8, 12; Gibron Decl. ¶¶ 4, 9-10, 12-14; Gustafson Decl. ¶¶ 3, 8.  Although no Plaintiff has provided an abortion in Idaho since the Total Abortion Ban took effect, all continue to see some patients who choose to seek abortion care in states where doing so is legal.  This includes those for whom abortions may be medically appropriate or necessary to protect the patient's health, as well as those who choose abortion for any of a range of other personal, family, or economic reasons.  Weyhrich Decl. ¶¶ 9-11; Gibron Decl. ¶ 11; Gustafson Decl. ¶¶ 9-11.

---

[1] Dr. Weyhrich and Dr. Gustafson have practiced obstetrics and gynecology in Idaho for nearly two decades.  Weyhrich Decl. ¶ 2; Gustafson Dec. ¶ 2.  Planned Parenthood, the largest provider of reproductive health services in Idaho, provides a broad range of reproductive and sexual health services, including, but not limited to: testing, treatment and vaccines for certain sexually transmitted infections, cervical cancer screening, mammogram referrals, fibroids evaluations, and annual wellness checks.  Gibron Decl. ¶ 9.  It employs licensed health professionals in Idaho and neighboring states.  Gibron Decl. ¶¶ 10, 13, 14, 24.

Pregnant patients may require abortions for a variety of serious health reasons, including high-risk diabetes or hypertension.  Weyrich Decl. ¶ 10.  Other pregnant patients may require abortions following placental abruption or infection or the onset of pre-eclampsia—serious health risks that can result in death if pregnant patients continue their pregnancies.  Gustafson Decl. ¶ 10.  Other pregnant patients may require abortions as a result of high-risk health conditions or treatments unrelated to pregnancy, including, for instance, cancer treatments, which could put the pregnant woman's health and even life at risk if forced to carry to term.  Other patients seek abortions because of serious fetal anomalies or because the pregnancy resulted from rape or incest.  Gibron Decl. ¶ 11; Gustafson Decl. ¶ 11; Weyrich Decl. ¶¶ 9, 11.

After the imposition of the Total Abortion Ban, but before the Labrador Interpretation, the practice of Planned Parenthood and Dr. Gustafson was to counsel patients about their available options, including carrying the pregnancy to term or abortion.[2]  Gibron Decl. ¶ 12; Gustafson Decl. ¶ 12.  As part of this conversation, Planned Parenthood and Dr. Gustafson would provide patients with information about out-of-state abortions and provide referrals and other information that helped patients make the necessary scheduling and travel arrangements; when necessary, Dr. Gustafson would talk with out-of-state doctors to facilitate continuity of care.  Gibron Decl. ¶ 13; Gustafson Decl. ¶ 13.  Planned Parenthood staff would also help patients schedule appointments at one of its Washington health centers or give them information about health centers operated by other providers in states where abortion is legal.  Gibron Decl. ¶ 14.

As a result of the Labrador Interpretation and under threats of loss of their professional licenses and, potentially, criminal prosecution, Plaintiffs can no longer advise patients about

---

[2] Dr. Weyrich did not treat any patients needing out-of-state recommendations for abortion providers during this time.  Weyrich Decl. ¶ 12.

options for terminating their pregnancies and the availability of legal, out-of-state options, nor can they assist patients by making referrals or scheduling appointments, including in the context of medically complex pregnancies as well as for the range of other reasons that patients choose abortion.  Gibron Decl. ¶¶ 15-17; Gustafson Decl. ¶¶ 16-17; Weyrich Decl. ¶ 14.  This has devastating consequences for Plaintiffs, who can no longer speak freely about medical treatments with their patients or help them with basic information about how to access those treatments, and who are forced to act contrary to both medical ethics and the standard of care.  Gibron Decl. ¶ 17; Gustafson Decl. ¶¶ 18, 20; Weyrich Decl. ¶¶ 15-19.

It also has devastating consequences for Plaintiffs' patients.  Gibron Decl. ¶¶ 18-21; Gustafson Decl. ¶¶ 19, 21; Weyrich Decl. ¶ 20.  Without access to referrals or other guidance, patients will be unable to access abortions in other states or inhibited from doing so because they do not have the guidance of a trusted physician and must rely on less accurate information.  Gibron Decl. ¶ 18; Gustafson Decl. ¶¶ 21, 24; Weyrich Decl. ¶¶ 21-22.  Such patients may be forced to carry their pregnancies to term, which can have serious medical consequences and social and economic effects on pregnant patients and their families.  Gibron Decl. ¶ 20; Gustafson Decl. ¶ 22; Weyrich Decl. ¶ 25.  Other patients may ultimately be able to access abortions, but their care will be delayed or compromised for lack of a referral.  Gibron Decl. ¶ 19; Gustafson Decl. ¶ 21; Weyrich Decl. ¶ 26.  Delays in care can result in dire health consequences.  Gibron Decl. ¶ 20; Gustafson Decl. ¶ 25; Weyrich Decl. ¶¶ 26-28.

The Labrador Interpretation also leaves Plaintiffs profoundly uncertain about what conduct could expose them to civil, or even criminal, charges.  For example, some providers who are licensed in both Idaho and another state want to provide abortions outside of Idaho, but fear that doing so could result in revocation of their Idaho licenses despite the fact that abortion is lawful in

those other states.   Gustafson Decl. ¶ 15; Gibron Decl. ¶ 22.   This leaves Plaintiffs with the untenable choice of giving up their Idaho licensure, limiting the lawful medical services they provide in other states because of fear that Idaho will attempt to enforce its Total Abortion Ban even as to abortions that take place in other states, or attempting to guess what information or medical services will lead to such enforcement efforts.   *See* Gustafson Decl. ¶ 15; Gibron Decl. ¶ 24.

## **LEGAL STANDARD**

In deciding whether to grant a temporary restraining order or preliminary injunction, the Court must consider four factors: (1) likelihood of success on the merits; (2) whether the plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief; (3) whether the balance of equities tips in the plaintiffs' favor; and (4) whether an injunction is in the public interest.   *Perlot v. Green*, 609 F. Supp. 3d 1106, 1115 (D. Idaho 2022) (citing *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018)); *see Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (explaining that the analysis for a preliminary injunction and a temporary restraining order is "substantially identical").   "[A] stronger showing of one element may offset a weaker showing of another."   *Recycle for Change v. City of Oakland*, 856 F.3d 666, 669 (9th Cir. 2017).   A preliminary injunction is thus warranted even when the plaintiff raises only "serious questions" on the merits so long as "the balance of hardships tips sharply in [the plaintiff's] favor."   *Puente Ariz. v. Arpaio*, 821 F.3d 1098, 1103 n.4 (9th Cir. 2016).   Plaintiffs readily satisfy each factor.

## ARGUMENT

Plaintiffs have demonstrated that they are entitled to injunctive relief.[3] *First,* Plaintiffs are overwhelmingly likely to prevail on the merits of their claims that Labrador's unprecedented interpretation of Idaho law violates the First Amendment, the Dormant Commerce Clause, and the Due Process Clause. *Second*, Plaintiffs have established that they and their patients will suffer irreparable harm, including constitutional injury and medical harm, if the Labrador Interpretation stands. *Third*, Plaintiffs have established that the balance of equities weighs in their favor. *Finally*, Plaintiffs have established that injunctive relief is in the public interest.

## I.    Plaintiffs Are Likely To Succeed On The Merits Of Their Claims

Plaintiffs are overwhelmingly likely to prevail on the merits. Given that they are entitled to injunctive relief upon showing that they have "a substantial case for relief on the merits," they readily satisfy this requirement. This does not require Plaintiffs "to show that it is more likely than not that [they] will win on the merits," *W. Watersheds Project v. Zinke*, 336 F. Supp. 3d 1204, 1218 (D. Idaho 2018) (internal quotation marks omitted), but Plaintiffs have nevertheless

---

[3] At the request of a prosecuting attorney, Labrador has the authority to "in effect deputize himself … to stand in the role of a county prosecutor, and in that role exercise the same power to enforce the statute that the prosecutor would have." *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919-20 (9th Cir. 2004) (concluding state attorney general was proper defendant in challenge to Idaho abortion statute). He is also in a position to influence state licensing boards to apply his interpretation of Idaho law. *See Culinary Workers Union, Loc. 226 v. Del Papa*, 200 F.3d 614, 618-19 (9th Cir. 1999) (state attorney general is proper defendant when he can "encourage local law enforcement" to enforce a statute). The individual members of the Idaho State Board of Medicine and the Idaho State Board of Nursing are defendants in their official capacities, and are members of professional licensing boards charged with the duty of suspending and revoking the licenses of doctors, nurses, and pharmacists in Idaho, respectively. *See* Idaho Code §§ 54-1814(6), 54-1404(2), 54-1718(1)(d). The County Prosecuting Attorneys are proper defendants as they bear primary responsibility for enforcing Idaho Code § 18-622(2) in their respective Idaho counties. *See* Idaho Code § 31-2227. Defendants are without authority to enforce Idaho Code § 18-622(2) in connection with out-of-state abortions, because doing so is unconstitutional. *See Commonwealth of Mass. v. Mellon*, 262 U.S. 447, 488 (1923); *Sanders Cnty. Republican Cent. Comm. v. Bullock*, 698 F.3d 741, 748-49 (9th Cir. 2012).

established that they *are* likely to prevail on three separate constitutional claims: violations of the First Amendment, the Dormant Commerce Clause, and the Due Process Clause.

### A. The Labrador Interpretation Is An Impermissible Content- And Viewpoint-Based Regulation Of Speech That Violates The First Amendment

By preventing Plaintiffs from providing their patients with information about essential health care that is legal where it is being provided, the Labrador Interpretation of the Total Abortion Ban violates the First Amendment's guarantee of free speech.

The government may not regulate speech because of its message, ideas, subject matter, or content, and laws that do so are presumptively unconstitutional. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). Such restrictions are subject to strict scrutiny, which requires the government to prove that the restriction is narrowly tailored to serve a compelling state interest. *Id.* Speech restrictions are even more egregious when the government targets particular views taken by speakers on a subject (rather than targeting all views on a given subject). *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). Labrador's interpretation of Idaho Code § 18-622(2) to prohibit information or referrals for out-of-state abortions is a content- and viewpoint-based speech restriction that furthers no legitimate government interest, much less a compelling one, and is not narrowly tailored.

*First*, the Total Abortion Ban as interpreted by Labrador is a content- and viewpoint-based restriction on speech that penalizes medical providers for providing any "support or aid" to a woman seeking abortion, including "refer[ring] a woman across state lines to an abortion provider." Compl. Ex. 1. Under the Labrador Interpretation, health care providers are silenced on a single topic—abortion—meaning that the speech restriction is content-based. It is, moreover, viewpoint discriminatory, because health care providers can provide information and referrals about out-of-state resources like anti-abortion counseling centers or prenatal care. Because it is a

content and viewpoint discriminatory speech restriction, the Labrador Interpretation of the Total Abortion Ban is subject to strict scrutiny.

*Second*, the Labrador Interpretation of the Total Abortion Ban furthers no legitimate state interest, much less a compelling one.  Idaho has no compelling interest in preventing its medical providers from counseling their patients about medical treatments that are legal and available in other states or referring them to providers who provide those treatments out of state.  *See Bigelow v. Virginia*, 421 U.S. 809, 827-28 (1975) (explaining that state's "asserted interest" "in shielding its citizens from information about activities outside [its] borders, activities that [its] police powers do not reach" is "entitled to little, if any weight").  Similarly, the government has no compelling interest in preventing a physician or medical professional from recommending certain treatment. *See Conant v. Walters*, 309 F.3d 629, 637 (9th Cir. 2002) (upholding injunction of statute that imposed licensing penalties on physicians who recommended medical marijuana).  Idaho "may not, under the guise of exercising internal police powers, bar" Plaintiffs "from disseminating information about an activity that is legal" in another state.  *Bigelow*, 421 U.S. at 824-25.

*Third*, the fact that Labrador has targeted provider-patient speech does not save his overbroad interpretation of the Total Abortion Ban, as professional speech is entitled to the same scope of First Amendment protections as other speech, with narrow exceptions that do not apply here.  *National Ass'n of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371-72 (2018) ("Speech is not unprotected merely because it is uttered by 'professionals.'"). These exceptions are for mandated disclosure of "factual, noncontroversial information in their 'commercial speech,'" *id.*, and for "regulations of professional conduct that incidentally burden speech," *id.* at 2373.  But Idaho Code § 18-622, as interpreted by Labrador, is not an incidental burden on speech, but rather a direct restriction on professionals' ability to provide medical information, opinions,

and referrals.  The Ninth Circuit recently identified that professional speech, which is subject to the full protections of the First Amendment, includes discussing a restricted treatment with patients, recommending that patients obtain a restricted treatment from out-of-state providers, and expressing their opinions about the treatment or topic more generally.  *Tingley v. Ferguson*, 47 F.4th 1055, 1073 (9th Cir. 2022).  Plaintiffs here are speaking in exactly this way: discussing abortion and recommending that patients obtain abortions "from out-of-state providers."  *Id*.

    *Finally*, even if Labrador's content and viewpoint discriminatory censorship served a compelling interest (which it does not), Defendants cannot prove that it is narrowly tailored to further that interest because it sweeps in a large swath of obviously protected speech.  *See Arizona Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011) (government bears burden of proof).  When a plaintiff offers a plausible, less-restrictive alternative, "it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals."  *Victory Processing, LLC v. Fox*, 937 F.3d 1218, 1228 (9th Cir. 2019) (internal quotation marks omitted).  Numerous less-restrictive alternatives exist.  Namely, where allegedly harmful speech is at issue, a state or individuals may attempt to engage in counterspeech to advocate their positions.  *See Bigelow*, 421 U.S. at 824 (noting that a state may "seek to disseminate information so as to enable its citizens to make better informed decisions when they leave"); *United States v. Alvarez*, 567 U.S. 709, 726 (2012) ("The Government has not shown, and cannot show, why counterspeech would not suffice to achieve its interest.").  There is no indication that Idaho or Labrador have attempted such counterspeech, nor can they show that such counterspeech would be ineffective to achieve the government's purpose.

**B. The Labrador Interpretation Of The Total Abortion Ban Violates The Due Process Clause By Penalizing Extraterritorial Conduct That Is Legal In The State Where It Occurs**

The Labrador Interpretation of the Total Abortion Ban violates fundamental tenets of due process because it is premised on the incorrect notion that Idaho law can punish conduct that occurs wholly outside its borders. *BMW of N.A., Inc. v. Gore*, 517 U.S. 559, 573 n.19 (1996). The Labrador Interpretation necessarily implies that Idaho can reach out-of-state abortions because Labrador interprets an abortion performed out-of-state as an abortion that triggers the license suspension, which only applies to an abortion performed "*in violation of this subsection.*" Idaho Code § 18-622(2) (emphasis added). In other words, according to Labrador, at least some subset of out-of-state abortions *must* violate Idaho's Total Abortion Ban.

"A basic principle of federalism is that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders, and each State alone can determine what measure of punishment, if any, to impose on a defendant who acts within its jurisdiction." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003). Accordingly, it is long-established that a state cannot prosecute a person "for doing within the territorial limits of [another state] an act which that [separate] state had specially authorized him to do." *Nielsen v. State of Oregon*, 212 U.S. 315, 321 (1909). Acts that are "done within the territorial limits of [one state], under authority and license from that state … cannot be prosecuted and punished by … [a different] state." *Id.*

The Supreme Court has reiterated this principle time and time again and has even done so specifically in the context of abortion-related speech. In *Bigelow v. Virginia*, it held that Virginia could not criminalize the publication of an advertisement concerning the availability of abortion services in New York that were, at the time of publication and prosecution, illegal in Virginia but legal in New York. 421 U.S. at 824. The Court explained that a "State does not acquire power or

11

supervision over the internal affairs of another State merely because the welfare and health of its own citizens may be affected when they travel to that State." *Id*. To the contrary, it concluded that "[t]he Virginia Legislature could not have regulated the advertiser's activity in New York, *and obviously could not have proscribed the activity in that State*." *Id*. at 822-23 (emphasis added). Similarly, Virginia also could not "prevent its residents from traveling to New York to obtain those services or … prosecute them for going there." *Id*. at 824; *accord Dobbs*, 142 S. Ct. at 2309 (Kavanaugh, J., concurring) (state cannot "bar a resident of that State from traveling to another State to obtain an abortion"). In short, "Virginia possessed no authority to regulate the services provided in New York." *Bigelow*, 421 U.S. at 822-24 (citations and footnotes omitted).[4]

The prohibition on punishing out-of-state conduct that is legal where it occurs is based on both structural and fairness concerns. Structurally, state laws simply "have no force of themselves beyond the jurisdiction of the State" under the principles of federalism and comity. *BMW*, 517 U.S. at 571 n.16; *State Farm*, 538 U.S. at 422 (explaining that it is a "basic principle of federalism" that each state holds sole authority for "what conduct is permitted or proscribed within its borders," including the right to "determine what measure of punishment," is appropriate for that conduct); *see also White v. Ford Motor Co.*, 312 F.3d 998, 1013 (9th Cir. 2002) (under *BMW*'s due process principles, "no state can be permitted to impose its policies on other states"), *opinion amended on denial of reh'g*, 335 F.3d 833 (9th Cir. 2003). And from a fairness perspective, "[t]o punish a

---

[4] Much of the Court's analysis of extraterritoriality has arisen in cases addressing punishment in the form of punitive damages for out-of-state conduct. In *BMW*, for example, the Court addressed whether an Alabama punitive damages award against BMW satisfied the requirements of due process. 517 U.S. at 572. BMW had adopted a national policy of not advising customers of predelivery damage in certain circumstances, *id.* at 562, a policy that was "consistent with the laws of roughly 25 States" but that ran afoul of Alabama's consumer protection laws, *id.* at 565. The Court held that while Alabama could punish BMW for engaging in unlawful behavior within its borders, it would violate due process to punish a defendant for engaging in out-of-state conduct that was lawful in the place where it transpired. *Id.* at 572.

person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *BMW*, 517 U.S. at 573 n.19 (quotation marks and citation omitted)). This analysis applies equally to Labrador's attempts to penalize conduct in Idaho (such as provision of information or other "assistance") that violates no Idaho law *unless* the out-of-state abortion is itself prohibited under Idaho law. And finally, although *BMW*'s analysis of these principles focused on non-criminal sanctions, its application is all the more important where the logical extension of the Labrador Interpretation could be a criminal prosecution. *See id.* ("[W]e have never held that a sentencing court could properly punish lawful conduct.") (emphasis omitted)).

These cases are controlling here and require that the attempted extraterritorial application of the Total Abortion Ban be enjoined. The Labrador Interpretation that some abortions performed outside of Idaho are nonetheless abortions "in violation of this subsection" flouts the due process limits on extraterritorial punishment, and specifically the interconnected principles of comity and fairness central to the Court's due process analysis. *First*, by reaching beyond its borders to criminalize the very conduct other states have authorized, Idaho is "infringing on the policy choices of other States." *BMW*, 517 U.S. at 572. "[E]ach State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders," yet Idaho seeks to impose its own judgment on other states in violation of "basic principle[s] of federalism." *State Farm*, 538 U.S. at 422. *Second*, Idaho's overreach is profoundly unfair to the out-of-state health care providers whose conduct it claims is prohibited and will subject them to professional sanction or even (by the same logic) criminal penalties. Planned Parenthood employs health care providers licensed to provide abortion services outside of Idaho, including in Washington, and Dr. Gustafson would like to provide abortions in Oregon in the future. Gibron Decl. ¶ 24; Gustafson Decl. ¶ 15. By providing abortion care in Washington and Oregon they are "doing an act which [Washington

and Oregon] … authorized and gave [them] … license[s] to do." *Nielsen*, 212 U.S. at 321.  The

fact that providers who perform abortions under a license in another state may *also* be licensed in-

state does not allow Idaho to "regulate the services provided" in another state by virtue of those

providers' Idaho licenses.  *Bigelow*, 421 U.S. at 824.

The same is true for citizens of Idaho who travel to another state to receive an abortion.

*See Bigelow*, 421 U.S. at 824 (states do not acquire power over the affairs of other states simply

because its citizens travel there).  When a patient or a health care provider travels outside of Idaho

to receive or perform an abortion that occurs out of state, that conduct is beyond Idaho's

jurisdiction to regulate.  Any in-state effects of that conduct are equally irrelevant to the due

process problems created by out-of-state enforcement.  *State Farm*, 538 U.S. at 421.

### C. The Labrador Interpretation Of The Total Abortion Ban Violates The Dormant Commerce Clause By Penalizing Extraterritorial Conduct That Is Legal In The State Where It Occurs

In addition to violating due process, the Labrador Interpretation of the Total Abortion Ban

violates the Dormant Commerce Clause by threatening to impose licensing or even criminal

sanctions on health care providers or third parties predicated on lawful conduct "wholly outside of

the State's borders."  *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989); *see also South Dakota v.*

*Wayfair, Inc.*, 138 S. Ct. 2080, 2090-91 (2018).

The Supreme Court has long recognized that the Commerce Clause's "affirmative grant of

authority to Congress [to regulate commerce among the states] also encompasses an implicit or

'dormant' limitation on the authority of the States to enact legislation affecting interstate

commerce."  *Healy*, 491 U.S. at 326 n.1 (citing *Hughes v. Oklahoma*, 441 U.S. 322, 326, and n.2

(1979); *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 534-35 (1949)).  Under the Dormant

Commerce Clause, "a statute that directly controls commerce occurring wholly outside the

boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid

regardless of whether the statute's extraterritorial reach was intended by the legislature." *Healy*, 491 U.S. at 336; *see also Wayfair*, 138 S. Ct. at 2091 ("State laws that discriminate against interstate commerce face a virtually per se rule of invalidity.") (internal quotation marks omitted)).

These limitations on state authority apply even to out-of-state activity that has spillover effects in the regulating state. *See Healy*, 491 U.S. at 336 ("whether or not [out-of-state] commerce has effects within the State" is irrelevant to the analysis). For example, in *Sam Francis Foundation v. Christies*, 784 F.3d 1320 (9th Cir. 2015) (en banc), the Ninth Circuit "easily conclude[d]" that a law requiring the payment of royalties "to the artist after a sale of fine art whenever the seller resides in California" violated the Dormant Commerce Clause as applied to out-of-state transactions. *Id*. at 1323 (internal quotation marks omitted). Those transactions involved state citizens and could have impacted state funds, but the court nevertheless concluded that the law was unconstitutional to the extent it purported to "directly regulate[] the conduct of the seller or the seller's agent for a transaction that occurs wholly outside the State." *Id*. at 1324; *see also Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660, 666 (7th Cir. 2010) (Indiana cannot regulate Nevada casinos even if Indiana residents were becoming addicted to gambling "and this was leading to bankruptcies that were playing havoc with family life and the Indiana economy").

Under these principles, the Labrador Interpretation that the Total Abortion Ban criminalizes abortion services provided outside of Idaho is patently unconstitutional. The medical services at issue in this case—the provision of abortion in other states—unquestionably constitute commerce under the Dormant Commerce Clause. *See Summit Health, Ltd. v. Pinhas,* 500 U.S. 322, 329-30 (1991) (holding that surgery performed on out-of-state residents was a protected form of interstate commerce). By purporting to prohibit the provision of abortion in other states, Idaho

is attempting to "directly control[] commerce occurring wholly outside [its] boundaries," and thereby "exceed[ing] the inherent limits of the enacting State's authority." *Healy*, 491 U.S. at 336.

## II.     Plaintiffs Will Be Irreparably Harmed By The Denial Of Their Constitutional Rights And Their Inability To Care For Their Patients

Plaintiffs have shown a likelihood of irreparable harm without injunctive relief.   Injury need not "be certain to occur; a strong threat of irreparable injury before trial is an adequate basis." *Diamontiney v. Borg*, 918 F.2d 793, 795 (9th Cir. 1990).   A threatened violation of constitutional rights constitutes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Farris v. Seabrook*, 677 F.3d 858, 868 (9th Cir. 2012).

In the absence of injunctive relief, Plaintiffs and their patients have been and will continue to be deprived of freedom of speech, due process, the protections of the Dormant Commerce Clause.   Indeed, from the moment it issued, the Labrador Interpretation has violated Plaintiffs' constitutional rights and will continue to do so until the Court remedies this threat.   Such constitutional violations alone show irreparable harm. *Farris*, 677 F.3d at 868.

Moreover, Plaintiffs have shown by their factual allegations a likelihood of irreparable harm to themselves and their patients.   Absent an injunction, Plaintiffs' ability to accomplish their professional mission will be irreparably damaged, as they cannot provide information and opinions about out-of-state care that, consistent with their medical training and ethical obligations, they would otherwise recommend and provide to their patients.   Plaintiffs' patients will lose access to necessary medical information and crucial health care, suffer potentially catastrophic medical problems, including death, and lose trust in the medical system as a whole. *See supra* at p. 5.   And Plaintiffs will be left in grave uncertainty as to what conduct in connection with out-of-state abortions may expose them to licensing or other penalties in Idaho, chilling their provision of

16

abortions and risking further isolating Idaho patients by cutting them off from critical health care in other states.  *See supra* at pp. 4-6.

III.     **The Balance Of Equities And Public Interest Favor An Injunction**

Finally, both the public interest and the balance of equities are strongly in Plaintiffs' favor. "[E]nforcement of an unconstitutional law is always contrary to the public interest[.]" *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013).  And, in the context of First Amendment claims like Plaintiffs', a likelihood of success on the merits "compels a finding that … the balance of the hardships tips sharply in Plaintiff's favor." *American Beverage Ass'n v. City & County of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (internal quotation marks omitted).  Similarly, the Ninth Circuit has "consistently recognized the significant public interest in upholding First Amendment principles." *Id.*

The Ninth Circuit has also "repeatedly recognized that individuals' interests in sufficient access to health care" are paramount, and that the public interest and balance of equities weigh in favor of an injunction where such access would be lost.  *See, e.g.*, *Dominguez v. Schwarzenegger*, 596 F.3d 1087, 1098 (9th Cir. 2010), *vacated and remanded on other grounds by Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606 (2012).  As Plaintiffs have explained, denying the injunction risks significant harm to their patients and their medical practices.  *See supra* at pp. 4-6.  By contrast, granting the injunction would simply allow Plaintiffs to communicate fully with patients about their options, and with providers in states where abortion is legal and allow providers to provide legal healthcare pursuant to their licenses in those states without threat of penalty by Idaho.  It would not harm the State's alleged public interest, as it would not allow abortions to occur in Idaho (a prohibition that Idaho apparently believes is in the public interest) and would simply permit patients to access legal medical care in other states.  As explained *supra* at pp 11-

14, Idaho does not have an interest in regulating legal activity in other states.  The equities and public interest, therefore, favor Plaintiffs.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion for a temporary restraining order and/or preliminary injunction should be granted.

Jennifer R. Sandman*
Catherine Peyton Humphreville*
Planned Parenthood Federation of America
123 William Street
New York, NY 10038
T: 212-965-7000
jennifer.sandman@ppfa.org
catherine.humphreville@ppfa.org

Michael J. Bartlett (ISB No. 5496)
Bartlett & French LLP
1002 W Franklin St.
Boise, Idaho 83702
T: 208-629-2311
F: 208-629-2460 (fax)
Michael@BartlettFrench.com

*Attorneys for Plaintiff Planned Parenthood
Great Northwest, Hawaii, Alaska, Indiana,
Kentucky*

Andrew Beck*
Meagan Burrows*
Ryan Mendías*
Scarlet Kim*
American Civil Liberties
    Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
T: 212-549-2633
F: 212-549-2649
abeck@aclu.org
mburrows@aclu.org
rmendias@aclu.org
scarletk@aclu.org

Dina Flores-Brewer (ISB No. 6141)
American Civil Liberties Union of
    Idaho Foundation
P.O. Box 1897
Boise, ID 83701
T: 208-344-9750
DFloresBrewer@acluidaho.org

*Attorneys for Physician Plaintiffs*

Respectfully submitted,
/s/ Colleen R. Smith
Colleen R. Smith (ISB No. 10023)
Stris & Maher LLP
American Civil Liberties Union of
    Idaho Foundation Cooperating Attorney
1717 K Street NW, Suite 900
Washington, DC 2006
T: 202-800-5749
csmith@stris.com

Katherine V. Mackey*
Wilmer Cutler Pickering
    Hale and Dorr LLP
60 State Street
Boston, MA 02109
T: 617-526-6993
F: 617-526-5000
katherine.mackey@wilmerhale.com

Peter G. Neiman*
Alan E. Schoenfeld*
Michelle Nicole Diamond*
Rachel E. Craft*
Wilmer Cutler Pickering
    Hale and Dorr LLP
7 World Trade Center
New York, NY 10007
T: 212-230-8800
F: 212-230-8888
peter.neiman@wilmerhale.com
alan.schoenfeld@wilmerhale.com
michelle.diamond@wilmerhale.com
rachel.craft@wilmerhale.com

*Attorneys for Plaintiffs*
*\* Pro hac vice applications forthcoming*