Colleen R. Smith (ISB No. 10023)
Stris & Maher LLP
American Civil Liberties Union of
   Idaho Foundation Cooperating Attorney
1717 K Street NW, Suite 900
Washington, DC 20006
T: 202-800-5749
csmith@stris.com

Katherine V. Mackey*
Wilmer Cutler Pickering
  Hale and Dorr LLP
60 State Street
Boston, MA 02109
T: 617-526-6993
F: 617-526-5000
katherine.mackey@wilmerhale.com

Peter G. Neiman*
Alan E. Schoenfeld*
Michelle Nicole Diamond*
Rachel E. Craft*
Wilmer Cutler Pickering
  Hale and Dorr LLP
7 World Trade Center
New York, NY 10007
T: 212-230-8800
F: 212-230-8888
peter.neiman@wilmerhale.com
alan.schoenfeld@wilmerhale.com
michelle.diamond@wilmerhale.com
rachel.craft@wilmerhale.com

*Attorneys for Plaintiffs*

*Additional counsel for Plaintiffs
identified on following page*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO
SOUTHERN DIVISION**

| | |
|---|---|
| **PLANNED PARENTHOOD GREAT NORTHWEST, HAWAII, ALASKA, INDIANA, KENTUCKY**, on behalf of itself, its staff, physicians and patients, **CAITLIN GUSTAFSON, M.D.**, on behalf of herself and her patients, and **DARIN L. WEYHRICH, M.D.**, on behalf of himself and his patients,<br>       Plaintiffs,<br>    v.<br><br>**RAÚL LABRADOR**, in his official capacity as Attorney General of the State of Idaho; **MEMBERS OF THE IDAHO STATE BOARD OF MEDICINE** and **IDAHO STATE BOARD OF NURSING**, in their official capacities, **COUNTY PROSECUTING ATTORNEYS**, in their official capacities,<br><br>       Defendants. | Case No.  1:23-cv-142 |

1

Jennifer R. Sandman*
Catherine Peyton Humphreville*
Planned Parenthood Federation of America
123 William Street
New York, NY 10038
212-965-7000
jennifer.sandman@ppfa.org
catherine.humphreville@ppfa.org

Michael J. Bartlett (ISB No. 5496)
Bartlett & French LLP
1002 W Franklin St.
Boise, Idaho 83702
T: 208-629-2311
F: 208-629-2460 (fax)
Michael@BartlettFrench.com

*Attorneys for Plaintiff Planned Parenthood Great Northwest, Hawaii, Alaska, Indiana, Kentucky*

Dina Flores-Brewer (ISB No. 6141)
American Civil Liberties Union of
    Idaho Foundation
P.O. Box 1897
Boise, ID 83701
T: 208-344-9750
DFloresBrewer@acluidaho.org

Andrew Beck*
Meagan Burrows*
Ryan Mendías*
Scarlet Kim*
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004
T: 212-549-2633
F: 212-549-2649
abeck@aclu.org
mburrows@aclu.org
rmendias@aclu.org
scarletk@aclu.org

*Attorneys for Physician Plaintiffs*

* *Pro hac vice applications forthcoming*

**DECLARATION OF DARIN L. WEYHRICH, M.D.**

I, Darin L. Weyhrich, M.D., hereby declare as follows:

1. I am over the age of eighteen. I make this declaration based on personal knowledge of the matters stated herein and on information known or reasonably available to my organization. If called to do so, I am competent to testify as to the matters contained herein.

**Personal Background**

2. I am a physician licensed to practice medicine in the State of Idaho since 2002 and have been a practicing doctor in Idaho for over two decades. I have been board-certified in obstetrics and gynecology ("OB/GYN") since 2005.

3. My practice is based in Boise, Idaho, where I provide comprehensive women's healthcare to patients, including practicing primary care, obstetrics, and gynecology.

4. I submit this declaration in support of Plaintiffs' Motion for a Temporary Restraining Order and/or Preliminary Injunctive Relief. I have read the letter from Attorney General Labrador, including his statement that "Idaho law prohibits an Idaho medical provider from . . . referring a woman across state lines to access abortion services." Compl. Ex. 1 at 2.

5. I have also read Attorney General Labrador's statement that "Idaho law requires the suspension of a health care professional's license when he or she" refers a woman for out-of-state abortion services. *Id*.

6. Absent relief from this Court, the Attorney General's announced interpretation of Idaho's laws will bar me and other physicians from providing information to patients about the availability of safe, legal abortion care in other states, including referrals for such care. And that prohibition would silence me and other physicians on the topic of abortion alone—when I and other providers talk to patients about any other form of healthcare, be it colonoscopies or cancer

treatments or prenatal care (including by providing information and referrals for such healthcare out of state), we do so without fear of punishment. This one-sided restriction on the topic of abortion harms me and my patients, preventing patients from getting information about necessary—and potentially life-saving—care from their chosen healthcare provider.

7. The facts and opinions included here are based on my education, training, practical experience, information, and personal knowledge I have obtained as an OB/GYN; my attendance at professional conferences; review of relevant medical literature; and conversations with other medical professionals.

**Practices Before Attorney General Labrador's Letter**

8. Until the Supreme Court decided *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), I provided both medication and surgical abortions in Idaho consistent with the state's laws. After state laws banning abortion went into effect in Idaho, I stopped providing abortions to patients.

9. Although I am no longer able to provide abortions in Idaho, I continue to have pregnant patients who would choose to have an abortion for economic, family, or personal reasons, to protect their health, or because of fetal anomalies.

10. For example, some pregnant patients may require abortions because they have high-risk diabetes, are hypertensive, or have received a kidney transplant and therefore will face serious health risks or even death if they carry a pregnancy to term. Pregnancy increases insulin resistance for those with diabetes, and those with hypertensive disorders are at a much higher risk of developing pre-eclampsia, which can be a life-threatening condition.

11. I also have patients who have expressed to me that they would seek an abortion if their prenatal screening, provided at eight to nine weeks of pregnancy, shows abnormal results or

3

certain serious genetic conditions. Since abortion became illegal in Idaho, patients who are considering undergoing such screening have asked whether I could refer them out of state for an abortion if the prenatal screening shows severe fetal anomalies.

12. Before Attorney General Labrador's letter, I advised these patients that, if they needed me to do so, I could recommend providers who perform abortion services in states where abortion is legal. In the months since abortion became illegal in Idaho, I have not had a patient who actually needed an out-of-state recommendation for an abortion provider, but my typical practice in that situation would be to discuss with patients seeking abortions their options for abortion care in other states and to recommend or refer them to abortion providers in other states.

13. Should it be necessary, I would also assist patients by calling colleagues with whom I am familiar in other states, if appropriate to facilitate continuity of care.

**Current Practices**

14. In light of Attorney General Labrador's letter, I understand that I could face serious penalties—namely the suspension and/or revocation of my professional license—if I were to recommend out-of-state abortion providers to patients or even to simply talk with them about the availability of abortion services outside of Idaho. In light of the disruption to my livelihood that such adverse licensure action would entail, I am presently not able to discuss the availability of abortion services in other states or recommend abortion providers out of state, nor will I be able to do so absent a court order blocking the enforcement of this harmful interpretation of Idaho law.

15. I fear that, due to the Attorney General's letter, I would be subject to disciplinary action by the State Board of Medicine if I were to make statements recommending that patients seek care with out-of-state providers. Even if I were to prevail in such a proceeding, it would take time, money, and emotional energy to mount a defense, and I cannot afford to jeopardize my

4

livelihood in such a manner in the face of these threats. Consequently, I will not be able to provide necessary information to these patients because doing so could potentially cause me to permanently lose my livelihood and prevent me from ever practicing medicine again.

16. Therefore, if I have patients who require abortions currently or in the future, I will be forced to tell those patients that I am unable to help them and that I cannot say anything about their abortion options in other states even though that care is lawful in those states.

17. So much as explaining the availability of abortions in other states or telling my patients a phone number for an out-of-state abortion provider appears to qualify as illegal conduct under the Attorney General's letter, and I cannot risk breaking the law or losing my medical license if the law indeed applies to that conduct, as his interpretation of the statute suggests.

18. This letter therefore has a very strong chilling effect on my ability to speak with, counsel, and care for my patients.

19. This government-mandated silence is deeply troubling to me and contrary to my ethical obligation to care for my patients and provide them information about all appropriate medical options. All the more troubling is the fact that the government has singled out one component of healthcare—pregnancy-related information and referrals—and has censored speech about one facet of this care: abortion. I can provide patients with information about where to get prenatal care out-of-state and make referrals for such care. But when it comes to abortion, the government would penalize my speech. In effect, the government is distorting my conversations with patients, allowing me to speak on some topics and silencing me on others.

**Serious Harm to Patients**

20. My inability to counsel my patients about obtaining abortions in other states will have devastating effects for my patients, who will likely suffer serious health consequences if they

cannot receive that care, and it will also negatively impact me as a provider because I cannot adequately care for my patients.

21. If they cannot discuss with me the options for abortion care in other states, some of my patients will not know how to obtain an abortion in another state, or they will choose not to do so because they are not being referred to a doctor that is trusted by their primary treating physician.

22. Neither the patient nor I can be confident of the quality of care when I am not able to provide my professional opinion or draw on my professional experience about the right provider for a certain patient.

23. Pregnant patients, like any other medical patient, have an inherent right to make decisions about their bodies and medical treatment in coordination with their doctors.

24. These patients have a right to know all options for care in order to make an informed choice about their preferred course of treatment. By limiting my ability to counsel patients, the Attorney General's letter limits patients' abilities to understand medical risks and options for addressing those risks to best protect their health and well-being.

25. There are also medical circumstances when a person's life will be placed at risk if they are unable to terminate their pregnancies.

26. A patient may also face serious health consequences if they require emergency care for a non-viable pregnancy and that care is delayed because they are not able to connect with out-of-state providers as quickly, absent my referral or guidance.

27. For example, for a patient with an 18-week pregnancy whose membranes are ruptured, there is no chance of survival for the fetus and a great risk of potentially deadly infection for the pregnant patient. In these circumstances, if there is still fetal cardiac activity, I would have to wait for the pregnant patient to get so sick that the patient is at risk of imminent death before

acting. Previously, before the letter from Attorney General Labrador, I could work with local hospitals and physicians to arrange for transporting that person out of state to receive appropriate healthcare; however, I do not believe that would be possible in light of the Attorney General's letter indicating that providing "aid or support" for an abortion—including an out-of-state abortion—is a violation of Idaho's abortion ban. I am aware of colleagues who have experienced similar situations in their practices.

28.     Waiting until a pregnant person's death is imminent to provide any assistance is clearly a serious detriment to the health of the patient, and it would not be surprising if care by that point came too late to avoid serious health consequences or death.

29.     This law is contrary to my medical training, denies my patients access to safe care, and chills my right to speak to and counsel my patients. It will greatly harm many Idahoans.

Pursuant to 28 USC § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 4, 2023, in _____Boise_____, _____Idaho_____.

_____
Darin L. Weyhrich, M.D.