RAÚL R. LABRADOR
ATTORNEY GENERAL

LINCOLN DAVIS WILSON, ISB #11860
Chief of Civil and Constitutional Defense

BRIAN V. CHURCH, ISB #9391
TIMOTHY J. LONGFIELD, ISB #12201
Deputy Attorneys General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
lincoln.wilson@ag.idaho.gov
brian.church@ag.idaho.gov
timothy.longfield@ag.idaho.gov
*Attorneys for Defendants Raúl Labrador*
*and Certain County Prosecuting Attorneys*

## UNITED STATE DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| PLANNED PARENTHOOD GREAT NORTH-WEST, HAWAII, ALASKA, INDIANA, KENTUCKY, on behalf of itself, its staff, physicians and patients, CAITLIN GUSTAFSON, M.D., on behalf of herself and her patients, and DARIN L. WEYHRICH, M.D., on behalf of himself and his patients,<br><br>Plaintiffs,<br><br>v.<br><br>RAÚL LABRADOR, in his capacity as the Attorney General of the State of Idaho; MEMBERS OF THE IDAHO STATE BOARD OF MEDICINE and IDAHO STATE BOARD OF NURSING, in their official capacities, COUNTY PROSECUTING ATTORNEYS, in their official capacities,<br><br>Defendants. | Case No. 1:23-cv-00142-BLW<br><br>**COMBINED BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND IN SUPPORT OF STATE OF IDAHO'S MOTION TO DISMISS** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................iii

INTRODUCTION ............................................................................ 1

BACKGROUND ............................................................................. 2

LEGAL STANDARDS ...................................................................... 5

ARGUMENT ................................................................................. 6

I.      Threshold Jurisdictional Problems Preclude an Injunction............................. 6

      A.     The Attorney General Has Sovereign Immunity ..................................... 7

      B.     The Court Lacks Jurisdiction Over Certain Defendants......................... 9

II.     Plaintiffs Have No Injury, Let Alone an Irreparable One ............................. 11

      A.     Plaintiffs Have No Injury From a Letter That Was Withdrawn.......... 12

      B.     Plaintiffs Had No Injury Even Before the Letter Was Withdrawn...... 17

           1.     No-one Has Threatened Plaintiffs ................................................ 17

           2.     Plaintiffs Have Not Shown They Intend to Violate the Law ..... 19

           3.     The Law's Enforcement History Does Not Support Injury........ 21

III.    Plaintiffs Cannot Show the Other Preliminary Injunction Elements ............ 21

CONCLUSION ............................................................................. 22

## TABLE OF AUTHORITIES

### CASES

*Ammex, Inc. v. Cox,*
    351 F.3d 697 (6th Cir. 2003) ................................................................ 14

*Bernhardt v. Cnty. of Los Angeles,*
    279 F.3d 862 (9th Cir. 2002) ................................................................ 15

*Cedar Park Assembly of God of Kirkland v. Kriedler,*
    402 F. Supp. 3d 978 (W.D. Wa. 2019) ................................................ 18

*Chandler v. State Farm Mut. Auto Ins. Co.,*
    598 F.3d 1115 (9th Cir. 2010) ................................................................ 6

*Dobbs v. Jackson Women's Health Org.,*
    142 S. Ct. 2228 (2022) ................................................................... 8, 20

*Ex parte McCardle,*
    7 Wall. 506 (1868) ......................................................................... 5, 6

*Ex parte Young,*
    209 U.S. 123 (1908) ................................................................... 1, 7, 8

*Fraihat v. U.S. Immigration and Customs Enforcement,*
    16 F. 4th 613 (9th Cir. 2021) ......................................................... 6, 19

*Holder v. Humanitarian Law Project,*
    561 U.S. 1 (2010) ............................................................................ 20

*Lopez v. Candaele,*
    630 F.3d 775 (9th Cir. 2010) ............................................................... 13

*Los Angeles County Bar Ass'n v. Eu,*
    979 F.2d 697 (9th Cir.1992) ................................................................. 8

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ...................................................................... 6, 11

*McBurney v. Cuccinelli,*
    616 F.3d 393 (4th Cir. 2010) .................................................... 8, 16, 18

*Ohio Forestry Ass'n, Inc. v. Sierra Club,*
    523 U.S. 726 (1998) .......................................................................... 15

*Okpalobi v. Foster,*
    244 F.3d 405 (5th Cir. 2001) (en banc) .................................................. 9

*Oregon Advocacy Ctr. v. Mink,*
    322 F.3d 1101 (9th Cir. 2003) ............................................................ 15

*Planned Parenthood v. Wasden,*
    376 F.3d 908 (9th Cir. 2004) ............................................................... 8

*R.M.S. Titanic, Inc. v. Haver,*
    171 F.3d 943 (4th Cir. 1999) ......................................................... 6, 10

*Santa Monica Food Not Bombs v. City of Santa Monica,*
    450 F.3d 1022 (9th Cir. 2006) ........................................................... 20

*Skyline Wesleyan Church v. California Dep't of Managed Health Care,*
    968 F.3d 738 (9th Cir. 2020) ....................................................... 12, 15

*Smith v. Beebe,*
    123 F. App'x 261 (8th Cir. 2005) ........................................................ 9

*State v. Summer,*
    139 Idaho 219, 76 P.3d 963 (2003) ..................................................... 8

*Stormans, Inc. v. Selecky,*
    586 F.3d 1109 (9th Cir. 2009) ...................................................... 18, 21

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ................................................................. *passim*

*Table Bluff Reservation (Wiyot Tribe) v. Phillip Morris, Inc.,*
    256 F.3d 879 (9th Cir. 2001) .............................................................. 6

*Tandon v. Newsom,*
    992 F.3d 916 (9th Cir. 2021) ............................................................ 22

*Thomas v. Anchorage Equal Rights Comm'n,*
    220 F.3d 1134 (9th Cir. 2000) ..................................................... *passim*

*Twitter, Inc. v. Paxton,*
    56 F.4th 1170 (9th Cir. 2022) ................................................ 16, 17, 18

*Unified Data Servs., LLC v. Fed. Trade Comm'n,*
    39 F.4th 1200 (9th Cir. 2022) ........................................................... 13

*Universal Life Church Monastery Storehouse v. Nabors,*
   35 F.4th 1021 (6th Cir. 2022) ............................................................. 9

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) ..................................................................... 6, 11

*Wolfson v. Brammer,*
   616 F.3d 1045 (9th Cir. 2010) ............................................................ 15

## OTHER AUTHORITIES

Fed. R. Civ. P. 12 ............................................................................. 6

Fed. R. Civ. P. 17 ............................................................................ 10

Idaho House Bill 374, 2023 Leg. Sess. ................................................. 3, 4

Idaho Code § 18-622 ................................................................. 17, 18, 21

Idaho Code § 67-1401 ............................................................... 2, 3, 5, 8

U.S. Const. amend. XI ..................................................................... 7

## INTRODUCTION

Plaintiffs claim they are threatened by a private letter the Attorney General sent to Rep. Brent Crane in response to his request for an opinion about Idaho's abortion laws (the "Crane Letter").  The Attorney General withdrew the Crane Letter after the Legislature amended those laws and upon learning that Rep. Crane had improperly requested the opinion on behalf of a constituent who sought it to support a fundraising effort.  The withdrawal of that opinion should have ended any arguable legal controversy over the matter.  But it didn't.  Plaintiffs still claim they need an injunction against a purported ongoing threat from a now-rescinded letter that the Attorney General never enforced and has no power to enforce.  The law says otherwise: Plaintiffs' claims suffer from multiple jurisdictional defects that preclude an injunction and mandate dismissal.

At the outset, this action is beset with Defendant-specific jurisdictional problems.  Plaintiffs focus their claims on the Attorney General's Crane Letter, but the Eleventh Amendment precludes jurisdiction over the Attorney General.  And the *Ex Parte Young* exception does not apply to the Attorney General because he has no authority to prosecute violations of the abortion laws at issue (nor has he threatened to do so).  Not only that, but Plaintiffs have failed to secure personal jurisdiction over all of the 44 different county prosecutors they have sued.  Many of those prosecutors have not been served at all, and others were served improperly.  This gives them jurisdictional objections that, once resolved, will only invite piecemeal relitigation of the issues as to which Plaintiffs have demanded an immediate hearing.

But even more fundamentally, both Plaintiffs' motion and this action fail across the board because Plaintiffs lack any cognizable injury. Plaintiffs cannot claim any credible threat of pre-enforcement harm from a letter that the Attorney General has unequivocally withdrawn and declared entirely void. And even before the letter was withdrawn, their theory of injury failed. An abstract opinion letter on questions of Idaho law that the Attorney General has no power to enforce presents no specific threat to Plaintiffs. The Attorney General never gave that letter to county prosecutors or to state licensing boards. Plaintiffs do not allege that any of those have taken any specific action against them or are even contemplating any specific action. No Defendant has threatened Plaintiffs with the prosecutions they claim to fear, so Plaintiffs have no legal injury, to say nothing of irreparable harm. And that lack of a cognizable Article III injury demands that the Court deny Plaintiffs' motion and dismiss this case for lack of jurisdiction.

## BACKGROUND

Idaho law requires the Attorney General "to give an opinion in writing, without fee," to any legislator, "when requested, upon any question of law relating to their respective offices." Idaho Code § 67-1401(6). The Attorney General renders those opinions to fulfill his legal duty to represent state entities. *See id.* § 67-1401(1). So Attorney General opinions are privileged communications that remain private unless the requesting party elects to disclose them.

Here, Rep. Brent Crane asked the Attorney General for an opinion about several aspects of Idaho's abortion laws, including whether those laws prohibit "referring

women across state lines to obtain abortion services." Ex. 1, Crane Letter.[1]   On March 27, 2023, the Attorney General sent a private letter to Rep. Crane providing the requested opinions and answering the question in the affirmative. *Id.* at 1. But one day later, the legislature introduced HB374, which would amend the definition of abortion in those laws. HB374 passed both houses and was signed by the Governor just days later, on April 6, 2023. H.B. 374, 67th Leg., Reg. Sess. (Idaho 2023).

Because the Crane Letter was a privileged communication, the Attorney General did not send it to anyone other than Rep. Crane. And since the Attorney General lacks any authority to prosecute violations of the abortion laws at issue,[2] the Crane Letter plainly did not state any enforcement policy of the Attorney General. Nor was the Crane Letter meant to serve as any sort of guidance to any other Idaho agency. It was not provided either to county prosecutors or to the Division of Occupational and Professional Licensing, which supervises the Board of Medicine and Board of Nursing. *See* Ex. 2 (Barron Decl.).

Yet unbeknownst to the Attorney General, others wished to make the letter public. Rep. Crane had requested this opinion not on behalf of himself, but for a

---

[1] All Exhibits are attached to the supporting Declaration of Lincoln Wilson.

[2] *See* Idaho Code 67-1401(7); Idaho Attorney General, Explanation of Duties and Responsibilities, available at https://tinyurl.com/2u8eeds8 ("County prosecuting attorneys and county sheriffs have primary responsibility for enforcing Idaho's criminal laws. As a rule, the Attorney General may investigate and prosecute cases at the county level only when a statute grants the Attorney General concurrent jurisdiction or when local authorities request assistance for a specific case.").

constituent, to whom he immediately forwarded the Crane Letter.  And that constit-uent then issued a press release publicizing the Crane Letter to support her organi-zation.[3]

On April 5, 2023, just days after that publication, Plaintiffs filed this action. They sued the Attorney General, members of the State Boards of Medicine and Nurs-ing, and the prosecuting attorneys for all 44 Idaho Counties.  They targeted the Crane Letter's statement that "referring women across state lines to obtain abortion ser-vices" violated Idaho law, *see* Crane Letter at 1, which they characterized as chilling their protected speech in the course of patient counseling.  Dkt. 1 ¶ 4.  They said that "but for" the letter, they would continue counseling patients as they wish.  *Id.* ¶ 41. And they asked the Court for a temporary restraining order and preliminary injunc-tion against the opinion of Idaho law set out in the Crane Letter.

At the same time, the Attorney General further examined the Crane Letter, which led him to withdraw it.  Ex. 3, Withdrawal Letter.  As he explained, the Crane Letter was not "law enforcement guidance sent out publicly to local prosecutors … nor was it ever published by the Office of the Attorney General."  *Id.* at 1.  The opinion it gave was "moot because it relate[d] to a law that has been significantly altered by intervening legislation," i.e., HB374.  *Id.* at 1.  And because Rep. Crane had acted "as

---

[3] *See* Stanton International, *Idaho Attorney General Issues Legal Analysis Affirming the Prohibition of Abortion Pills*, https://stantoninternational.org/chemicalabortion/ (last visited Apr. 14, 2023).

a pass-through 'requestor,'" the opinion was "not an authorized request for an Attorney General's Opinion as contemplated by Idaho Code § 67-1401(6)." *Id.*  Instead, immediately after the letter was sent, "it was publicly posted by a nongovernmental third party who requested it in service of a political fundraising plea." *Id.* at 2.  Thus, on April 7, 2023, the Attorney General determined the Crane Letter was "withdrawn" and "void in its entirety." *Id.*  It "does not represent the views of the Attorney General on any question of Idaho law." *Id.*

Despite the withdrawal of the Crane Letter, Plaintiffs still insisted on an immediate hearing on their motion for a preliminary injunction.  The Attorney General submitted that the withdrawal of the Crane Letter made an emergency proceeding unnecessary, especially since many of the county prosecutor Defendants remained unserved and unrepresented.  On April 11, 2023, the Court ordered the Attorney General to file a response by noon on April 14.  Then, on April 13, just hours before the Attorney General's response was due, Plaintiffs moved for leave to submit brand-new declarations in support of their motion, Dkt. 35, which the Court granted.

The Attorney General now responds to Plaintiffs' preliminary injunction motion and moves to dismiss on behalf of the State and certain county prosecutors who have been served with the Complaint and have requested his representation.

## LEGAL STANDARDS

"Without jurisdiction the court cannot proceed at all in any cause." *Ex parte McCardle*, 74 U.S. 506, 514 (1868).  Thus, a court cannot adjudicate a matter without

subject matter jurisdiction, which demands that litigants satisfy the familiar require-
ments of Article III standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).
Fed. R. Civ. P. 12(b)(1) governs motions to dismiss for lack of jurisdiction. *Chandler
v. State Farm Mut. Auto Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir. 2010).  Unlike for
review for failure to state a claim under Rule 12(b)(6), a court determining jurisdic-
tion based on Article III standing may consider "the complaint and any other partic-
ularized allegations of fact[] in affidavits." *Table Bluff Reservation (Wiyot Tribe) v.
Phillip Morris, Inc.*, 256 F.3d 879, 882 (9th Cir. 2001).

A preliminary injunction is "an extraordinary and drastic remedy, one that
should not be granted unless the movant, by a clear showing, carries the burden of
persuasion." *Fraihat v. U.S. Immigration and Customs Enforcement*, 16 F.4th 613,
635 (9th Cir. 2021) (cleaned up).  To obtain this extraordinary relief, Plaintiffs must
show (1) that they are likely to succeed on the merits; (2) that they are likely to suffer
irreparable harm without injunctive relief; (3) that the balance of equities tips in their
favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def.
Council, Inc.*, 555 U.S. 7, 20 (2008).  A court cannot grant a preliminary injunction if
it lacks subject matter jurisdiction or personal jurisdiction. *See Ex parte McCardle*,
74 U.S. at 514; *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 958 (4th Cir. 1999).

ARGUMENT

## I.  Threshold Jurisdictional Problems Preclude an Injunction.

Even before reaching the basic questions of injury that prevent this action from
proceeding, discrete, Defendant-specific jurisdictional problems frustrate a complete

adjudication of Plaintiffs' claims and show that a preliminary injunction would be both unlawful and ill-advised.  For one, Plaintiffs' claims against the Attorney General are barred by the Eleventh Amendment.  And for another, the lack of proper service (and thus of personal jurisdiction) over several county prosecutors counsels decidedly against a grant of preliminary relief as to anyone.

### A.     The Attorney General Has Sovereign Immunity.

Plaintiffs' suit against the Attorney General is barred by sovereign immunity because he has no legal authority to institute the prosecutions that Plaintiffs claim to fear.  The Eleventh Amendment makes sovereign immunity a jurisdictional defense by providing that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States."  U.S. CONST. amend. XI.  And the only conceivable exception to sovereign immunity—an official capacity suit for prospective relief under *Ex parte Young,* 209 U.S. 123 (1908)—does not apply here.

The *Ex parte Young* exception to sovereign immunity requires that the officers sued in their official capacity "are clothed with some duty in regard to the enforcement of the laws of the state, and … threaten and are about to commence proceedings … to enforce against parties affected [by] an unconstitutional act." *Ex parte Young,* 209 U.S. at 155–56.  Neither element of that test is met here.  As set forth in Point II below, the Attorney General has not threatened prosecution of anyone at any time under the theory outlined in the Crane Letter.  And the Attorney General lacks any

"special relation" to enforcement of this law that would make him a proper defendant. *Id.* at 157.

The "special relation" that *Ex parte Young* requires between the official and enforcement of the law "must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Los Angeles County Bar Ass'n v. Eu,* 979 F.2d 697, 704 (9th Cir.1992); *see also McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010). That direct connection doesn't exist here: the Attorney General has no authority to enforce the opinion stated in the now-withdrawn Crane Letter because he has no general authority to prosecute violations of state criminal law on abortion. Rather, any such authority exists only on referral from county prosecutors, and legislative changes to the attorney general's power under Idaho Code § 67-1401(7) have "reduc[ed] the authority of the Attorney General in relation to county prosecuting attorneys." *See State v. Summer,* 139 Idaho 219, 76 P.3d 963, 968 (2003); *see also supra* note 2. Nor is the Attorney General's "duty to issue advisory opinions" like the Crane Letter "sufficient to make him the proper party to litigation." *McBurney*, 616 F.3d at 400.[4] (cleaned up).

---

[4] The Ninth Circuit's decision in *Planned Parenthood v. Wasden* held that the Attorney General was a proper defendant to a facial challenge to Idaho's then-current abortion laws. 376 F.3d 908, 920 (9th Cir. 2004). But that decision is no longer good law because it construed a prior version of the attorney general statute and the Supreme Court has now repudiated its past abortion cases, which had "diluted the strict standard for facial constitutional challenges." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2275 (2022). In any event, *Wasden* is inapposite, since it concerned a

Other courts of appeals have dismissed claims against attorneys general in the absence of a special relation between his office and the law at issue. *See Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (en banc) (plurality opinion); *Smith v. Beebe,* 123 F. App'x 261 (8th Cir. 2005). And the speculative possibility that the now-rescinded Attorney General opinion might entice county prosecutors to enforce the law in that manner does not create any basis to sue the Attorney General himself. *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1033 (6th Cir. 2022). So the Eleventh Amendment forbids jurisdiction over claims against the Attorney General.

Since sovereign immunity bars litigation against the Attorney General, that means the only Defendants left in this case are the members of the state licensing boards (who have not yet appeared) and the county prosecutors (many of whom have not even been served). And as speculative as Plaintiffs' theory of harm is already, it is even more speculative if it postulates that these Defendants threaten to enforce a now-rescinded policy of another state entity. The lack of jurisdiction over the Attorney General is thus fatal to Plaintiffs' request for an injunction as a whole.

## B.    The Court Lacks Jurisdiction Over Certain Defendants.

This action is beset not just with problems of subject matter jurisdiction, but with defects in personal jurisdiction. Plaintiffs demand preliminary injunctive relief though not all Defendants have been properly served. Even apart from the lack of

---

facial challenge to state law itself, not, as here, a challenge predicated on the unsupportable notion that the Attorney General will attempt general criminal enforcement of a now-rescinded private advisory opinion.

any injury to support Plaintiffs' extraordinary request for immediate relief, this lack of personal jurisdiction over Defendants—and its invitation for further piecemeal litigation—warrants denial of Plaintiffs' motion.

Plaintiffs sued Idaho's 44 county prosecutors by name. *See* Fed. R. Civ. P. 17(d). In urging the Court to schedule an immediate hearing on their motion for preliminary injunction, they said they would complete service this week. At this point, they have properly served some of the county prosecutors, but for others, Plaintiffs have failed to follow the service requirements of Federal Rule of Civil Procedure 4. As a result, there is no personal jurisdiction over those prosecutors, and those prosecutors intend to file timely motions to dismiss for lack of personal jurisdiction and service of process under Rule 12(b)(2) and (5).

Absent the limited exceptions for an ex parte temporary restraining order, which Plaintiffs no longer request here, a party cannot be bound by an order from a court that has no jurisdiction over him. *See R.M.S. Titanic*, 171 F.3d at 958 (preliminary injunction unenforceable where district court did not obtain personal jurisdiction through valid service of process). So if the Court were to grant preliminary relief, it would be void as to those parties over whom the Court lacks personal jurisdiction. To bind those parties requires several more steps: the Court would have to adjudicate any service objections raised by motion, Plaintiffs would have to effect proper service, and then the other parties would be entitled to another separate hearing on the preliminary injunction motion. So to avoid such unnecessary and duplicative litigation

in this complex, multi-defendant matter, the Court should decline to issue a preliminary injunction.

## II.    Plaintiffs Have No Injury, Let Alone an Irreparable One.

Plaintiffs are not injured and have no business in the federal courts.  Without an injury, Plaintiffs lack Article III standing, and the Court lacks jurisdiction.  It also means Plaintiffs necessarily cannot show irreparable harm, the first essential element for a preliminary injunction.  The lack of injury mandates dismissal and denial of Plaintiffs' motion.

Injury is fundamental to a real controversy and thus to jurisdiction.  Federal courts cannot "issue advisory opinions nor ... declare rights in hypothetical cases," but can only "adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution."  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc).  The doctrine of standing "gives meaning to these constitutional limits by identifying those disputes which are appropriately resolved through the judicial process."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (cleaned up).  At minimum, it requires an "injury in fact" that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'"  *Id.* at 158 (quoting *Lujan*, 504 U.S. at 560).  Thus, a party alleging future injury must show that the "threatened injury is 'certainly impending,'" or that there is a "'substantial risk' that the harm will occur."  *Id.* (cleaned up).  And if there is no injury in fact, there is certainly not any irreparable harm—the threshold requirement for a preliminary injunction.  *Winter*, 555 U.S. at 22.

Additional requirements apply where, as here, Plaintiffs bring a pre-enforcement challenge to government action.  In this posture, a "plaintiff satisfies the injury-in-fact requirement" by showing that (1) he intends to engage in conduct arguably affected with a constitutional interest; (2) the intended conduct is arguably proscribed by the challenged statute, and (3) the plaintiff faces a substantial threat of future enforcement under the statute.  *Susan B. Anthony List*, 573 U.S. at 161 (citation omitted).  "For there to be jurisdiction over a preenforcement challenge, there must be a genuine threat of imminent prosecution." *Skyline Wesleyan Church v. California Dep't of Managed Health Care*, 968 F.3d 738, 748 (9th Cir. 2020) (citation and internal quotation marks omitted).

Plaintiffs cannot meet any of these requirements.  They lack any cognizable injury because the Crane Letter has been withdrawn.  But even before the letter was withdrawn, they failed to show a sufficient threat of future harm.  That dooms their request for injunctive relief and mandates dismissal for lack of jurisdiction.

## A.    Plaintiffs Have No Injury From a Letter That Was Withdrawn.

The complete and unambiguous withdrawal of the Crane Letter forecloses any argument that Plaintiffs have a cognizable injury.  Plaintiffs made the Crane Letter the very heart of their Complaint, alleging that "but for" the letter, they would continue counseling patients as they wish.  Dkt. 1 ¶ 41.  They were very clear in this respect, alleging that without the Crane Letter, they "would provide pregnant patients with critical information to obtain necessary abortion care." *Id.* ¶ 4.  So now, their sole asserted basis for injury has evaporated, and with it, any arguable claim of

jurisdiction, much less irreparable harm.  The Court must decline to weigh in on this manufactured controversy.

Ninth Circuit law is clear on these points.  It is well-established that pre-enforcement plaintiffs lack standing—and fail to satisfy the "synonymous" constitutional component of ripeness—unless they face a "specific and credible threat of adverse action."  *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010).  A threat can be credible even short of prosecution, but there still "must be a *genuine* threat of *imminent* prosecution."  *Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1210 (9th Cir. 2022) (emphasis in original) (citation and internal quotation marks omitted).  A credible threat, for example, is one where "prosecuting authorities have communicated a specific warning or threat to initiate proceedings under the challenged speech restriction" or where "there is a history of past prosecution or enforcement under the challenged statute."  *Candaele*, 630 F.3d at 786 (citation omitted).  Plaintiffs cannot make that showing.

Even while Plaintiffs have never faced a credible threat, now that the Crane Letter is void, they cannot possibly satisfy their burden of showing a "genuine" and "imminent" threat of prosecution.  *See Unified Data*, 39 F.4th at 1210.  For one, the voidance of the Crane Letter returns Plaintiffs to their pre-March 27 position.  And as they make crystal clear in their Complaint, the *only* cause of their concern is the Crane Letter.  *See* Dkt. 1 ¶¶ 1–5, 27–42, 47–54, 57, 65–66.  For another, the Attorney General's withdrawal of the Crane Letter makes emphatically clear that the Crane Letter "does not represent the views of the Attorney General on any question of Idaho

law." Withdrawal Letter at 2. Plaintiffs cannot maintain their supposed threat of future injury (speculative as it was) by refusing to accept that the allegedly harmful instrument has been voided in its entirety. They cannot force Defendants to participate in the First Amendment plot they've painted in their Complaint.

Other courts of appeals have found no justiciable controversy in similar circumstances. For example, in *Ammex, Inc. v. Cox*, 351 F.3d 697 (6th Cir. 2003), the Sixth Circuit recognized that the withdrawal of an attorney general letter was fatal to jurisdiction. There, the Michigan Attorney General provided a company with a Notice of Intended Action that its advertising may result in an enforcement action against it. *Id*. at 700. The company brought suit over the Notice, and deep into litigation, the Attorney General withdrew it, which led the district court to dismiss the action. *Id*. at 702. The Sixth Circuit affirmed, explaining that the withdrawal of the Notice made the dispute unripe for judicial review. The company could not show that the dispute was fit for judicial review or that it would face any hardship if the court withheld review. *Id*. at 708–10. Even when it was valid, the Notice was merely an "initiation of proceedings" that may not have resulted in prosecution, but after it was withdrawn, the company had experienced no arguable harm from it. *Id*. So too here.

The prudential considerations here factor even more heavily in favor of dismissal for lack of ripeness. *See Thomas*, 220 F.3d at 1141. While Plaintiffs seem intent to draw this Court into an "unnecessary" review, the doctrine of ripeness protects courts from engaging with abstract constitutional concerns that may never material-

ize. *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 727 (1998). That is particularly true here with Plaintiffs' bombastic concerns that doctors are being muzzled from talking to patients by a private letter that was rescinded little more than a week after it was issued. "A concrete factual situation is necessary to delineate the boundaries of what conduct the government may or may not regulate." *See Thomas*, 220 F.3d at 1141 (citation omitted). The Court should therefore decline Plaintiffs' invitation to decide "constitutional questions in a vacuum." *Id.* (citation omitted). Refusing to hear a case without an injury poses no harm to Plaintiffs.

Whether viewed as a matter of ripeness or mootness, the withdrawal of the Crane Letter defeats Plaintiffs' Article III standing. The Article III ripeness requirement "prevents courts from becoming entangled in abstract disagreements," *Wolfson v. Brammer*, 616 F.3d 1045, 1057 (9th Cir. 2010) (cleaned up), that would prevent government actors from refining their policies when confronted with a specific problem. *Sierra Club*, 523 U.S. at 727; *Skyline Wesleyan*, 968 F.3d at 747. That has not happened yet because, as the Attorney General has explained, he has not been presented with a proper request for an opinion on any question of Idaho law. Withdrawal Letter at 1–2. And for the same reasons, the withdrawal of the Crane Letter mooted any arguable controversy that existed before. *See Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1116 (9th Cir. 2003). Plaintiffs cannot seriously claim that "an actual controversy [is] extant at" this stage in the case. *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002). So if Plaintiffs ever had standing to bring their claims, those claims would now be moot.

Plaintiffs' invocation of the First Amendment provides no shortcut around Article III's requirements.  That the Ninth Circuit "appl[ies] the requirements of ripeness and standing less stringently in the context of First Amendment claims" does not mean "that any plaintiff may bring a First Amendment claim by nakedly asserting that his or her speech was chilled." *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173–74 (9th Cir. 2022) (citation and internal quotation marks omitted).  "Mere allegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Candaele*, 630 F.3d at 787 (cleaned up).  Without that threat, of which there is no evidence here, all that Plaintiffs have here is naked assertion of chilled speech.

Finally, just hours before this brief was due, Plaintiffs proffered new declarations purporting to show that, despite the withdrawal of the Crane Letter, it still presents a threat that chills their speech.  *See* Dkt. 35.  But those declarations do not show any specific threat of future harm that would chill Plaintiffs' speech.  That is because the Crane Letter—a private letter to a legislator—did not threaten anyone with prosecution.  Nor could it, since the "Attorney General does not have the power to initiate criminal prosecutions." *Nabors*, 35 F.4th at 1032.  "[T]here is no imminent prosecution that a federal court could coerce *the Attorney General* to refrain from undertaking," and Plaintiffs' fear that he may hold an unexpressed view of a law that he lacks the authority to enforce is not a threat sufficient to support standing.  *Id.* (emphasis added); *accord McBurney*, 616 F.3d at 399–400.  Plaintiffs are uninjured, and unentitled to redress.

**B.      Plaintiffs Had No Injury Even Before the Letter Was Withdrawn.**

Even during the short time before the Crane Letter was withdrawn, Plaintiffs had no cognizable injury.  They seek a far-reaching injunction to prevent Idaho from enforcing a law against them for conduct they don't plan to engage in.  They didn't show an intention to engage in conduct that violates Idaho law or that there ever was a genuine threat of imminent enforcement action against them.

Plaintiffs' theory of standing is premised on the alleged possibility of prosecution under the Crane Letter's now-withdrawn opinion that Idaho Code § 18-622(2) prohibits medical providers in Idaho from referring women to other states to obtain an abortion.  *See, e.g.*, Dkt. 1 ¶¶ 4–5.  Proving standing in this pre-enforcement context focuses on (1) "whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings"; (2) "whether the plaintiffs have articulated a concrete plan to violate the law in question"; and (3) "the history of past prosecution or enforcement under the challenged statute."  *Twitter, Inc.*, 56 F.4th at 1174. (citation omitted).  None of these elements are present here.

**1.      No-one Has Threatened Plaintiffs.**

Even before the withdrawal of the Crane letter, Plaintiffs didn't show a "substantial threat of future enforcement under" Idaho Code § 18-622(2).  *Susan B. Anthony List*, 573 U.S. at 161.  The Ninth Circuit analyzes a "substantial threat of future enforcement" by considering "whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute."  *Thomas*, 220 F.3d at 1139

(citation omitted).  "The potential plaintiff must have an 'actual or well-founded fear that the law will be enforced against'" it.  *Twitter, Inc.*, 56 F.4th at 1174.

      Plaintiffs' Complaint identifies no "specific warning or threat" to enforce Idaho law against them or against anyone.  Plaintiffs' only evidence of threatened enforcement is the now-withdrawn Crane Letter.  But even before it was withdrawn, the Crane Letter could not satisfy the threat requirement.  The Crane Letter was sent to one legislator as private legal advice; it was not published by the Attorney General or offered as guidance in any capacity.  Plaintiffs do not allege that the Attorney General sent the letter to anyone else, much less to the county prosecutors or the state licensing boards, each of which act independent of the Attorney General.  Indeed, the state licensing boards have denied having received any such communication from the Attorney General.  *See* Ex. 2 (Barron Decl.).  And most of all, the Attorney General lacks any authority to direct the actions of county prosecutors, much less to prosecute violations of Idaho Code § 18-622(2).  *See Nabors*, 35 F.4th at 1032; *McBurney*, 616 F.3d at 399–400.

      Finally, pre-enforcement standing also requires that "the threat of enforcement or warning of enforcement must be particular to the plaintiff."  *Cedar Park Assembly of God of Kirkland, Wash. v. Kreidler*, 402 F. Supp. 3d 978 (W.D. Wash. 2019) (citation omitted).  Yet the Crane Letter was wholly generalized—it "was not a specific warning to" Plaintiffs "and binds no one."  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1125 (9th Cir. 2009).  Plaintiffs have not been threatened and do not have standing.

### 2.    Plaintiffs Have Not Shown They Intend to Violate the Law.

Plaintiffs fail to show they intend "to engage in … conduct" that would violate the law as interpreted by the Crane Letter. *Susan B. Anthony List*, 573 U.S. at 161. This element of pre-enforcement standing "requires something more than a hypothetical intent to violate the law." *Thomas*, 220 F.3d at 1139. Plaintiffs must "articulate a concrete plan to violate" Idaho law "by giving details ... such as when, to whom, where, or under what circumstances." *Candaele*, 630 F.3d at 787 (cleaned up).

The Complaint alleges that before the Crane Letter, certain Plaintiffs provided patients with information about obtaining an out-of-state abortion. Dkt. 1 ¶ 40. The Complaint further alleges that but for the Crane Letter, other Plaintiffs would "inform and counsel patients regarding abortion, including *potentially* referring patients to out-of-state providers." *Id.* ¶ 41 (emphasis added). The Complaint also alleges that Plaintiff Gustafson "planned to begin providing abortions" in other states, but that "those plans have been put in jeopardy because of" the Crane Letter. *Id.* ¶ 38. But the Complaint says nothing about "when, … or under what circumstances," these providers intend to refer women for out-of-state abortions or provide abortions in other states. *Candaele*, 630 F.3d at 787. Even a generous reading of the Complaint suggests the abortionists have only a "hypothetical intent to violate the law," which isn't enough for pre-enforcement standing, *Thomas*, 220 F.3d at 1139, especially for the "extraordinary and drastic remedy" of a preliminary injunction. *Fraihat*, 16 F.4th at 635.

Plaintiffs' supporting declarations are similarly noncommittal:

➢ A Planned Parenthood executive declares that Idaho Planned Parenthood facilities generally referred women to abortion providers in other states after *Dobbs* but stopped doing this when they learned about the Crane Letter. Dkt. 2-2 ¶¶ 12–14. But the executive does not say that these facilities plan to continue referring women for out-of-state abortions now or at any time in the future or when other providers will refer women for abortions out of state.

➢ Plaintiff Gustafson likewise asserts that she was referring women for out-of-state abortions before the Crane Letter's issuance and has since stopped doing so. *See* Dkt. 2-3 ¶¶ 12–18. But she never declares a specific intention to continue referring women for out-of-state abortions in any specific circumstances. *See generally,* Dkt. 2-3 (Gustafson Decl.).

➢ Plaintiff Weyrich's declaration is even weaker. He asserts that he has not referred *any* women for out-of-state abortions since *Dobbs* but that it would be his "typical practice" to do so if the situation arose—and if the Crane Letter didn't exist. Dkt. 2-4 ¶¶ 12, 15.

These nondefinitive statements do not show, "with some degree of concrete detail, that [Plaintiffs] intend to violate the … law." *Candaele*, 630 F.3d at 786.

Compare these speculative statements with the kind of allegations that have established pre-enforcement standing in other cases. In *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022 (9th Cir. 2006), for example, an organization established pre-enforcement standing because it had "specifically" alleged "that it would like to hold a march that starts in Santa Monica" but had to choose another location for its march because of the City's permit requirements. *Id.* at 1034. Or take *Susan B. Anthony List*, where the plaintiffs challenged a law that penalized certain "false" political speech during an election cycle and identified specific political messages that they intended to make in future election cycles but for the law. 573 U.S. at 161–62. Or *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), where

the plaintiffs challenged a law that criminalized "knowingly providing material support or resources to a foreign terrorist organization" by claiming they had done so in the past, promised to do so in the future, and the government had already charged 150 persons with violating the law. *Id.* at 8 (cleaned up).

Here, in contrast, the indefinite statements in Plaintiffs' declarations do not show, "with some degree of concrete detail, that [Plaintiffs] intend to violate the … law." *Candaele*, 630 F.3d at 787. Their "general intent to violate a statute at some unknown date in the future does not rise to the level of an articulated, concrete plan." *Thomas*, 220 F.3d at 1139. It does not give them pre-enforcement standing.

### 3.    The Law's Enforcement History Does Not Support Injury.

Plaintiffs also present no evidence of past enforcement of the law at issue. *Thomas*, 220 F.3d at 1139. They do not allege that the Attorney General or any of the county prosecutors have ever enforced Idaho Code § 18-622(2) on the theory described in the Crane Letter. They do not allege there have been any other judicial proceedings or state licensing proceedings under this interpretation of Idaho law, which no other court has ever had occasion to consider. Because "no enforcement action against plaintiffs is concrete or imminent or even threatened," Plaintiffs lacked standing to bring this suit the day they filed it. *Stormans,* 586 F.3d at 1125.

## III.   Plaintiffs Cannot Show the Other Preliminary Injunction Elements.

The lack of any legal injury dooms Plaintiffs' showing on the other elements for preliminary injunctive relief.

Plaintiffs are not likely to succeed on the merits because there is no actual legal dispute between the parties.  Plaintiffs cannot prevail on the merits against any policy, practice, or prosecution because no relevant policy, practice, or prosecution exists. And there is no dispute left about whether the opinion in the Crane Letter was right or wrong because that opinion is now void.

Nor can Plaintiffs meet the third and fourth elements of the preliminary injunction test, which merge when a government entity is the defendant.  *Tandon v. Newsom*, 992 F.3d 916, 933 (9th Cir. 2021).  The balance of equities is null where there is no justiciable controversy between the parties.  And it is manifestly not in the public interest for the federal courts to issue advisory opinions about disputes that have yet to materialize.

CONCLUSION

The Court should deny Plaintiffs' motion for a preliminary injunction and dismiss this action for lack of jurisdiction.

/ / /

/ / /

/ / /

DATED:  April 14, 2023.

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL

By:   */s/ Lincoln Davis Wilson*
          LINCOLN DAVIS WILSON
          Chief, Civil Litigation and
          Constitutional Defense
          BRIAN V. CHURCH
          TIMOTHY LONGFIELD
          Deputy Attorneys General

          *Attorneys for Defendants Attorney General
          Raúl Labrador and Certain County Prosecut-
          ing Attorneys*[5]

---

[5] Jan Bennetts, Ada County Prosecutor; Chris Boyd, Adams County Prosecutor; Alex Gross, Boise County Prosecutor; Andrakay Pluid, Boundary County Prosecutor; Jim Thomas, Camas County Prosecutor; McCord Larsen, Cassia County Prosecutor; Trevor Misseldine, Gooding County Prosecutor; Mark Taylor, Jefferson County Prosecutor; Rob Wood, Madison County Prosecutor; Lance Stevenson, Minidoka County Prosecutor; Cody Brower, Oneida County Prosecutor; Benjamin Allen, Shoshone County Prosecutor; Grant Loebs, Twin Falls County Prosecutor; and Brian Naugle, Valley County Prosecutor.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 14, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Colleen R. Smith
csmith@stris.com

Jennifer R. Sandman*
jennifer.sandman@ppfa.org

Catherine Peyton Humphreville*
catherine.humphreville@ppfa.org

Michael J. Bartlett
michael@bartlettfrench.com

Dina Flores-Brewer
dfloresbrewer@acluidaho.org

Andrew Beck*
abeck@aclu.org

Meagan Burrows*
mburrows@aclu.org

Ryan Mendías*
rmendias@aclu.org

Scarlet Kim*
scarletk@aclu.org

Peter G. Neiman*
peter.neiman@wilmerhale.com

Alan E. Schoenfeld*
alan.schoenfeld@wilmerhale.com

Michelle Nicole Diamond*
michelle.diamond@wilmerhale.com

Rachel E. Craft*
rachel.craft@wilmerhale.com

Katherine V. Mackey*
katherine.mackey@wilmerhale.com

*Pro hac vice

 /s/ Lincoln Davis Wilson
LINCOLN DAVIS WILSON
Chief, Civil Litigation and
Constitutional Defense