# Attachment 1

Colleen R. Smith (ISB No. 10023)
Stris & Maher LLP
American Civil Liberties Union of
    Idaho Foundation Cooperating Attorney
1717 K Street NW, Suite 900
Washington, DC 20006
T: 202-800-5749
csmith@stris.com

Katherine V. Mackey*
Wilmer Cutler Pickering
    Hale and Dorr LLP
60 State Street
Boston, MA 02109
T: 617-526-6993
F: 617-526-5000
katherine.mackey@wilmerhale.com

Peter G. Neiman*
Alan E. Schoenfeld*
Michelle Nicole Diamond*
Rachel E. Craft*
Wilmer Cutler Pickering
    Hale and Dorr LLP
7 World Trade Center
New York, NY 10007
T: 212-230-8800
F: 212-230-8888
peter.neiman@wilmerhale.com
alan.schoenfeld@wilmerhale.com
michelle.diamond@wilmerhale.com
rachel.craft@wilmerhale.com

*Attorneys for Plaintiffs*

*Additional counsel for Plaintiffs
identified on following page*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO
### SOUTHERN DIVISION

| | |
|---|---|
| **PLANNED PARENTHOOD GREAT NORTHWEST, HAWAII, ALASKA, INDIANA, KENTUCKY**, on behalf of itself, its staff, physicians and patients, **CAITLIN GUSTAFSON, M.D.**, on behalf of herself and her patients, and **DARIN L. WEYHRICH, M.D.**, on behalf of himself and his patients, | |
| Plaintiffs, | |
| v. | Case No.  1:23-cv-00142-BLW |
| **RAÚL LABRADOR**, in his official capacity as Attorney General of the State of Idaho; **MEMBERS OF THE IDAHO STATE BOARD OF MEDICINE** and **IDAHO STATE BOARD OF NURSING**, in their official capacities, **COUNTY PROSECUTING ATTORNEYS**, in their official capacities, | **COMBINED MEMORANDUM IN OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO DISMISS AND REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| Defendants. | |

Jennifer R. Sandman*
Catherine Peyton Humphreville*
Planned Parenthood Federation of America
123 William Street
New York, NY 10038
212-965-7000
jennifer.sandman@ppfa.org
catherine.humphreville@ppfa.org

Michael J. Bartlett (ISB No. 5496)
Bartlett & French LLP
1002 W Franklin St.
Boise, Idaho 83702
T: 208-629-2311
F: 208-629-2460 (fax)
Michael@BartlettFrench.com

*Attorneys for Plaintiff Planned Parenthood
Great Northwest, Hawaii, Alaska, Indiana,
Kentucky*

Dina Flores-Brewer (ISB No. 6141)
American Civil Liberties Union of
    Idaho Foundation
P.O. Box 1897
Boise, ID 83701
T: 208-344-9750
DFloresBrewer@acluidaho.org

Andrew Beck*
Meagan Burrows*
Ryan Mendías*
Scarlet Kim*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
T: 212-549-2633
F: 212-549-2649
abeck@aclu.org
mburrows@aclu.org
rmendias@aclu.org
scarletk@aclu.org

*Attorneys for Physician Plaintiffs*
*\* Admitted pro hac vice*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION ................................................................................. 1

FACTUAL BACKGROUND ..................................................................... 3

ARGUMENT ...................................................................................... 5

I.    AG LABRADOR LACKS SOVEREIGN IMMUNITY AND IS A PROPER DEFENDANT ................. 5

      A.    Attorney General Labrador Is A Proper Defendant Under *Ex Parte Young* ........... 6

            1.    AG Labrador Misinterprets Or Ignores Binding Law And Instead
                  Cites Non-Binding And Distinguishable Cases ................................ 7

      B.    The Fact That Certain Defendants Had Not Been Formally Served by
            April 14 Is Not A Basis For Declining to Issue A Preliminary Injunction
            After The April 24 Hearing ..................................................... 8

II.   PLAINTIFFS HAVE SUFFERED CONCRETE AND SEVERE IMPAIRMENTS OF THEIR
      CONSTITUTIONAL RIGHTS AND THE OTHER REQUIREMENTS FOR
      JUSTICIABILITY ARE MET ......................................................... 10

      A.    Plaintiffs Are Injured By AG Labrador's Threat Of Prosecution .............. 11

            1.    Plaintiffs Have A Concrete Plan To Violate The Labrador
                  Interpretation ............................................................. 12

            2.    Defendants' Threat And Non-Disavowal Of Enforcement Support
                  Injury ..................................................................... 14

            3.    Enforcement History Has "Little Weight" For New Laws .................. 16

      B.    AG Labrador's Litigation-Driven "Withdrawal" Of His Letter Does Not
            Moot the Case .............................................................. 16

III.  PLAINTIFFS HAVE SATISFIED THE REMAINING PRELIMINARY INJUNCTION
      FACTORS ........................................................................ 19

CONCLUSION ................................................................................ 20

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

### CASES

Page(s)

*American Civil Liberties Union of Nevada v. Lomax*, 471 F.3d 1010 (9th Cir. 2006)..................10

*Ammex, Inc. v. Cox.*, 351 F.3d 697 (6th Cir. 2003) ........................................................18

*Animal Legal Defense Fund v. Otter*, 44 F. Supp. 3d 1009 (D. Idaho 2014) ...............................11

*Arizona Right to Life Political Action Committee v. Bayless*, 320 F.3d 1002
　(9th Cir. 2003).........................................................................................12

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979)............................................12

*Bigelow v. Virginia*, 421 U.S. 809 (1975)........................................................................19

*Bland v. Fessler*, 88 F.3d 729 (9th Cir. 1996) ........................................................14, 15

*California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th Cir. 2003) ..............................15

*California Trucking Ass'n v. Bonta*, 996 F.3d 644 (9th Cir. 2021) .........................................14, 16

*Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614 (9th Cir. 1999)...........................8

*Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022)...................................17

*Elrod v. Burns*, 427 U.S. 347 (1976) ..........................................................................20

*Ex parte Young*, 209 U.S. 123 (1908)........................................................................6, 7

*Farris v. Seabrook*, 677 F.3d 858 (9th Cir. 2012) ........................................................20

*Fikre v. Fed. Bureau of Investigation*, 904 F.3d 1033 (9th Cir. 2018) ....................................17, 18

*Friends of the Earth, Inc. v. Laidlaw Environment Services (TOC), Inc.*, 528 U.S. 167
　(2000)................................................................................................10, 11

*Gordon v. Holder*, 721 F.3d 638 (D.C. Cir. 2013) ........................................................20

*Healy v. Beer Institute, Inc.*, 491 U.S. 324 (1989)........................................................19

*Knox v. Service Employees Int'l Union, Local 100*, 567 U.S. 298 (2012) ...................................17

*Lopez v. Candaele*, 630 F.3d 775 (9th Cir. 2010)........................................................12

*McBurney v. Cuccinelli*, 616 F.3d 393 (4th Cir. 2010)....................................................8

*McCormack v. Heideman*, 900 F. Supp. 2d 1128 (D. Idaho 2013) ...............................17

*McCormack v. Herzog*, 788 F.3d 1017 (9th Cir. 2015) ..........................................17, 18

*Mecinas v. Hobbs*, 30 F.4th 890 (9th Cir. 2022)...................................................6, 7

*Montana Green Party v. Jacobsen*, 17 F.4th 919 (9th Cir. 2021) ...............................17

*Mullane v. Centtral Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)...........................9

*Newman v. Lance*, 129 Idaho 98, 922 P.2d 395 (1996) ........................................7, 8

*Nielsen v. State of Oregon*, 212 U.S. 315 (1909).....................................................19

*Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656 (1993) ........................................................16

*Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323 (6th Cir. 2007)..........................19

*Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908 (9th Cir. 2004) ......................6, 7, 8

*R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943 (4th Cir. 1999) .........................................9

*Rosenberger v. Rector and Visitors of Univiversity of Virginia*, 515 U.S. 819 (1995) ................19

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)..............................................11

*Tingley v. Ferguson*, 47 F.4th 1055 (9th Cir. 2022) ......................................11, 12, 13, 14, 15, 16

*United Food & Commercial Workers Int'l Union, AFL-CIO v. Alpha Beta Co.*, 736 F.2d 1371 (9th Cir. 1984) ...........................................................9

## STATUTES & RULES

Fed. R. Civ. P.
     65(a)(1) .................................................................................................10
     4.........................................................................................................9

Idaho Code Ann. § 18-622...................................................................................1, 18

Idaho Code § 67-1401(6) ......................................................................................15

## OTHER AUTHORITIES

@Raul_Labrador, Twitter (Jan. 20, 2023, 5:35 PM), https://twitter.com/Raul_Labrador/status/1616565055746867200?cxt =HHwWgIDQgc7WmO8sAAAA ...........................................................4

*Idaho Attorney General Issues Legal Analysis Affirming the Prohibition of Abortion Pills*, Stanton Int'l, https://stantoninternational.org/chemicalabortion/ ...............................................................4

Popkey, Dan, *Labrador Admirers Say His Four Years in the Legislature Show He Stands Against the Wind but Doesn't Tilt at Windmills*, Idaho Statesman (Oct. 17, 2010), http://mediad.publicbroadcasting.net/p/idaho/files/2010_Popkey_Labrador _Profile.pdf ...............................................................................................................4

*Raúl Labrador Idaho's Next Attorney General*, https://labrador2022.com/about ...........................4

## <u>INTRODUCTION</u>

On March 27, 2023, Idaho Attorney General Raúl Labrador issued a formal letter (the "Labrador Interpretation"), Dkt. 1, Compl., Ex. 1—on his own letterhead and under his own signature—announcing a flagrantly unconstitutional interpretation of Idaho's Total Abortion Ban (Idaho Code Ann. § 18-622). AG Labrador interpreted the Total Abortion Ban as barring Idaho health care providers from providing patients with truthful information about abortions lawfully available outside of Idaho and assistance in accessing these abortions (like appointment scheduling)—meaning that Idaho providers could lose their licenses, and perhaps face up to five years in prison, just for giving information about available providers in states where abortion is legal to patients seeking to terminate their pregnancies. The First Amendment squarely forbids criminalizing speech by medical professionals that provides truthful information to their patients about procedures lawfully available to them. Moreover, the Attorney General's interpretation of the Total Abortion Ban is premised on the view that Idaho law prohibits abortions provided outside of Idaho—a blatant violation of the Due Process and Commerce Clauses, which prevent Idaho authorities from reaching across state lines to sanction conduct that is lawful in other states. Left with no real choice but to stop providing this information and assistance unless and until a court provided relief, and left in grave uncertainty as to whether providing some subset of abortions in states where abortion is legal could expose them to criminal and/or licensure penalties, Plaintiffs promptly sued.

In response, AG Labrador does not even attempt to defend the constitutionality of his own interpretation of Idaho law. Instead, he has resorted to litigation-inspired tactical moves, obfuscation, and inapplicable procedural defenses, all aimed at denying Plaintiffs the injunctive relief they seek so that he may continue to wield the sword of Damocles over their heads to prevent

them and other Idaho clinicians from providing candid and complete medical information to their patients and essential health care outside of Idaho.  None have merit.

Two days after Plaintiffs filed suit, AG Labrador issued a letter on April 7, 2023 (the "April 7 Letter," Dkt. 35-1 Ex. A) announcing that he "withdrew" his March 27 letter.  AG Labrador now claims that the April 7 Letter somehow leaves Plaintiffs with nothing to complain about.  But under settled law, voluntary cessation of conduct after litigation has commenced does not moot the plaintiffs' claims unless the defendant can satisfy his formidable burden of showing that the conduct cannot reasonably be expected to recur if the suit is dismissed.  AG Labrador has come nowhere close to making that showing here.  To the contrary, as AG Labrador himself made clear, both in the April 7 Letter itself and in a subsequent conversation with Plaintiffs' counsel, he was withdrawing his March 27 letter only on insubstantial procedural grounds.  When directly asked by Plaintiffs' counsel, he refused to disavow his indefensible interpretation of the Total Abortion Ban.  Instead, he implausibly insisted that he could not determine whether he agreed with what he himself wrote until forced to do so in a concrete factual situation.  That provides no comfort to Idaho providers.

Absent an injunction from the Court, Idaho-licensed medical professionals continue to be at risk if they provide patients with information about obtaining lawful out-of-state abortions, or otherwise do anything Defendants deem to "assist" in such abortions, such as making appointments or contacting providers.  Cross-licensed providers fear they may continue to be at risk if they provide some subset of out-of-state abortions.  After all, AG Labrador has refused to disavow the views in the Labrador Interpretation.  So any reasonable provider would continue to be chilled—just as the three supplemental declarations submitted by Plaintiffs show they are.

AG Labrador's other procedural objections fare no better.  Under settled law, he is an appropriate defendant and has no sovereign immunity; he has no standing to complain about the timing of service on other Defendants (46 of 47 of whom have, in any event, now been served), and Plaintiffs have amply shown they are suffering injury in fact.  Indeed, every day that their lawful speech about abortions available outside of Idaho is chilled is a day that Plaintiffs (and their patients) continue to suffer irreparable harm.

At bottom, AG Labrador is asking the Court to allow him to pretend that he never expressed his formal interpretation of Idaho's law, leaving him free to apply this same interpretation against Plaintiffs later on.  But Plaintiffs—who face loss of their professional livelihoods and, potentially, attempts to impose criminal penalties—do not have the luxury of assuming away what AG Labrador has already said.  They have no choice but to take seriously the interpretation he formally offered and refuses to renounce, and to refrain from doing what they are constitutionally entitled to do unless and until they obtain the relief they request.  This Court should see through AG Labrador's attempt to avoid judicial review of his constitutional violations, grant Plaintiffs' Motion for Preliminary Injunction, and deny Defendants' Motion to Dismiss.

## FACTUAL BACKGROUND[1]

Two days after Plaintiffs filed this lawsuit seeking relief from AG Labrador's blatantly unconstitutional interpretation of the Total Abortion Ban, AG Labrador issued a follow-up letter purporting to withdraw his original March 27 letter.[2]  *See* Dkt. 35-1, Craft Decl. Ex A.  AG

---

[1] Further facts relating to Idaho's Total Abortion Ban, the origin of the Labrador Interpretation, and the impact of the Labrador Interpretation on Plaintiffs are set forth in the Memorandum of Law in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 2) at 2-6 ("PI Brief").

[2] The Labrador Interpretation set forth the Attorney General's conclusion that Idaho law prohibits health care providers from assisting Idahoans in need of out-of-state abortion services by giving

Labrador provided two reasons for withdrawing the March 27 letter: (1) "the March 27 analysis is now moot because it relates to a law that has been significantly altered by intervening legislation" (*i.e.*, the passage of House Bill 374); and (2) because Representative Crane was asking for an opinion as a "pass-through 'requestor'" for a "nongovernmental third party who requested it in service of a political fundraising plea," the request "was not an authorized request for an Attorney General's Opinion as contemplated by Idaho Code § 67-1401(6)."[3]  *Id.* at 1-2.  Notably absent from the April 7 Letter was any statement disavowing or disclaiming the legal reasoning or conclusions of the Labrador Interpretation.

On April 10, 2023, during a call between Plaintiffs' attorneys and counsel for the Attorney General, AG Labrador's counsel made clear that the Labrador Interpretation was withdrawn on

---

them information about and/or making referrals for abortion services in states where such services are legal.  Dkt. 1, Ex. 1 at 2.  A necessary corollary of AG Labrador's conclusion is that, because he interprets an abortion performed out-of-state as one that triggers licensing sanctions, which only applies to abortions performed "in violation of this subsection," the Total Abortion Ban applies not only to abortions performed within the state but also to abortions performed anywhere else.  PI Brief at 3.

[3] Representative Crane has been described as "one of Labrador's best friends," Popkey, *Labrador Admirers Say His Four Years in the Legislature Show He Stands Against the Wind but Doesn't Tilt at Windmills at 3*, Idaho Statesman (Oct. 17, 2010), http://mediad.publicbroadcasting.net/p/idaho/files/2010_Popkey_Labrador_Profile.pdf.
Nonetheless, AG Labrador claims in this litigation that Representative Crane made an "unauthorized" request for his opinion on behalf of anti-abortion clinic Stanton Healthcare.  *See* Dkt. 41-1, Defs.' Combined Br., at 3-4.  Stanton Healthcare publicly released AG Labrador's letter and issued a press release praising his legal analysis.  *See Idaho Attorney General Issues Legal Analysis Affirming the Prohibition of Abortion Pills*, Stanton Int'l, https://stantoninternational.org/chemicalabortion/ (last visited Apr. 15, 2023).  While he now expresses concern about the "misuse" of his opinion in service of a "political fundraising plea" for an anti-abortion clinic, AG Labrador ran for Attorney General on a strong anti-abortion platform and, as recently as January of this year, posted on Twitter that he would "never stop defending the rights of the unborn in Idaho."  @Raul_Labrador, Twitter (Jan. 20, 2023, 5:35 PM), https://twitter.com/Raul_Labrador/status/1616565055746867200?cxt =HHwWgIDQgc7WmO8sAAAA;  *see Raúl Labrador Idaho's Next Attorney General*, https://labrador2022.com/about (last visited Apr. 15, 2023) (touting AG Labrador's 100% scores from anti-abortion organizations Family Research Council and National Right to Life).

4

procedural grounds and that Plaintiffs should draw no substantive inferences about the Labrador Interpretation of the Total Abortion Ban from its withdrawal.  Craft Decl. ¶ 6.

The Attorney General's procedural withdrawal of the Labrador Interpretation has not removed his unconstitutional threat to prosecute Idaho health care providers for providing information and referrals for out-of-state abortions and, by implication, for providing legal abortions in other states and has done nothing to alleviate the devastating consequences inflicted on Plaintiffs by the Interpretation.  PI Brief at 3-6.  Plaintiffs are still unable to speak freely about abortion with their patients or to provide them with basic information about how to access abortion care or assistance in accessing abortion out of state.  Dkt. 35-2, Gibron Supp. Decl. ¶¶ 7-10; Dkt. 35-3, Gustafson Supp. Decl. ¶¶ 6-9; Dkt. 35-4, Weyrich Supp. Decl. ¶¶ 6-7.  Some Idaho-licensed providers wish to provide abortions outside of Idaho but continue to fear that, given the premise of the Labrador Interpretation, doing so could result in the revocation of their Idaho licenses and/or attempted criminal prosecution for violation of the Total Abortion Ban.  Gibron Supp. Decl. ¶ 10.  Plaintiffs' patients, many of whom will not know how to access abortion outside of Idaho or will face delays in accessing this information and in obtaining the care itself, also continue to suffer. *Id.* ¶ 11.

## **ARGUMENT**

## I.  **AG Labrador Lacks Sovereign Immunity And Is A Proper Defendant**

AG Labrador first attacks the Court's ability to issue a preliminary injunction by citing "jurisdictional problems" arising from Labrador's alleged immunity to suit and the fact that all Defendants had not been formally served by April 14 (ten days before the scheduled hearing). Dkt. 41-1 at 6-10.  These arguments have no basis in the applicable law.

### A.     Attorney General Labrador Is A Proper Defendant Under *Ex Parte Young*

Defendants' argument that AG Labrador is immune from suit under *Ex parte Young*'s interpretation of the Eleventh Amendment, Dkt. 41-1 at 7-9, is foreclosed by Ninth Circuit precedent and Idaho law.  As AG Labrador acknowledges, Dkt. 41-1 at 7, *Ex parte Young* creates an exception to sovereign immunity for claims—like Plaintiffs'—that seek prospective injunctive relief.  209 U.S. 123, 159 (1908).  To satisfy the *Ex parte Young* exception, Plaintiffs must have standing—which they do, *infra* at 10-16—and there must be "'some connection' between a named state officer and enforcement of a challenged state law."  *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004) (internal citations omitted).

AG Labrador disputes that he has "some connection" to enforcement of Idaho's abortion laws against medical providers in Idaho because he claims he has not threatened to prosecute anyone under these laws and because there is no "special relation[ship]" between AG Labrador and the enforcement of these laws.  Dkt. 41-1 at 7-8.  But this overstates what *Ex parte Young* requires.  "The connection required under *Ex parte Young* demands merely that the implicated state official have a relevant role that goes beyond a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision."  *Mecinas v. Hobbs*, 30 F.4th 890, 903-04 (9th Cir. 2022) (quoting *Wasden*, 376 F.3d at 919) (cleaned up).

The Ninth Circuit has already concluded that the Attorney General of Idaho meets this minimum connection as it applies to enforcement of abortion laws.  In *Wasden*, the Ninth Circuit faced the question of whether, in a challenge to Idaho's law requiring parental consent for minors seeking abortions, the Attorney General was a proper defendant under *Ex parte Young*.  There, the Attorney General argued that without direct enforcement power, he was immune from suit, but the court squarely rejected that argument.  In so doing it relied on established interpretations of the Idaho statute that outlines the duties of the Attorney General.

6

> Under Idaho law, the attorney general may "assist" county prosecutors in a "collaborative effort," ... and determinatively here, unless the county prosecutor objects, "the attorney general may, in his assistance, do every act that the county attorney can perform." That is, the attorney general may in effect deputize himself ... to stand in the role of a county prosecutor, and in that role exercise the same power to enforce the statute the prosecutor would have. That power demonstrates the requisite causal connection for standing purposes.

*Wasden*, 376 F.3d at 919-20 (quoting *Newman*, 129 Idaho, 98 102, 922 P.2d, 395399 (1996)). The relevant portion of this statute is unchanged today—despite AG Labrador's uncited assertion that *Wasden* is no longer good law because it involved a prior version of the statute—and the reasoning of *Wasden* compels the conclusion that AG Labrador is a proper defendant.

The recently enacted House Bill 242, signed by Governor Brad Little the day Plaintiffs filed their case and taking effect on May 5, 2023, does nothing to change the analysis set forth in *Wasden*.  HB 242 empowers the Idaho Attorney General to enforce Idaho Code Ann. § 18-623 if the county prosecuting attorney refuses to do so, and does nothing to alter the text of Idaho Code Ann. § 67-1401(7), on which *Wasden* relied.

### 1.    AG Labrador Misinterprets Or Ignores Binding Law And Instead Cites Non-Binding And Distinguishable Cases

To argue that he is protected by sovereign immunity, Dkt. 41-1 at 7-9, AG Labrador mischaracterizes or ignores binding cases from the Ninth Circuit and instead relies on out-of-circuit cases that are distinguishable.

AG Labrador is incorrect that *Wasden*, which he relegates to a footnote, is outdated.  Dkt. 41-1 at 8-9 n.4.  Although the court in *Wasden* did apply a prior version of the Attorney General statute, the relevant portion of the statute—governing the Attorney General's relationship to county prosecuting attorneys—is the same today as it was in *Wasden*.  While the legislature did amend the statute *prior* to the Ninth Circuit's decision in that case, the court addressed that change

in law and held that it did not undermine the Court's determination that the Attorney General was a proper plaintiff:

> After *Newman* [*v. Lance*, 129 Idaho 98, 922 P.2d 395 (1996)], section 67–1401 was amended by the Idaho legislature …. Because our decision on standing relies only on the "assistance" powers the attorney general explicitly retains under revised section 67–1401(7), we need not determine whether the amendments to section 67–1401 affect the holding in *Newman*.

*Wasden*, 376 F.3d at 919 n.7.

Moreover, the Ninth Circuit has concluded that even an Attorney General *without* AG Labrador's deputizing authority but who has made a threat and has the power to refer the case to a local prosecutor has "an ample 'connection with the enforcement' of the challenged matter" and is a proper defendant. *Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 619 (9th Cir. 1999). In *Culinary Workers Union*, the Attorney General initially threatened enforcement by letter, just like AG Labrador did.

Rather than relying on this relevant and binding caselaw, AG Labrador turns to inapposite, out-of-circuit cases. For example, he relies on *McBurney v. Cuccinelli*, 616 F.3d 393 (4th Cir. 2010), for the proposition that "the Attorney General's duty to issue advisory opinions is … not sufficient to make him the proper party to litigation." *Id.* at 400 (cleaned up). But in *McBurney*, the plaintiff relied on the authority to issue advisory opinions as a general matter, and the attorney general had not actually issued an interpretation of the relevant state law—unlike here.

AG Labrador's arguments do not undermine the conclusion that he is a proper defendant in this case.

### B.     The Fact That Certain Defendants Had Not Been Formally Served by April 14 Is Not A Basis For Declining to Issue A Preliminary Injunction After The April 24 Hearing

As of the filing of this brief, of the 48 Defendants, Plaintiffs have accomplished personal service of process or service has been waived from Attorney General Labrador, the Members of

the Boards of Medicine and Nursing, and 43 of 44 County Prosecuting Attorneys.  Ex. A, Craft Decl. Apr. 18, 2023 ¶ 3  The one remaining defendant will be served within the next day.  *Id*. ¶ 4.  AG Labrador cannot avoid a preliminary injunction for his own unconstitutional conduct because one of the 44 County Prosecuting Attorney defendants has not yet been served.[4]

In addition to formally serving the County Prosecuting Attorney in each of Idaho's 44 counties, as well as the Attorney General and the Boards of Medicine and Nursing, Plaintiffs called, emailed, and/or faxed (depending on the publicly available contact information) each County Prosecuting Attorney to notify them of the lawsuit and the April 7 status conference.  *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."); Craft Decl. Apr. 18, 2023 ¶ 5.

Plaintiffs do not, and have never, disputed that they must comply with the requirements of Federal Rule of Civil Procedure 4, which "is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint."  *United Food & Com. Workers Int'l Union, AFL-CIO v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984).[5]  Plaintiffs have sought to provide this notice from the time that they commenced this litigation.  In the highly unlikely

---

[4] The only law supporting Defendants' service argument is from another circuit and is inapposite: *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 958 (4th Cir. 1999).  *R.M.S. Titanic* involved lack of service to a foreign company who was not even named in the complaint.  *Id.*  Extra-territorial service of a non-party is not at issue here, where all named Defendants are within the state of Idaho, and where Plaintiffs have already served all but one Defendant, months in advance of the deadline for service set in the Federal Rule.

[5] Defendants also assert that some County Prosecuting Attorneys intend to file Rule 12 motions for lack of personal jurisdiction and service of process.  But the time limit for service under Rule 4(m) will not run until June.

event that the remaining Defendant has not been formally served by the date of the Preliminary Injunction Hearing, the Court can assess at that time whether the remaining defendant, who unquestionably has notice of this litigation, *see* Craft Decl. April 18, 2023 ¶ 5, should be bound by any injunction the Court issues.[6]

## II.     Plaintiffs Have Suffered Concrete And Severe Impairments Of Their Constitutional Rights And The Other Requirements For Justiciability Are Met

AG Labrador's second argument, that because Plaintiffs have not been injured, their claims are non-justiciable and they are not entitled to seek relief in federal court, Dkt. 41-1 at 11-21, is premised on a willful blindness to the injuries inflicted on Plaintiffs and a misapplication of the law.

AG Labrador raises two justiciability arguments: standing and mootness.  Dkt. 41-1 at 11-21; *see American Civil Liberties Union of Nev. v. Lomax*, 471 F.3d 1010, 1015 (9th Cir. 2006) (identifying standing and mootness as part of the justiciability inquiry).  A plaintiff has standing to bring a claim if she can establish: (1) "'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;" (2) causation, meaning that the "injury is fairly traceable to the challenged action of the defendant;" and (3) redressability, meaning that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).[7]

---

[6] *See* Fed. R. Civ. P. 65(a)(1) explaining that a court may issue a preliminary injunction on notice to an adverse party.

[7] Because standing and ripeness are essentially identical in this type of inquiry, Plaintiffs do not distinguish them in this brief.  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 n.5 (2014) (noting that standing and ripeness "boil down to the same question").  Ripeness can also have a prudential component, although the Supreme Court has noted that "prudential ripeness" is in "tension with our recent reaffirmation of the principle that a federal court's obligation to hear and

Defendants do not contest the elements of causation and redressability, beyond arguing that AG Labrador is not a proper defendant, and Plaintiffs clearly satisfy these factors. Plaintiffs' injuries—the violation of their constitutional rights—are "fairly traceable" to Defendants' threat of legal enforcement of the Total Abortion Ban against them. *Friends of the Earth*, 528 U.S. at 180-81. Further, Plaintiffs' injuries "will be redressed by a favorable decision," *id.*; injunctive relief preventing Defendants from enforcing the Total Abortion Ban against Plaintiffs for constitutionally protected conduct will allow Plaintiffs to provide their patients with the standard of care that their code of medical ethics requires.

Focusing all his energy on his argument that Plaintiffs have not been injured, AG Labrador argues that (1) even before the March 27 letter was withdrawn, there was no injury because no one had specifically threatened Plaintiffs, Plaintiffs did not demonstrate an intent to violate the law, and the law's enforcement history does not support injury; and (2) AG Labrador's "complete and unambiguous" withdrawal of the March 27 letter "forecloses any argument that Plaintiffs have a cognizable injury." Dkt. 41-1 at 12, 17-21. As set forth below, each of these arguments fails.

## A.     Plaintiffs Are Injured By AG Labrador's Threat Of Prosecution

It is well established that a plaintiff need not "first expose himself to actual arrest or prosecution to be entitled to challenge the statute that he claims deters the exercise of his constitutional rights" but may bring a pre-enforcement challenge seeking injunctive or declaratory

---

decide cases within its jurisdiction is virtually unflagging." *Id.* at 167 (internal quotation marks omitted). Regardless, Plaintiffs easily satisfy prudential ripeness, as the claims are primarily legal, offer "sufficient factual context" for this Court to properly rule, and demonstrate significant hardship, as Plaintiffs face an "immediate dilemma," *Animal Legal Def. Fund v. Otter*, 44 F. Supp. 3d 1009, 1028 (D. Idaho 2014), between engaging in constitutionally protected speech and facing criminal or licensure penalties, or self-censoring. *Tingley v. Ferguson*, 47 F.4th 1055, 1071 (9th Cir. 2022).

relief where, as here, they face a "credible threat of prosecution." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).  Pre-enforcement standing is particularly favored in cases like this one, involving violations of the First Amendment right to free speech.  *Tingley*, 47 F.4th at 1066-67 ("The 'unique standing considerations' in the First Amendment context 'tilt dramatically toward a finding of standing' when a plaintiff brings a pre-enforcement challenge." (quoting *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010)); *see Arizona Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) ("In an effort to avoid the chilling effect of sweeping restrictions, the Supreme Court has endorsed what might be called a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences.").  Despite this clear and unanimous caselaw, Defendants contend that Plaintiffs lack standing because they have no "cognizable injury." Dkt. 41-1 at 12.  Defendants are wrong and indeed, their analysis would make pre-enforcement challenges impossible despite decades of jurisprudence to the contrary.

The Ninth Circuit applies a three-factor inquiry to "determine whether a threat of enforcement is genuine enough to confer an Article III injury": "(1) whether the plaintiff has a 'concrete plan' to violate the law, (2) whether the enforcement authorities have 'communicated a specific warning or threat to initiate proceedings,' and (3) whether there is a 'history of past prosecution or enforcement.'" *Tingley*, 47 F.4th at 1066-67.  Plaintiffs easily show such injury under these factors.

### 1.    Plaintiffs Have A Concrete Plan To Violate The Labrador Interpretation

The first factor—a plan or intent to violate the law—requires only that the plaintiff allege "specific past instances" of acting "in a way that would violate the law." *Id.* at 1068.  Having done so, a plaintiff need not "specify 'when, to whom, where, or under what circumstances' they plan

to violate the law." *Id.* Any other rule would be effectively impossible to meet in the medical context, as providers "cannot control when clients will come" seeking services. *Id.*

Defendants concede that Plaintiffs have alleged "specific past instances" of action in ways that would violate the Labrador Interpretation, for example by "provid[ing] patients with information about obtaining an out-of-state abortion" and "refer[ing] women to abortion providers in other states after *Dobbs* but stop[ping] doing this when they learned about the [Labrador Interpretation]." Dkt. 41-1, at 19-20).

Plaintiffs' declarations provide further examples, stating that:

- "When requested to, or when medically advisable, [Dr. Gustafson] would provide an out-of-state referral for an abortion provider," which sometimes "would involve speaking not only to the patient… but also to out-of-state providers to help facilitate continuity of care." Dkt. 2-3, Gustafson Decl. ¶ 13.

- "If the patient wanted to go to one of [Planned Parenthood's] health centers in a nearby state that is part of Planned Parenthood Great Northwest, Hawai'i, Alaska, Indiana, Kentucky, [] staff in Idaho could schedule an appointment for them. If the patient wanted to go to a health center that is not part of Planned Parenthood, staff would provide patients with the information about other providers so that they could call themselves." Dkt. 2-2, Gibron Decl. ¶ 14.

- "Since abortion became illegal in Idaho, patients who are considering undergoing such screening have asked whether I could refer them out of state for an abortion if the prenatal screening shows severe fetal anomalies .… Before Attorney General Labrador's letter, I advised these patients that, if they needed me to do so, I could recommend providers who perform abortion services in states where abortion is legal." Dkt. 2-4, Weyrich Decl. ¶¶ 11-12.

Nothing more is required to show an intent to violate the law. *See Tingley*, 47 F. 4th at 1068.

Defendants ignore the facts and binding precedent and instead argue that a plaintiff must allege "when, to whom, where, or under what circumstances," Dkt. 42, Combined Opp. at 19, a proposition explicitly rejected by the Ninth Circuit in *Tingley, see* 47 F. 4th at 1068 ("But we do not require plaintiffs to specify 'when, to whom, where, or under what circumstances' they plan to violate the law when they have already violated the law in the past."). Plaintiffs thus easily

13

satisfy the first factor because they have in the past referred, and would in the future but-for AG Labrador's threat refer, patients to out-of-state abortion providers and provide related information and assistance—Gibron Decl. ¶¶ 17, 24; Gustafson Decl. ¶¶ 6, 12, 15-17; Gustafson Suppl. Decl. ¶¶ 7-9; Gibron Suppl. Decl. ¶¶ 8-9; Dkt. 35-4, Weyrich Suppl. Decl. ¶¶ 6-7; Weyrich Decl. ¶¶ 6, 9, 12-17—precisely the actions that the Labrador Interpretation would prohibit.

    **2.**    **Defendants' Threat And Non-Disavowal Of Enforcement Support Injury**

The second *Tingley* factor, whether the enforcement authorities "have communicated a specific warning or threat to initiate proceedings," can be satisfied with "general warning of enforcement coupled with [plaintiffs'] self-censorship in the face of the law." 47 F.4th at 1066-68. This general warning can consist of "the government's failure to *disavow* enforcement." *Id.*; *see California Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021) (finding that the state's "refusal to disavow" enforcement is "strong evidence that the state intends to enforce" and that plaintiffs face a "credible threat"); *Bland v. Fessler*, 88 F.3d 729, 737 (9th Cir. 1996) ("The Attorney General of California has not stated affirmatively that his office will not enforce the civil statute").

Given multiple opportunities to do so, Defendants have repeatedly declined to disavow the Labrador Interpretation, both in communication with Plaintiffs, Dkt. 35-1, Craft Decl. ¶¶ 7-8, Ex. A, and in representations before this Court.  Instead, the only publicly available evidence shows that Idaho's top law enforcement officer believes that the statute applies to actions related to out-of-state abortions, *see* PI Brief at 11, and neither his "withdrawal" of the letter nor any litigation-driven equivocations suggest otherwise.  There is no question that under these circumstances the Plaintiff medical providers face a credible threat of enforcement, and it is for exactly these types of circumstances that pre-enforcement challenges are recognized.  *See*, *e.g.*, *California Pro-Life*

*Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003) (finding that plaintiff's "fear [of enforcement proceedings] was reasonable"); *Bland*, 88 F.3d at 737 (concluding that plaintiff's decision to seek affirmative relief, rather than violate a law which had not been enforced for six years but which the attorney general did not disavow, "was altogether reasonable and demonstrates a commendable respect for the rule of law").  In these circumstances, as set forth above at 3-5, Plaintiffs are self-censoring by declining the provide their clients with information about and assistance in obtaining legal out-of-state abortions.

Defendants disregard this binding caselaw and misrepresent the nature of Plaintiffs' claims. First, even though Defendants are wrong to assert that a "general warning" cannot support injury, *see supra* at 14, Plaintiffs' challenges do not arise from a "general warning" that, for example, the statute will be enforced.  Plaintiffs' challenge instead arises from a specific warning that the statute applies to out-of-state referrals, a warning that implicates Plaintiffs' past conduct and conduct that Plaintiffs would engage in in the future, were it not for the Labrador Interpretation.  *See* Dkt. 1, Ex. 1.  Plaintiffs themselves constitute a substantial portion of all Idaho providers who would perform such referrals but for AG Labrador's threats.  Further, as Plaintiffs explain in detail in the section on mootness, *infra* at 17-19, the "withdrawal" of the March 27 letter does not affect Plaintiff's injury, which was caused by the threat inherent in AG Labrador's interpretation of the statute, not by the letter itself.  Again, AG Labrador and other defendants have not disavowed this interpretation.  *See Tingley*, 47 F.4th at 1068.

AG Labrador attempts to obfuscate his threat by claiming that he never intended to make it public.  But pursuant to Idaho law, all opinions which are given in writing to any representative when requested upon any question of law relating to their office must be "made available for public inspection."  Idaho Code Ann. § 67-1401(6).  AG Labrador thus plainly knew this opinion was not

15

"a private letter," Dkt. 41-1 at 3, rather, as required by law, it would reach the public and chill the speech of Idaho providers.[8]

### 3.     Enforcement History Has "Little Weight" For New Laws

Finally, the Ninth Circuit has repeatedly recognized that the history of enforcement is entitled to "little weight" for recent laws, such that standing must be found where the other two factors are satisfied. *Tingley*, 47 F.4th at 1069; *California Trucking*, 996 F.3d at 653.

The Total Abortion Ban has been in effect for less than a year, and Plaintiffs filed suit days after the issuance of the March 27, 2023, letter that first announced the Labrador Interpretation. This is significantly less time than the three years that elapsed between the time the statute at issue in *Tingley* was enacted and the time it was challenged, meaning that the Court should accord little weight to the fact that no one has yet been prosecuted for out-of-state abortion referrals or other assistance. *Tingley*, 47 F.4th at 1069.

### B.     AG Labrador's Litigation-Driven "Withdrawal" Of His Letter Does Not Moot the Case

Defendants make passing reference to the doctrine of mootness based on AG Labrador's "withdrawal" of his letter after litigation began, Dkt. 41-1 at 15.[9]  The mere fact that AG Labrador

---

[8] The Attorney General's claim that Representative Crane's request was improper because he was acting as a "pass-through 'requestor,'" Craft Decl. Ex. A at 1, finds no support in case law.

[9] Although Defendants waived this argument by failing to raise it in their briefs, HB 374 also does not moot this case.  HB 374 does not affect any provision quoted in AG Labrador's letter or under which AG Labrador has threatened out-of-state enforcement.  It does not "significantly alter" the definition of abortion or any other relevant provision as the April 7 Letter claims. While it makes changes to the affirmative defenses of Section 18-622, it does not change any of the language relevant to the Labrador Interpretation, including the prohibitions on "perform[ing] or attempt[ing] to perform an abortion [or] … assist[ing] in performing or attempting to perform an abortion in violation of this subsection."  Idaho Code Ann. § 18-622(2).  Where a statutory amendment has no effect on the provisions of the law that relate to Plaintiffs' claims, courts have consistently held that this does not moot the case because it does not meaningfully change the relevant facts.  *See, e.g., Northeastern Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of*

has "withdrawn" his March 27 letter does not defeat Plaintiffs' right to move forward.  "The voluntary cessation of challenged conduct does not ordinarily render a case moot" because that conduct could restart as soon as the case is dismissed.  *Knox v. Serv. Emps. Int'l Union, Local 100*, 567 U.S. 298, 307 (2012).  Courts are clear that "a claim is not moot if the government remains practically and legally free to return to its old ways despite abandoning them in the ongoing litigation."  *Fikre v. Fed. Bureau of Investigation*, 904 F.3d 1033, 1039 (9th Cir. 2018) (cleaned up).

For example, in *McCormack v. Herzog*, 788 F.3d 1017 (9th Cir. 2015), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022), after an Idaho prosecutor indicted Jennie McCormack for self-inducing an abortion, "an Idaho state judge dismissed the criminal complaint [against her] without prejudice for lack of probable cause."  *Id.* at 1022.  McCormack then filed a class action suit in federal court, seeking an injunction against the prosecutor and a declaration that the criminal provision used to prosecute her was unconstitutional.  *Id.*  Even though the prosecutor determined that he would not re-file a criminal case against McCormack, this Court held that McCormack's case was not moot, reasoning that "a party cannot conjure up mootness by ceasing the challenged conduct only for practical or strategic reasons—such as avoiding litigation."  *McCormack v. Heideman*, 900 F. Supp. 2d 1128, 1138 (D. Idaho 2013) (Winmill, J.), *aff'd sub nom. Herzog*, 788 F.3d at 1025 ("McCormack is correct that this case falls within the 'voluntary cessation' exception.").

The same is true here.  While AG Labrador asserts his withdrawal of the March 27 letter was on "procedural grounds," the fact of the matter is that the letter was only withdrawn *after*

---

*Jacksonville*, 508 U.S. 656, 662 n.3 (1993); *Montana Green Party v. Jacobsen*, 17 F.4th 919, 922 (9th Cir. 2021).

Plaintiffs filed this suit, and, notwithstanding the "withdrawal," AG Labrador's office has repeatedly refused to disavow the substantive interpretation of the Total Abortion Ban offered in the March 27 letter.[10]   Indeed, AG Labrador's decision to withdraw the letter for procedural reasons but not to renounce its contents is precisely the type of situation that leaves him "free to return to [his] old ways" as soon as litigation concludes.[11]   *Fikre*, 904 F.3d at 1039.  This is why courts have repeatedly held that such actions, which are "not governed by any clear or codified procedures[,] cannot moot a claim" because of the "ease with which" the executive could reverse its position.  *Herzog*, 788 F.3d at 1025; *see Ammex, Inc. v. Cox.*, 351 F.3d 697, 706 (6th Cir. 2003) (concluding that a decision to withdraw a letter from the attorney general did not render the case moot because there was no guarantee that action would not be taken against Plaintiffs once the case was dismissed, even where the letter set clear parameters governing the attorney general's action).[12]   Plaintiffs reasonably fear that is precisely AG Labrador's plan.[13]

---

[10] Plaintiffs' claims were never premised on the March 27 letter itself, as Defendants suggest. Instead, the letter was merely the vehicle by which Plaintiffs learned of AG Labrador's unconstitutional interpretation of § 18-622.  That threat of enforcement remains despite the March 27 letter being withdrawn on procedural grounds, because AG Labrador has repeatedly declined Plaintiffs' requests to disavow such enforcement.

[11] AG Labrador's withdrawal of the March 27 letter does not amount even to voluntary cessation because AG Labrador seems to maintain the same unconstitutional interpretation of the Total Abortion Ban he expressed in the letter; he now just maintains this unconstitutional interpretation more quietly.  Courts, such as in *Herzog*, have found that conduct constituted voluntary cessation that did not moot a case under much more unambiguous disavowals, such as when prosecutors have officially agreed not to prosecute.

[12] In *Ammex*, the Sixth Circuit found the case was not ripe because plaintiffs were able to continue their normal operations without incurring great expense or hardship and without risk of criminal liability.  351 F.3d at 709-10.  In contrast, Plaintiffs are currently suffering immense hardship as they are unable to safely provide necessary and ethically required medical advice to their patients without fear of licensure penalties and/or criminal liability.

[13] When faced with a similar question, the Sixth Circuit held that a mere statement of reassurance by the Michigan Attorney General that he would not prosecute the plaintiffs for violating a state abortion law "cannot alleviate fear of prosecution because it is not precedential, and the current

## III.   **Plaintiffs Have Satisfied The Remaining Preliminary Injunction Factors**

As set forth in Plaintiffs' PI Brief at 7-18, they are clearly entitled to a preliminary injunction.  Aside from Defendants' failed attempts to contest Plaintiffs' injury, Defendants do not engage with the substance of Plaintiffs' claims or meaningfully rebut any of the other preliminary injunction factors.  Like their procedural positions, any arguments set forth by Defendants going to the merits would be unavailing.

Plaintiffs are overwhelmingly likely to succeed on the merits.  PI Brief at 7-16.  Under the Labrador Interpretation, Idaho law imposes a content- and viewpoint-based restriction on speech that penalizes medical providers for providing any "support or aid" to a patient seeking an abortion, including "refer[ring her] across state lines to an abortion provider."  Dkt. 1, Ex. 1 at 2; *see Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).  This restriction, which is subject to strict scrutiny, furthers no legitimate state interest and thus violates Plaintiffs' First Amendment rights.  *See Bigelow v. Virginia*, 421 U.S. 809, 827-28 (1975) (states have "little, if any" interest in "shielding its citizens from information about activities outside [its] borders").  Idaho law, under the Labrador Interpretation also violates the Due Process Clause and the Dormant Commerce Clause by purporting to penalize extraterritorial conduct that is legal in the state where it occurs.  *See Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989) (government action "that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority" and violates the Dormant Commerce Clause); *Nielsen v. State of Oregon*, 212 U.S. 315, 321 (1909) (acts that are "done within the territorial limits of [one state],

---

Attorney General could change it whenever he sees fit, as could any future Attorneys General." *Northland Fam. Plan. Clinic, Inc. v. Cox*, 487 F.3d 323, 342 (6th Cir. 2007).  This case is even more clearly not moot, since AG Labrador has provided no such assurance.

under authority and license from that state … cannot be prosecuted and punished by … [a different] state").

The other factors also weigh heavily in favor of a preliminary injunction.  PI Brief at 16-18.  As discussed *supra* and in Plaintiffs' opening brief, Plaintiffs have suffered and continue to suffer irreparable injury because the Labrador Interpretation renders their constitutionally protected conduct unlawful under Idaho law.  As a result, they have been, are being, and without relief from the Court, will continue to be, deprived of their freedom of speech and due process rights and the protections of the Dormant Commerce Clause.  *See Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Farris v. Seabrook*, 677 F.3d 858, 868 (9th Cir. 2012).  And, because "enforcement of an unconstitutional law is always contrary to the public interest," *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013), both the public interest and the balance of equities tip strongly in Plaintiffs' favor.

## **CONCLUSION**

Given the undisputed merit and urgency of Plaintiffs' claims this Court should deny certain Defendants' motion to dismiss and grant Plaintiffs' motion for preliminary injunctive relief.

Respectfully submitted,

Jennifer R. Sandman*
Catherine Peyton Humphreville*
Planned Parenthood Federation of America
123 William Street
New York, NY 10038
T: 212-965-7000
jennifer.sandman@ppfa.org
catherine.humphreville@ppfa.org

Michael J. Bartlett (ISB No. 5496)
Bartlett & French LLP
1002 W Franklin St.
Boise, Idaho 83702
T: 208-629-2311
F: 208-629-2460 (fax)
Michael@BartlettFrench.com

*Attorneys for Plaintiff Planned Parenthood Great Northwest, Hawaii, Alaska, Indiana, Kentucky*

Andrew Beck*
Meagan Burrows*
Ryan Mendías*
Scarlet Kim*
American Civil Liberties
   Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
T: 212-549-2633
F: 212-549-2649
abeck@aclu.org
mburrows@aclu.org
rmendias@aclu.org
scarletk@aclu.org

Dina Flores-Brewer (ISB No. 6141)
American Civil Liberties Union of
   Idaho Foundation
P.O. Box 1897
Boise, ID 83701
T: 208-344-9750
DFloresBrewer@acluidaho.org

*Attorneys for Physician Plaintiffs*

/s/ Colleen R. Smith
Colleen R. Smith (ISB No. 10023)
Stris & Maher LLP
American Civil Liberties Union of
   Idaho Foundation Cooperating
   Attorney
1717 K Street NW, Suite 900
Washington, DC 2006
T: 202-800-5749
csmith@stris.com

Katherine V. Mackey*
Wilmer Cutler Pickering
   Hale and Dorr LLP
60 State Street
Boston, MA 02109
T: 617-526-6993
F: 617-526-5000
katherine.mackey@wilmerhale.com

Peter G. Neiman*
Alan E. Schoenfeld*
Michelle Nicole Diamond*
Rachel E. Craft*
Wilmer Cutler Pickering
   Hale and Dorr LLP
7 World Trade Center
New York, NY 10007
T: 212-230-8800
F: 212-230-8888
peter.neiman@wilmerhale.com
alan.schoenfeld@wilmerhale.com
michelle.diamond@wilmerhale.com
rachel.craft@wilmerhale.com

*Attorneys for Plaintiffs*
*\* Admitted Pro hac vice*

21