RAÚL R. LABRADOR
ATTORNEY GENERAL

LINCOLN DAVIS WILSON, ISB #11860
Chief of Civil and Constitutional Defense

BRIAN V. CHURCH, ISB #9391
TIMOTHY J. LONGFIELD, ISB #12201
Deputy Attorneys General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
lincoln.wilson@ag.idaho.gov
brian.church@ag.idaho.gov
timothy.longfield@ag.idaho.gov
*Attorneys for Defendant Raúl Labrador and
Certain County Prosecuting Attorneys*

**UNITED STATE DISTRICT COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| PLANNED PARENTHOOD GREAT NORTHWEST, HAWAII, ALASKA, INDIANA, KENTUCKY, on behalf of itself, its staff, physicians and patients, CAITLIN GUSTAFSON, M.D., on behalf of herself and her patients, and DARIN L. WEYHRICH, M.D., on behalf of himself and his patients,<br><br>            Plaintiffs,<br><br>v.<br><br>RAÚL LABRADOR, in his capacity as the Attorney General of the State of Idaho; MEMBERS OF THE IDAHO STATE BOARD OF MEDICINE and IDAHO STATE BOARD OF NURSING, in their official capacities, COUNTY PROSECUTING ATTORNEYS, in their official capacities,<br><br>            Defendants. | Case No. 1:23-cv-00142-BLW<br><br>**REPLY IN SUPPORT OF STATE OF IDAHO'S MOTION TO DISMISS** |

**INTRODUCTION**

Plaintiffs attempt to move forward in this case based on a view of the law and the facts that just isn't accurate. They say their case is about the "Labrador Interpretation," not just the now-withdrawn Crane Letter, but they don't cite anything other than the Crane Letter that evinces that purported interpretation (because there is none). They say that this letter, addressed only to Rep. Crane, was necessarily directed to the public too, but the Attorney General publishes only some of the legislative opinions he gives, and then only if the client waives privilege. They say the Crane Letter threatened prosecution, but the Attorney General has no authority to bring such prosecutions and the Crane Letter does not say or do otherwise. And they claim to fear that the ghost of the Crane Letter still lingers because the Attorney General has not "disavowed" it, even though he expressly stated that it was "withdrawn," "void in its entirety," and "does not represent the views of the Attorney General on any question of Idaho law." Withdrawal Letter at 1–2.

Plaintiffs complain about harm from a letter the Attorney General didn't send them, about powers the law doesn't give him, that he hasn't threatened to exercise against anyone, regarding an opinion he doesn't have. That is not an injury, and this case is not a real controversy. The Court should dismiss it for lack of jurisdiction.[1]

---

[1] The undersigned Defendants omit here the arguments for dismissal that certain county prosecutors have based on lack of service and lack of personal jurisdiction, since this motion concerns only subject matter jurisdiction. For present purposes, it suffices to say that despite Plaintiffs' claims to have served 46 of 47 Defendants, service was not completed in accordance with Fed. R. Civ. P. 4 for several Defendants.

**ARGUMENT**

**I.    The Attorney General is immune from suit.**

Plaintiffs say that the Attorney General is a proper defendant under *Ex parte Young*, 209 U.S. 123 (1908), for their challenge to criminal enforcement of the now-rescinded private advisory opinion in the Crane Letter.  But that would be true only if the Attorney General can make such prosecutions and he threatened to do so here.  *Ex parte Young*, 209 U.S. at 155–56.  Plaintiffs can show neither.

Plaintiffs say they are threatened by prosecuting power the Attorney General denies he has.  As the Idaho Supreme Court has recognized, statutory changes have "reduc[ed] the authority of the Attorney General in relation to county prosecuting attorneys."  *See State v. Summer,* 76 P.3d 963, 968 (2003).  Those statutes provide that, except for special circumstances not applicable here, the Attorney General may only "assist the prosecuting attorney" in those matters, Idaho Code § 67-1401(7), not initiate them himself.  Idaho Attorney General, Explanation of Duties and Responsibilities, *available at* https://tinyurl.com/2u8eeds8; *Newman v. Lance,* 129 Idaho 98 (1996).  So the Attorney General might be a proper defendant if a prosecutor brought charges and requested his assistance.  But not over a letter he withdrew, never sent to prosecutors, and that no prosecutor has threatened to bring charges under.

At first, Plaintiffs argued that the recently enacted House Bill 242 gave the Attorney General "influence over decisions of local prosecutors" with respect to Idaho Code § 18-622, the criminal statute at issue here.  Dkt. 81 at 7.  But they betrayed that argument's weakness when they withdrew it 29 hours after their filing deadline

under a purported "notice of errata." That is because H.B. 242 does not give the Attorney General *any* authority over prosecutions under section 622. That is no accident: while the original version of the bill would have granted the Attorney General power to prosecute violations of section 622,[2] the version the legislature passed and the Governor signed limited that power to prosecutions under section 623, which is not at issue here. *See* H.B. 242, § 18-623(4). Not only that, but by granting the Attorney General prosecuting power only "if the prosecuting attorney … refuses to prosecute violations," H.B. 242 underscores that the county prosecutors have plenary authority while the Attorney General's powers exist only on referral or where specifically granted by statute. H.B. 242, § 18-623(4).

These legislative changes also reinforce the inapplicability of *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908 (9th Cir. 2004), which held that the Attorney General was a proper defendant to a pre-*Dobbs* facial challenge to Idaho's abortion statutes. In so holding, the Ninth Circuit dismissed as dicta the Idaho Supreme Court's recognition in *Summer* that legislative changes had "reduc[ed] the authority of the Attorney General in relation to county prosecuting attorneys." *See Summer,* 76 P.3d at 968; *Wasden*, 376 F.3d at 919-20 nn.7–8. But that was before both *Dobbs*, which limited the scope of facial challenges to abortion statutes, and H.B. 242, which has made clear that the Attorney General lacks both general prosecutorial power and special power over prosecutions under section 622.

---

[2] *See* H.B. 242, original bill text Feb. 28, 2023, https://legislature.idaho.gov/wp-content/uploads/sessioninfo/2023/legislation/H0242.pdf.

Nor is this case controlled by *Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 619 (9th Cir. 1999). There, the Nevada attorney general expressly threatened the plaintiff that it would either enforce the statute or refer the matter to a local prosecutor and "defend[ed] her authority and power to do so during much of the proceedings before the district court." *Culinary Workers*, 200 F.3d at 619. The opposite is true here: the Attorney General never sent the Crane Letter to Plaintiffs, never threatened Plaintiffs, never referred the matter to any local prosecutor, and has disclaimed any authority to bring such a prosecution. Dkt. 41-1 at 8.

Much more analogous is *McBurney v. Cuccinelli*, 616 F.3d 393 (4th Cir. 2010). There, the plaintiffs named the Virginia attorney general in their challenge to the enforcement of state law because he had "issued 'hundreds' of advisory opinions on similar facts." *Id.* at 401 n.5. The Fourth Circuit rejected this as a "special relation" under *Ex parte Young* because simply issuing advisory opinions—as the Attorney General did here with the Crane Letter—is insufficient. *Id.* Plus, the Fourth Circuit also said it would not apply the *Ex parte Young* exception "because the Attorney General has not acted or threatened to act." *Id.* at 402. The same is true here.

Finally, while the limitations of the Attorney General's prosecutorial authority are clear from the authorities above, to the extent the Court has any doubts, the Attorney General requests that this Court certify this dispositive question of sovereign immunity controlled by state law to the Idaho Supreme Court under Idaho Appellate Rule 12.3. *See Davis v. Blast Props., Inc.*, No. 1:21-cv-00218-BLW, 2023 WL 1767311, at *6 (D. Idaho 2023).

## II.   Plaintiffs have shown no credible threat.

As Plaintiffs acknowledge, they must prove "they face a credible threat of prosecution" both to show standing to sue, Reply at 12 (internal quotation marks and citation omitted), and to overcome the Attorney General's Eleventh Amendment immunity in federal court. They fail to do so. They do not contend that any of the 44 county prosecutors they sued have threatened them or anyone else under the Crane Letter theory. And they do not claim the Attorney General made any specific threat to them or anyone else. Instead, they contend only that the Crane Letter is a "general warning of enforcement" that, "coupled with [plaintiffs'] self-censorship in the face of the law," gives them standing. Reply at 13 (citation omitted). This is wrong.

First, the Crane Letter, as a private, privileged communication to a legislator, did not threaten enforcement against ***anyone***, either in general or in specific. The letter lacked the capacity to do so because, as explained above, the Attorney General cannot bring prosecutions under Idaho's abortion law. Nor was the letter addressed to any purported threat recipient—it was a privileged communication directed solely to Rep. Crane that became public only because he forwarded it to a constituent who posted it online. Plaintiffs insist the letter cannot have been private because Idaho law demands that Attorney General opinions be "made available for public consumption." Reply at 15 (quoting Idaho Code § 67-1401(6)). To the contrary, the Attorney General's opinion policy dictates that only "Official Attorney General Opinions" are published, while those "rendered in the form of an email or letter" are kept private.

*See* Ex. 4, OAG Feb. 24, 2023 Opinion Policy at 1. That was true in the last administration just as it is in this one.

Second, Plaintiffs cannot transform the Crane Letter's private opinion into a public threat by charging that the Attorney General has failed to adequately disavow it. The Ninth Circuit's "disavowal" cases concern situations where operative state law prohibits the plaintiff's conduct, such that "the government's failure to disavow enforcement" weighs in favor of standing. *Tingley v. Ferguson*, 47 F.4th 1055, 1068 (9th Cir. 2022); *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021). That principle has little application here, since Plaintiffs do not contend that the law as written prohibits their conduct (in fact, they contend the opposite). *See* Dkt. 1 ¶ 40; Dkt. 2-1 at 4–5. And to the extent the "disavowal" cases do apply, they refute standing, because the thing Plaintiffs complain about—a private letter by the Attorney General—is not operative, having been "withdrawn" and rendered "void in its entirety." Withdrawal Letter at 1–2. Plaintiffs itch for more, complaining that the Attorney General's withdrawal of the Crane Letter neglected "to renounce its contents." Reply at 18. But disavowal does not require repudiation, and Article III does not demand every case proceed unless the defendant agrees to take the plaintiff's side.

Third, against all of this, Plaintiffs' "naked assertion" that their speech is still being chilled by the specter of the Crane Letter is not an injury. *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1175 (9th Cir. 2022). "Chilling speech" implies, at minimum, (1) that an official has directed a communication to the speaker (2) that threatens consequences the official can impose. Neither of those are true here. While a concrete

injury need not be tangible, it "must actually exist," and if Plaintiffs have self-censored in the face of a non-existent threat, "those injuries are self-inflicted." *Twitter, Inc.*, 56 F.4th at 1175–77.

### III. The Attorney General has no opinion and Plaintiffs have no case.

Even apart from the matter of standing, Plaintiffs' case is infected with serious ripeness issues, as they invite the Court to decide abstract and theoretical questions of law and fact. The ripeness doctrine exists to turn away suits like this one by "prevent[ing] courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Twitter, Inc.*, 56 F.4th 1170, 1173 (9th Cir. 2022). Unsurprisingly, Plaintiffs steer clear of the ripeness analysis the Ninth Circuit requires. *See, e.g., id.*; *Tingley*, 47 F.4th 1055, 1070 (9th Cir. 2022). That is because they cannot satisfy its prudential requirements: (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Tingley*, 47 F.4th at 1070.

Plaintiffs cannot meet the fitness prong, which requires them to show that "the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Id.* That test requires courts to "consider whether the action 'has a direct and immediate effect on the complaining parties; whether the action has the status of law; and whether the action requires immediate compliance with its terms.'" *Id.* (citation omitted). Each of these points weighs against Plaintiffs.

First, the Crane Letter is not "final"—it is void and has been withdrawn. The Crane Letter is not "a definitive statement of [the Attorney General's] position," and

so any claimed injury is conjectural and hypothetical. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009). The Court can stop there because finality is essential to ripeness. *Id.*; *Tingley*, 47 F.4th at 1070. Plaintiffs are tilting at windmills.

Second, as a private advisory opinion sent to a single legislator, the Crane Letter never had the status of law. It carried no legal force or prosecutorial relevance and did not "require" Plaintiffs to comply in any way. *See Tingley*, 47 F.4th at 1070.

Third, the issues Plaintiffs raise are *not* primarily legal and *will* require further factual development. *Id.* This is especially true now that the Crane Letter is void and Plaintiffs pivot to a hypothetical "Labrador Interpretation" that they suspect the Attorney General of privately holding. Among other things, deciding Plaintiffs' claims would require complex factual judgments about what aspects of a physician's abortion referral are protected speech and an individualized accounting of the policies of all 44 county prosecutors (before they have all been served, and before any of them has taken any position on the question). This is why "[a] concrete factual situation is necessary to delineate the boundaries of what conduct the government may or may not regulate" lest the Court decide First Amendment "questions in a vacuum." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1141 (9th Cir. 2000).

Neither can Plaintiffs meet the hardship prong of the ripeness analysis, which "dovetails, in part, with the constitutional consideration of injury." *Id.* at 1142. For the reasons already explained, Plaintiffs do not face any actual or imminent, as opposed to conjectural or hypothetical, injury. *See Twitter, Inc.*, 56 F.4th at 1173. There hasn't been a hint of "real" or "imminent" enforcement against any physician,

*Thomas*, 220 F.3d at 1142, and self-censorship and subjective chill aren't enough. *Twitter, Inc.*, 56 F.4th at 1174. On the other hand, "by being forced to defend" Plaintiffs' challenge now without "any particular victims"—let alone without an actual opinion—the Attorney General "would suffer hardship." *Thomas*, 220 F.3d at 1142.

Plaintiffs' invocation of this Court's jurisdiction is also foreclosed by the doctrine of mootness. As this Court has recognized, "[t]he repeal of a specific law challenged by a plaintiff usually moots a case" about the law. *McCormack v. Hiedeman*, 900 F. Supp. 2d 1128, 1138 (D. Idaho 2013) (Winmill, J.), *aff'd*, 788 F.3d 1017 (9th Cir. 2015). So here too, the voidance of the Crane Letter moots a case about the letter. Plaintiffs say the voluntary cessation doctrine keeps their case alive. But that doctrine applies when a government official has initiated enforcement of a law and later ceases enforcement. *See, e.g., Fikre v. FBI*, 904 F.3d 1033, 1037 (9th Cir. 2018) (enforcement of No Fly List regulations); *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015), *abrogated by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022) (enforcement of Idaho Code § 18-606). It is inapplicable to a First Amendment pre-enforcement challenge that it is not directed at a law, but an opinion letter that was withdrawn before "any enforcement action against Plaintiff." *S. Mountain Creamery, LLC v. U.S. FDA*, 438 F. Supp. 3d 236, 243 n.8 (M.D. Pa. 2020).

Plaintiffs dismiss the Attorney General's standing arguments as "litigation-inspired tactical moves, obfuscation, and inapplicable procedural defenses" so he can avoid having "to defend the constitutionality of his own interpretation of Idaho law." Reply at 1. But the rules of standing are fundamental to the Court's jurisdiction, not

just tactics.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  And the Attorney General has no interpretation he can defend because, as he has made painstakingly clear, the Crane Letter "does not represent the views of the Attorney General on any question of Idaho law."  Withdrawal Letter at 1–2.[3]

To grant Plaintiffs' request to decide questions of law adverse to the Attorney General over views he does not have would invite just the sort of collusive proceeding that Article III forbids.  It is difficult to even envision what meaningful relief to Plaintiffs would be—an injunction that no prosecutor bring charges on a theory that no prosecutor has sponsored?  That is not a justiciable controversy, it is a plea for this Court to render an advisory opinion adverse to the one the Attorney General has already withdrawn.

## CONCLUSION

The Court should dismiss this action for lack of jurisdiction.

---

[3] Plaintiffs say the Attorney General "made clear" to them that he withdrew the Crane Letter on "procedural grounds and that Plaintiffs should draw no substantive inferences about the Labrador Interpretation of the Total Abortion Ban from its withdrawal."  Reply at 4–5 (citation omitted).  The Attorney General disputes that characterization.  He did not state that the letter was withdrawn on procedural grounds and did not sponsor the existence of a "Labrador Interpretation."  Second Wilson Decl. ¶ 5.  Rather, he explained that, given the withdrawal of the Crane Letter, he has no opinion and so it is impossible to draw any inferences one way or another about what any such opinion might be.  *Id.* ¶ 8.

DATED: April 20, 2023.

        STATE OF IDAHO
        OFFICE OF THE ATTORNEY GENERAL

By: */s/ Lincoln Davis Wilson*
    LINCOLN DAVIS WILSON
    Chief, Civil Litigation and
    Constitutional Defense
    BRIAN V. CHURCH
    TIMOTHY LONGFIELD
    Deputy Attorneys General

*Attorneys for Defendants Attorney General Raúl Labrador and Certain County Prosecuting Attorneys*[4]

---

[4] Jan Bennetts, Ada County Prosecutor; Chris Boyd, Adams County Prosecutor; Alex Gross, Boise County Prosecutor; Andrakay Pluid, Boundary County Prosecutor; Jim Thomas, Camas County Prosecutor; McCord Larsen, Cassia County Prosecutor; Trevor Misseldine, Gooding County Prosecutor; Mark Taylor, Jefferson County Prosecutor; Rob Wood, Madison County Prosecutor; Lance Stevenson, Minidoka County Prosecutor; Cody Brower, Oneida County Prosecutor; Benjamin Allen, Shoshone County Prosecutor; Grant Loebs, Twin Falls County Prosecutor; and Brian Naugle, Valley County Prosecutor.

## CERTIFICATE OF SERVICE

I Hereby Certify that on April 20, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Colleen R. Smith
csmith@stris.com

Jennifer R. Sandman*
jennifer.sandman@ppfa.org

Catherine Peyton Humphreville*
catherine.humphreville@ppfa.org

Michael J. Bartlett
michael@bartlettfrench.com

Dina Flores-Brewer
dfloresbrewer@acluidaho.org

Andrew Beck*
abeck@aclu.org

Meagan Burrows*
mburrows@aclu.org

Ryan Mendías*
rmendias@aclu.org

Scarlet Kim*
scarletk@aclu.org

Peter G. Neiman*
peter.neiman@wilmerhale.com

Alan E. Schoenfeld*
alan.schoenfeld@wilmerhale.com

Michelle Nicole Diamond*
michelle.diamond@wilmerhale.com

Rachel E. Craft*
rachel.craft@wilmerhale.com

Katherine V. Mackey*
katherine.mackey@wilmerhale.com

*Pro hac vice*

    */s/ Lincoln Davis Wilson*
    Lincoln Davis Wilson
    Chief, Civil Litigation and
    Constitutional Defense

Reply in Support of Certain Defendants' Motion to Dismiss – 12