RAÚL R. LABRADOR
ATTORNEY GENERAL

LINCOLN DAVIS WILSON, ISB #11860
Chief of Civil and Constitutional Defense

BRIAN V. CHURCH, ISB #9391
TIMOTHY J. LONGFIELD, ISB #12201
Deputy Attorneys General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
lincoln.wilson@ag.idaho.gov
brian.church@ag.idaho.gov
timothy.longfield@ag.idaho.gov
*Attorneys for Defendant Raúl Labrador
and Certain County Prosecuting Attorneys*

## UNITED STATE DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| PLANNED PARENTHOOD GREAT NORTHWEST, HAWAII, ALASKA, INDIANA, KENTUCKY, on behalf of itself, its staff, physicians and patients, CAITLIN GUSTAFSON, M.D., on behalf of herself and her patients, and DARIN L. WEYHRICH, M.D., on behalf of himself and his patients,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>RAÚL LABRADOR, in his capacity as the Attorney General of the State of Idaho; MEMBERS OF THE IDAHO STATE BOARD OF MEDICINE and IDAHO STATE BOARD OF NURSING, in their official capacities, COUNTY PROSECUTING ATTORNEYS, in their official capacities,<br><br>　　　　　Defendants. | Case No. 1:23-cv-00142-BLW<br><br>**RESPONSE TO BRIEFS OF AMICI CURIAE** |

**INTRODUCTION**

The dispositive question in this case is one of jurisdiction. Is there an actionable pre-enforcement controversy if:

- an official who *lacks* prosecutorial authority expresses a legal opinion in private correspondence,

- the officials who *have* prosecutorial authority have said and done nothing,

- and the original correspondence has been affirmatively voided and withdrawn by the supposedly threatening official?

The answer is plainly no. That is why the official who wrote the withdrawn correspondence—the Idaho Attorney General—has not said anything in this case about the merits of the prosecutorial theory. He has no position on the matter, let alone one that threatens Plaintiffs. An injunction against him over a view he does not hold, cannot enforce, and has not defended would be an advisory opinion of the highest order. And an injunction against the county prosecutors and state licensing officials equally offends the Constitution's bedrock limitation of the federal judicial power to actual cases and controversies.

Still, Plaintiffs insist there's a case and controversy here, and so now Amici have lined up behind them to help manufacture one where none exists. Attempting to shore up the lack of a cognizable injury, St. Luke's has submitted an amicus brief that alleges that the Attorney General's withdrawn letter has various purported harms to non-parties. And to bolster Plaintiffs' challenge to the position in that letter that the Attorney General neither holds nor defends, fourteen states and the District of Columbia present additional argument against that position that the Attorney

RESPONSE TO BRIEFS OF AMICI CURIAE – 1

General has already withdrawn.  But regardless of the commentary these Amici have on the position in the Attorney General's withdrawn letter, what matters is the jurisdiction of this Court.  And on this, Amici's muted response is telling.

Since the Attorney General has no position on this question, Amici seek to create a straw man policy for him.  They believe that will in turn provide a genuine and imminent threat of enforcement to prompt this Court to issue an order that does not address any enforcement policy that actually exists, but will give providers some additional feeling of certainty.  If that sounds like an improper advisory opinion, that's because it is.  Because as much as Plaintiffs have urged the Court to provide clarity now that "the genie is out of the bottle," they cannot claim a legal injury from the fact that a once-expressed opinion is being discussed in public discourse with *zero* enforcement action being taken or threatened—none, zip, zilch.  That is not a "chilled speech" theory of injury, it is itself an effort to chill speech about the law.[1]  The Amici briefs cannot create a justiciable Article III controversy, and this Court should therefore dismiss this action for lack of jurisdiction.

---

[1] This is an irony that should not be lost.  Plaintiffs argue that if the attorney-client advice the Attorney General gave in the Crane Letter were correct, it would illegally restrain their speech if it were enforced against them.  Yet in this suit they seek to have the Court restrain an attorney's speech to his client—even though such advice is withdrawn and void and there has been no threat of enforcement against Plaintiffs—because they disagree with the position it once espoused.  If the Court entertained such a suit, the chilling effect on any elected official who provides or receives such attorney-client advice could be profound.

RESPONSE TO BRIEFS OF AMICI CURIAE – 2

**ARGUMENT**

**I.  Amici do not show that the Court has jurisdiction.**

Defendants have raised multiple threshold issues going to this Court's jurisdiction, any one of which is sufficient "for denying audience to a case on the merits." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)).  For one, the Eleventh Amendment bars jurisdiction over the Attorney General because he cannot and did not threaten prosecution of anyone under the theory espoused by the Crane Letter.  Dkt. 106-1.  And for similar and related reasons, Plaintiffs lack standing because their challenge to the position in the Crane Letter is not based on a credible threat of enforcement, especially now that it has been withdrawn.  Dkt. 41-1 at 11–14 (citing *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010); *Unified Data Servs., LLC v. FTC*, 39 F.4th 1200, 1210 (9th Cir. 2022)).  That the letter has been withdrawn is especially problematic because the Complaint alleged harm solely from the Crane Letter, which plainly can pose no threat of future injury after it has been voided.  *Id.* at 14.  And without a final position from the Attorney General, "prudential considerations here factor even more heavily in favor of dismissal for lack of ripeness."  Dkt. 41-1 at 14–15 (citing *Ammex, Inc. v. Cox*, 351 F.3d 697 (6th Cir. 2003)).[2]  The ripeness

---

[2] Plaintiffs stated at the hearing that the Attorney General did not raise and therefore waived prudential ripeness.  This is factually and legally false.  As the above quote from the Attorney General's briefing quite plainly shows, even if "magic words" were required to preserve an issue, the Attorney General raised prudential ripeness directly and by name.  Dkt. 41-1 at 14–15.  And, in any event, waiver is inapplicable to prudential ripeness: "[e]ven when a ripeness question in a particular case is prudential," the court may raise it *sua sponte* "and cannot be bound by the wishes of the

doctrine exists to stop "'courts from becoming entangled in abstract disagreements'" such as this one "that would prevent government actors from refining their policies when confronted with a specific problem." *Id.* (citations omitted). And for the same reasons, any case that may have existed is moot because of the withdrawal of the Crane Letter. *Id.* (citing *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002)).

At this point, Plaintiffs' theory would mean that any citizen could sue an elected official for allegedly *believing* something contrary to the First Amendment. Article III does not require an accused official to publicly agree with the suing citizen's position in order to avoid First Amendment suit. And a citizen's self-censorship cannot create federal jurisdiction; otherwise, plaintiffs could rewrite Article III's limitations through self-inflicted injuries. This case is even weaker because the apparently offending instrument has been unequivocally voided and withdrawn: "It does not represent the views of the Attorney General on any question of Idaho law." Dkt. 42-4 at 2.

Plaintiffs' lack of injury is underscored by their admission that Idaho law does not actually proscribe the conduct they wish to engage in. Plaintiffs cannot bring a First Amendment claim when no state law or state action threatens them in any way. *See United States v. Rowlee*, 899 F.2d 1275, 1280 (2d Cir. 1990) (noting that if a party did not violate state statute, then "the restrictions imposed by that statute did not

---

parties." *Reno v. Catholic Soc. Servs., Inc.*, 509 US 43, 57 n.18 (1993) (citation omitted).

RESPONSE TO BRIEFS OF AMICI CURIAE – 4

violate their First Amendment rights"). The doctrine of constitutional avoidance buttresses this point: "federal courts should not decide federal constitutional issues when alternative grounds yielding the same relief are available." *Kuba v. 1-A Agric. Ass'n*, 387 F.3d 850, 856 (9th Cir. 2004). This is particularly true where alleged First Amendment claims can be equally remedied under state law. *See Barnes-Wallace v. City of San Diego*, 704 F.3d 1067, 1078 (9th Cir. 2012). Plaintiffs have no injury and no meritorious First Amendment or Due Process claim.

The Amici do nothing to address these defects. To the contrary, the brief submitted by Washington, other states, and the District of Columbia acknowledges they are addressing the substance of the Crane Letter itself, even while they recognize, as they put it, that such advice has been "retracted." Dkt. 95 at 1 n.1. These other States thus focus entirely on a question as to which the Attorney General takes no position. Their brief is simply irrelevant to jurisdiction, the threshold and dispositive question at issue in this case.

While St. Luke's purports to address the issue of legal harm, it fares no better in showing it. St. Luke's acknowledges that it, too, is basing its concern on the now-withdrawn position in the Crane Letter. Dkt. 92-1 at 1. But St. Luke's, like Plaintiffs, also ignores that the Crane Letter has been formally withdrawn, admitting only that the Attorney General "purports" to have done so. *Id.* at 10. St. Luke's cannot gin up an Article III controversy by failing to acknowledge the Attorney General's official, public actions.

RESPONSE TO BRIEFS OF AMICI CURIAE – 5

St. Luke's also refuses to accept that there is no genuine threat of enforcement of the letter.  But St. Luke's gives away the weakness of its position when it says it worries about the impacts on patient care "*if* the … legal interpretation [in the Crane letter] *is implemented.*"  *Id.* at 3 (emphasis added).  That is because no such interpretation has been implemented by anyone, least of all the Attorney General.  And St. Luke's refuses to acknowledge that no county prosecutor or state licensing board has taken any action or expressed any position about the theory of prosecution in the Crane Letter.  Nor do Plaintiffs allege otherwise.

Tacitly conceding the lack of any relevant action by the *actual* enforcement authorities, St. Luke's baldly asserts that the Attorney General's views "are highly likely to carry weight with the county prosecutors charged with enforcing this law and with the Idaho Division of Occupational and Professional Licenses."  *Id.* at 1–2.  Not only is that the very definition of speculative, it also again misapprehends state law.  As the Attorney General has described in Formal Attorney General Opinion 23-1, he has no formal power to refer *anything* to county prosecutors, who are elected officials with different constituencies that do not answer to the Attorney General. [Dkt. 106-1]³  Likewise, while St. Luke's says that the Division of Occupational and Professional Licensing "relies on the Attorney General and his deputies for interpretation of Idaho law," Dkt. 92-1 at 2, that is a matter of discretion that the Division

---

³ The Attorney General has separately moved for leave to submit supplemental briefing regarding the significance of Official Attorney General Opinion 23-1, which bears decisively on both the question of Article III standing and on the Attorney General's sovereign immunity.

has chosen not to exercise. Instead, the Division has to date hired its own attorneys "to advise them and represent them" in this matter. Idaho Code § 67-1406(2); *see also* Idaho Code § 67-2601(2)(h). St. Luke's theory of harm is nothing more than the speculative fear that officials with actual enforcement authority may choose to follow a withdrawn letter written by an official who has no authority over them. Quite simply, that is not an injury.

What St. Luke's and Plaintiffs are asking for is an advisory opinion from this Court. Such an opinion would have to put words in the mouth of the Attorney General and define an official interpretation that he has renounced. It would then have to impute that theory to prosecutors and licensing officials who have said nothing about the matter to try to create a genuine and imminent threat of enforcement targeted at the Plaintiffs, to whom none of the Defendants have said anything. Neither the law nor the record will sustain that elaborate construct. The Court should refuse to sponsor it and should dismiss for lack of jurisdiction.

**II.     Hearsay and unsourced assertions in amicus briefs are not evidence.**

St. Luke's also attempts to use its amicus brief to broaden the scope of this non-class proceeding to assert injuries for other physicians around the state. But hearsay assertions in an amicus brief do not expand the scope of a controversy or the Court's jurisdiction. *See* FED. R. EVID. 801(c), 802. Sometimes the speaker is identified, but at other times the speaker is unnamed. Sometimes those statements appear in newspaper or other news outlet articles, and other times there is simply a summary of what an unnamed physician told someone. They do not suffice to reinforce

Plaintiffs' unsuccessful effort to generate a controversy here. St. Luke's states in a footnote that "[t]hese stories come to *amicus* directly from Idaho physicians." Dkt. 92-1 at 5 n.3. But that doesn't turn unsworn non-party statements, many of them anonymous, into sworn party testimony, much less provide an opportunity for the Attorney General to cross-examine them in any way. *See id.* at 5–10. Those statements are irrelevant to Plaintiffs' standing to sue and they are not admissible evidence.

Because none of those assertions are admissible, they are no help to St. Luke's in trying to expand this case into a statewide controversy. This action concerns just three Plaintiffs who together operate in just three counties: Ada, Twin Falls, and Valley Counties. It is bad enough that Plaintiffs have not shown any relevant action by county prosecutors *anywhere*, but it is even more troubling for prosecutors in the 41 other counties,[4] since Plaintiffs have failed to show how they are possibly threatened by prosecution in counties where they do not treat patients. Plaintiffs' theory against the county prosecutors remains hopelessly attenuated, broken, and speculative.

Neither are the assertions in St. Luke's brief relevant to a purported "chilling effect" on speech. The Ninth Circuit has been clear that naked assertions of chilled

---

[4] Those 41 other counties to which Plaintiffs have not attempted to establish any connection are Adams, Bannock, Bear Lake, Benewah, Bingham, Blaine, Boise, Bonner, Bonneville, Boundary, Butte, Camas, Canyon, Caribou, Cassia, Clark, Clearwater, Custer, Elmore, Franklin, Fremont, Gem, Gooding, Idaho, Jefferson, Jerome, Kootenai, Latah, Lemhi, Lewis, Lincoln, Madison, Minidoka, Nez Perce, Oneida, Owyhee, Payette, Power, Shoshone, Teton Valley, and Washington.

speech are inadequate to confer standing or show ripeness. *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173–75 (9th Cir. 2022). Thus, even when an attorney general served a corporation with a civil investigative demand, because that demand did not threaten adversary proceedings, any corresponding decrease in speech by the corporation was voluntary and self-inflicted—not an Article III injury. *Id.* at 1176. So here too, Plaintiffs' assertions of chilled speech—and by extension, the assertions of St. Luke's—are of no avail in establishing standing when the Attorney General cannot prosecute, has not threatened to do so, and has not made any communications to Plaintiffs whatsoever. There has been no specific threat to Plaintiffs' speech, and there is therefore no standing.

St. Luke's gets no further by expressing its desire for "clarity." It asserts that physicians generally are confused by "constantly changing interpretations and representations" and says it can speak for "Idaho's OB-GYN departments." Dkt. 92-1 at 2. It also claims that as a result of the Attorney General's attorney-client advice, "physicians now understand they risk legal liability and suspension of their medical licenses for simply having frank conversations with their patients." *Id.* And so St. Luke's wants the position articulated by the Attorney General in the now withdrawn letter enjoined. *Id.* at 3. But the desire of an amicus curiae for "clarity" for physicians, writ broadly, does not create a justiciable controversy and cannot justify issuing an advisory opinion, much less an advisory injunction.

St. Luke's shows its real disagreement is with the policy the Legislature has adopted. *Id.* at 9 ("Idaho's stringent ban on abortions, and the lack of clarity

RESPONSE TO BRIEFS OF AMICI CURIAE – 9

surrounding when termination of a pregnancy is permissible to save the life of the mother, itself creates grave uncertainty for physicians attempting to provide the gold standard of medical care when it matters most."). *Id.* But the appropriate channel for St. Luke's to raise its policy concerns is through the Idaho Legislature, where it can provide information to the policymaking body of the State. Those policy concerns cannot be shoehorned into federal litigation over a letter the Attorney General has taken great pains to unequivocally withdraw.

## CONCLUSION

The Amici briefs in this case do nothing to show that this Court has jurisdiction over this suit, which does not present a justiciable Article III controversy. The Court should dismiss it for lack of jurisdiction.

DATED: April 27, 2023.

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL

By: */s/ Lincoln Davis Wilson*
LINCOLN DAVIS WILSON
Chief, Civil Litigation and
Constitutional Defense
BRIAN V. CHURCH
TIMOTHY LONGFIELD
Deputy Attorneys General

*Attorneys for Defendants Attorney General Raúl Labrador and Certain County Prosecuting Attorneys*[5]

---

[5] Jan Bennetts, Ada County Prosecutor; Chris Boyd, Adams County Prosecutor; Stephen Herzog, Bannock County Prosecutor; Mariah Dunham, Benewah County Prosecutor; Paul Rogers, Bingham County Prosecutor; Alex Gross, Boise County Prosecutor; Louis Marshall, Bonner County Prosecutor; Randy Neal, Bonneville County

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to all counsel of record who have appeared in this matter.

                                      */s/ Lincoln Davis Wilson*
                                      LINCOLN DAVIS WILSON
                                      Chief, Civil Litigation and Constitutional Defense

---

Prosecutor; Andrakay Pluid, Boundary County Prosecutor; Jim Thomas, Camas County Prosecutor; McCord Larsen, Cassia County Prosecutor; E. Clayne, Clearwater County Prosecutor; Lindsay Blake, Fremont County Prosecutor; Trevor Misseldine, Gooding County Prosecutor; Kirk MacGregor, Idaho County Prosecutor; Mark Taylor, Jefferson County Prosecutor; Brad Calbo, Jerome County Prosecutor; Stanley Mortensen, Kootenai County Prosecutor; Bill Thopson, Latah County Prosecutor; Bruce Withers, Lemhi County Prosecutor; Zachary Pall, Lewis County Prosecutor; Rob Wood, Madison County Prosecutor; Lance Stevenson, Minidoka County Prosecutor; Cody Brower, Oneida County Prosecutor; Chris Topmiller, Owyhee County Prosecutor; Mike Duke, Payette County Prosecutor; Benjamin Allen, Shoshone County Prosecutor; Grant Loebs, Twin Falls County Prosecutor; and Brian Naugle, Valley County Prosecutor; Delton Walker, Washington County Prosecutor.

RESPONSE TO BRIEFS OF AMICI CURIAE – 11